# EXHIBIT A



**ARGO INSURANCE**

Insurer Home Office Address:
175 E. Houston Street, Suite 1300
San Antonio, TX 78205

Insurer Administrative Office:
225 W. Washington Street, 24th Floor
Chicago, IL 60606

## Private Playbook℠

## Private Company Directors & Officers Liability, Employment Practices Liability, Fiduciary Liability and Miscellaneous Professional Liability Insurance Policy

**THE COVERAGE SECTIONS OF THIS POLICY ARE ALL WRITTEN ON A CLAIMS MADE BASIS AND COVER ONLY CLAIMS FIRST MADE AGAINST THE INSUREDS DURING THE POLICY PERIOD OR THE EXTENDED REPORTING PERIOD, IF EXERCISED. CLAIMS MUST BE REPORTED TO THE INSURER IN ACCORDANCE WITH THE REPORTING PROVISIONS OF THIS POLICY. THE LIMITS OF LIABILITY SHALL BE REDUCED BY AMOUNTS INCURRED AS DEFENSE COSTS AND DEFENSE COSTS SHALL BE SUBJECT TO THE RETENTION. PLEASE READ THIS POLICY CAREFULLY AND DISCUSS THE COVERAGE PROVIDED WITH YOUR INSURANCE AGENT OR BROKER.**

## DECLARATIONS

**Insurer:** Argonaut Insurance Company

**Producer:** Swett & Crawford
515 S. Figueroa St., 6th Floor
Los Angeles, CA 90071

Policy Number: ML 7601979-2

Renewal of Policy Number: ML 7601979-01

**Item 1. Policyholder:** Yellowstone Capital, LLC
**Mailing Address:** 1 Evertrust Plaza, Suite 1401
Jersey City, NJ 07302

**Item 2. Policy Period:** From: 12:01 a.m. on    May 25, 2018    To: 12:01 a.m. on    May 25, 2019
Local time at the address shown in Item 1.

**Item 3. Coverage Sections:**

| Coverage Section | Purchased | Not Purchased | Separate Limits | Shared Limits |
|---|---|---|---|---|
| Directors & Officers Liability | ☒ | ☐ | ☐ | ☒ |
| Employment Practices Liability | ☒ | ☐ | ☐ | ☒ |
| Fiduciary Liability | ☐ | ☒ | ☐ | ☐ |
| Miscellaneous Professional Liability | ☐ | ☒ | ☐ | ☐ |

AG ML 7000 PC (9/11)                                                        Page 1 of 5

Item 4    Limits of Liability:

    A.   Maximum Aggregate Limit of Liability for all **Loss** under all **Coverage Sections**:   $3,000,000

    B.   Limits of Liability applicable to Directors & Officers Liability **Coverage Section**:

        1.   Maximum Aggregate Limit of Liability for all **Loss** under **INSURING AGREEMENTS** A., B., C. and D.:   $3,000,000

        2.   Aggregate Sub-Limit of Liability for all **Shareholder Derivative Demands** under **INSURING AGREEMENT** D.:   $100,000

        3.   Aggregate Sub-Limit of Liability for all **Loss** from all **Employed Lawyers Claims**:   $0

    C.   Limit of Liability applicable to Employment Practices Liability **Coverage Section**:

        1.   Maximum Aggregate Limit of Liability for all **Loss** under **INSURING AGREEMENTS** A. and B.:   $3,000,000

        2.   Aggregate Sub-Limit of Liability for all **Loss** from all **Claims** under **INSURING AGREEMENT** B.:   $3,000,000

        3.   Aggregate Sub-Limit of Liability for all **Loss** constituting **Sensitivity Training Costs** under **INSURING AGREEMENTS** A. and B.:   $0

    D.   Limits of Liability applicable to Fiduciary Liability **Coverage Section**:

        1.   Maximum Aggregate Limit of Liability for all **Loss** under **INSURING AGREEMENTS** A. and B.:   No Coverage

        2.   Aggregate Sub-Limit of Liability for all **Voluntary Compliance Loss** under **INSURING AGREEMENT** B.:   No Coverage

        3.   Aggregate Sub-Limit of Liability for all **Loss** from all **HIPAA CLAIMS** under **INSURING AGREEMENT** A.:   No Coverage

    E.   Maximum Aggregate Limit of Liability for all **Loss** under the Miscellaneous Professional Liability **Coverage Section**:   No Coverage

Item 5.    Retentions:

    A.   Retentions applicable to Directors & Officers Liability **Coverage Section:**

        1.   Each **Claim** under **INSURING AGREEMENT** B.:   $50,000

        2.   Each **Claim** under **INSURING AGREEMENT** C.:   $50,000

No Retention is applicable to **INSURING AGREEMENTS** A. **(NON-INDEMNIFIED LOSS COVERAGE)** and D. **(DERIVATIVE DEMAND INVESTIGATION COSTS COVERAGE)**

    B.   Retentions applicable to Employment Practices Liability **Coverage Section**:

AG ML 7000 PC (9/11)                             Page 2 of 5

|   | 1. | Each **Claim** under **INSURING AGREEMENT** A : | $75,000 |
|---|----|------------------------------------------------|---------|
|   | 2. | Each **Claim** under **INSURING AGREEMENT** B. | $75,000 |

C. Retentions applicable to Fiduciary Liability **Coverage Section**:

    1. Each **Claim** under **INSURING AGREEMENT** A :         No Coverage
       (Not Applicable to **Non-Indemnified Loss** or **HIPAA Claims**)

    No Retention is applicable to **INSURING AGREEMENT** B.

D. Retention each **Claim** under the Miscellaneous Professional Liability **Coverage Section**:    No Coverage

Item 6.  Annual Premiums:

A. Directors & Officers Liability **Coverage Section**:    Included

B. Employment Practices Liability **Coverage Section**:    Included

C. Fiduciary Liability **Coverage Section**:    No Coverage

D. Miscellaneous Professional Liability **Coverage Section**:    No Coverage

                            Total   $59,700 + $358.20 NJ PLIGA

Item 7.  **Extended Reporting Period**:

Additional Premium for the Extended Reporting Period: 150% of Annualized Premium
Length of the Extended Reported Period: One year(s)

Item 8.  Notices to **Insurer**:

Claims:
Attn:  ARGO GROUP US
       Management Liability - Claims
       101 Hudson Street, Suite 1201
       Jersey City, NJ 07302
       732 623 8950
       ArgoMLClaims@argoprous.com

All Other Notices:
Attn:  ARGO GROUP US
       Management Liability - Underwriting
       101 Hudson Street, Suite 1201
       Jersey City, NJ 07302
       732 623 8950

Item 9.  Endorsements Applicable to Coverage at Inception of Policy:

| AG ML 7194 PC (4 15) | Argo Group US Privacy Policy |
|----------------------|------------------------------|
| AG ML 7052 PC (1 15) | Policyholder Disclosure Statement Under the Terrorism Risk Insurance Act |
| AG ML 7053 PC (9 11) | Policyholder Notice-US Dept of Treasury Office of Foreign Asset Control (OFAC) |
| AG ML 7100 PC (9 11) | New Jersey Amendatory Endorsement |
| AG ML 7066 PC (9 11) | State Amendatory Inconsistency |
| AG ML 7070 PC (9 11) | Supplementary Application Materials |
| Manuscript Endorsement | Amend Extended Reporting Period |
| Manuscript Endorsement | Amend Definition of Subsidiary to Add Entities |

| | |
|---|---|
| Manuscript Endorsement | Amend Definition of Application |
| Manuscript Endorsement | Amend Automatic Acquisition Threshold and Period |
| Manuscript Endorsement | Other Insurance Provision Amended |
| Manuscript Endorsement | Amend Alternate Dispute Resolution |
| Manuscript Endorsement | Definition of Insured Person Amended |
| Manuscript Endorsement | Definition of Insured Person Amended: Shadow Directors |
| Manuscript Endorsement | Civil Penalties Under Sections of Foreign Corrupt Practices Act, UK Bribery Act |
| Manuscript Endorsement | Amend Definition of Loss |
| Manuscript Endorsement | Definition of Loss Amended "Bump-Up" Defense Costs |
| Manuscript Endorsement | Exclusion A Prior Notice Amended Prior Directors & Officers Policy |
| Manuscript Endorsement | Insured versus Insured Exclusion Amended |
| Manuscript Endorsement | Exclusion E Amended, Securities Claim Carve-Out |
| Manuscript Endorsement | Directors and Officers Liability Section, Exclusion J Amended |
| Manuscript Endorsement | Conduct Exclusions Amended to Include Underlying Action Language |
| Manuscript Endorsement | Exclusions N, P, and R Amended |
| Manuscript Endorsement | Amend Defense, Settlement and Cooperation |
| Manuscript Endorsement | Representations Amended: Full Non-Rescindable |
| Manuscript Endorsement | General Terms Amended Allocation of Defense Costs |
| Manuscript Endorsement | Exclusion A Prior Notice Amended EPL |
| Manuscript Endorsement | Amend Exclusion D, Retaliation Carve-Out |
| Manuscript Endorsement | Exclusion G Deleted |
| Manuscript Endorsement | Exclusion H Deleted |
| Manuscript Endorsement | Exclusion I Amended |
| Manuscript Endorsement | Amend Defense, Settlement, Cooperation Amended |
| Manuscript Endorsement | Amend Defense, Settlement and Cooperation Provision |
| Manuscript Endorsement | Representations Amended Non-Rescindable EPL Coverage Section |

Item 10.  Definition of **Professional Services** applicable to the Miscellaneous Professional Liability **Coverage Section**: No Coverage

Item 11.  Pending or Prior Date:

| | | |
|---|---|---|
| A. | Directors & Officers Liability **Coverage Section**: | April 25, 2012 |
| B. | Employment Practices Liability **Coverage Section**: | April 25, 2012 |
| C. | Fiduciary Liability **Coverage Section**: | No Coverage |
| D. | Miscellaneous Professional Liability **Coverage Section**: | No Coverage |

Item 12.  Retroactive Date:                                                                          No Coverage
(applicable to the Miscellaneous Professional Liability **Coverage Section**)

This Policy shall not be valid unless also signed by another duly authorized representative of the **Insurer**.

Countersigned:                              By:

Date:  June 14, 2018                        Authorized Representative:

PRIVATE PLAYBOOK<sup>SM</sup>
GENERAL TERMS AND
CONDITIONS

 ARGO INSURANCE

In consideration of payment of the premium and in reliance upon the statements and representations made in the **Application**, and subject to the Declarations and the other terms of this Policy, the Insurance Company shown in the Declarations (the "**Insurer**") and the **Insured(s)** agree as follows:

**I.    APPLICABILITY OF GENERAL TERMS AND CONDITIONS**

All **Coverage Sections** are subject to this General Terms and Conditions Section. In the event of any conflict between this General Terms and Conditions Section and a particular **Coverage Section**, the terms of the **Coverage Section** shall apply to the coverage afforded by such **Coverage Section**. The terms of each **Coverage Section** shall only apply to that **Coverage Section**. Any term that is bolded but not defined in this General Terms and Conditions Section shall, for the purpose of applying this General Terms and Conditions Section to a particular **Coverage Section**, incorporate the definition of such term as set forth in such **Coverage Section**.

**II.    DEFINITIONS**

A.    **Application** means the written statements and representations made by an **Insured** as defined in any **Coverage Section** and provided to the **Insurer** during the negotiation of this Policy, or contained in any application or other materials or information provided to the **Insurer** in connection with the underwriting of this Policy or in connection with the underwriting of any policy providing any of the following coverages of which this Policy, or any **Coverage Section** hereof, is a renewal or replacement or which it may succeed in time: directors and officers or other management liability coverage (including any such insurance providing coverage to an entity for its own liability), fiduciary liability, employment practices liability or professional liability.

The **Application** is deemed attached to and incorporated by reference into this Policy.

B.    **Company** means:

1.    the **Policyholder**; and

2.    any **Subsidiary** of the **Policyholder**.

**Company** shall also include any such organization as a debtor-in-possession under United States bankruptcy law or an equivalent status under the law of any other country.

C.    **Coverage Section** means the Directors & Officers Liability **Coverage Section**, the Employment Practices Liability **Coverage Section**, the Fiduciary Liability **Coverage Section**, and the Miscellaneous Professional Liability **Coverage Section**, but only if such **Coverage Section** is purchased.

D.    **Domestic Partner** means any natural person qualifying as a domestic partner under the provisions of any applicable federal, state, local law or under the provisions of any formal program established by the **Company**.

E.    **Extended Reporting Period** means the period or periods of extended coverage set forth in Item 7. of the Declarations.

F.    **Financial Insolvency** means the appointment by any state or federal official, agency or court of any receiver, conservator, liquidator, trustee, rehabilitator or similar official to take control of, supervise, manage or liquidate the **Company**, or the **Company** becoming a debtor in possession.

G.    **Interrelated Wrongful Acts** means all **Wrongful Acts** that have as a common nexus any fact, circumstance, situation, event, transaction, cause or series of logically or causally connected facts, circumstances, situations, events, transactions or causes. For the purposes of the Employment Practices Liability **Coverage Section**, **"Wrongful Act"** as used in this General Terms and Conditions Section means **Employment Practices Wrongful Act** or **Third Party Wrongful Act**.

H.    **Manager** means any natural person who was, now is or shall become a (i) a manager, member of the board of managers or equivalent executive of a **Company** that is a limited liability company, and (ii) a general partner, managing partner or equivalent executive of a **Company** that is a partnership or joint venture.

I.    **Policy Period** means the period beginning at the inception date and ending at the expiration date stated in Item 2. of the Declarations or any earlier Policy cancellation or termination date.

J.    **Policyholder** means the organization set forth in Item 1. of the Declarations.

K.    **Pollutants** means any substance located anywhere in the world exhibiting hazardous characteristics as defined by, or identified on any list of hazardous substances issued by, the United States Environmental Protection Agency or any state, local or foreign counterpart. **Pollutants** shall also mean any other air emission, odor, waste water, oil or oil products, infectious or medical waste, asbestos or asbestos products, silica, noise, fungus (including mold, mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi, but not any fungi intended by the **Insured(s)** for consumption) and electric or magnetic or electromagnetic field. Such matters shall include, without limitation, solids, liquids, gaseous, thermal, biological, nuclear or radiological irritants, contaminants or smoke, soot, fumes, acids, alkalis, chemicals or waste materials.

L.    **Subsidiary** means:

  1.    any entity in which more than fifty percent (50%) of the outstanding voting securities or voting rights representing the present right to vote for election of directors, **Managers** or equivalent executives is owned or controlled by the **Policyholder**, either directly or indirectly on or before the effective date of this Policy;

  2.    any entity after the effective date of this Policy by reason of being created or acquired by the **Policyholder** after such date, if the gross revenues of the created or acquired entity for the prior year is less than twenty percent (20%) of the annual gross revenues of the **Policyholder** as reflected in the **Policyholder's** most recent audited consolidated financial statement prior to such creation or acquisition; or

  3.    any entity after the effective date of this Policy by reason of being created or acquired by the **Policyholder** after such date, other than as described in

Subsection 2. above, but such entity shall be a **Subsidiary** only for either (i) a period of thirty (30) days from the date such entity was created or acquired by the **Policyholder**; or (ii) until the end of the **Policy Period**, whichever occurs first (such period of time constituting the "**Auto-Sub Period**").

The **Insurer** may, in its sole discretion, after review of such information as it may require, agree to extend coverage beyond the **Auto-Sub Period** for any entity that becomes a **Subsidiary** as set forth in Subsection 3. above, and any individual that becomes an **Insured Person**, as defined in any **Coverage Section**, because of his or her affiliation with such entity; provided that, during or before the **Auto-Sub Period** the **Policyholder** shall have provided the **Insurer** with information requested by the **Insurer** and have agreed to any additional premium or amendments to the Policy pertaining to such entity and provided further, that the **Policyholder** shall pay, when due, any required additional premium relating to such entity.

Provided, however, that **Subsidiary** as defined in Subsections 2. and 3. above shall not mean any entity which is a financial institution, including but not limited to any bank, insurance company, insurance agent/broker, securities broker/dealer, investment advisor, mutual fund or hedge fund, unless such entity is included in the definition of **Subsidiary** by specific written Endorsement attached to this Policy.

**Subsidiary** also means any foundation or charitable trust controlled or directly sponsored by the **Policyholder**.

Provided, however, this Policy shall only apply to **Wrongful Acts** committed or allegedly committed after the effective date an entity becomes a **Subsidiary** and prior to the effective date such entity ceases to be a **Subsidiary**.

## III.    EXTENSIONS OF COVERAGE

### A.    ESTATES, LEGAL REPRESENTATIVES, SPOUSES AND DOMESTIC PARTNERS

The estates, heirs, legal representatives, assigns, spouses and **Domestic Partners** of **Insured Person(s)** shall be considered an **Insured Person(s)** under this Policy but only for a **Claim** arising solely out of their status as such and, in the case of a spouse or **Domestic Partner**, where such **Claim** seeks damages from marital community property, jointly held property or property transferred from the **Insured Person(s)** to the spouse or **Domestic Partner**. No coverage is provided for any wrongful act or omission of an estate, heir, legal representative, assign, spouse or **Domestic Partner**. All terms of this Policy applicable to **Loss** incurred by the **Insured Person(s)** shall also apply to **Loss** incurred by such estates, heirs, legal representatives, assigns, spouses and **Domestic Partners**.

### B.    EXTENDED REPORTING PERIOD

If the **Insurer** or **Policyholder** terminates or refuses to renew this Policy or any **Coverage Section** of this Policy other than for nonpayment of premium, the **Insured(s)** shall have the right, upon payment of the applicable additional premium set forth in Item 7. of the Declarations, to the applicable **Extended Reporting Period** following the effective date of termination or nonrenewal, but only with respect to any **Wrongful Act** taking place prior to the effective date of such termination or nonrenewal. This right of extension shall lapse unless written notice of such election, together with payment of the additional premium due is given by the **Insureds** to the **Insurer** within thirty (30) days following the effective date of termination or nonrenewal. The **Extended Reporting Period** shall only be applicable to a particular **Coverage Section** if the **Insurer** or **Policyholder** terminates or refuses to renew such **Coverage Section**.

The **Extended Reporting Period** is non-cancellable and the entire additional premium shall be deemed fully earned.

## IV.   GENERAL CONDITIONS AND LIMITATIONS

### A.   LIMITS OF LIABILITY

1.  The **Insurer's** maximum aggregate Limit of Liability for all **Loss,** on account of all **Claims** under all **Coverage Sections** shall be the maximum aggregate Limit of Liability, if any, set forth in Item 4.A. of the Declarations.

2.  The **Insurer's** maximum aggregate Limit of Liability for all **Loss** on account of all **Claims** under any **Coverage Section** shall be the maximum aggregate Limit of Liability for such **Coverage Section** set forth in Item 4. of the Declarations, which shall be part of and not in addition to the maximum aggregate Limit of Liability, if any, set forth in Item 4.A. of the Declarations.

3.  The **Insurer's** maximum aggregate Limit of Liability under all **Coverage Sections** subject to a shared Limit of Liability as set forth in Item 3. of the Declarations shall be the largest single maximum aggregate Limit of Liability applicable to any one **Coverage Section** subject to the shared limit of liability, which shall be part of and not in addition to the maximum aggregate Limit of Liability, if any, set forth in Item 4.A. of the Declarations.

4.  The **Insurer's** maximum aggregate Limit of Liability for any coverage subject to a Sub-limit of Liability as provided in any **Coverage Section** shall be the Sub-limit set forth in Item 4. of the Declarations for such sub-limited coverage. The Sub-limit of Liability shall be part of and not in addition to the maximum aggregate Limit of Liability applicable to such **Coverage Section**. The maximum aggregate Limit of Liability applicable to such **Coverage Section** shall be subject to any applicable shared maximum Limit of Liability, and the maximum aggregate Limit of Liability, if any, set forth in Item 4.A. of the Declarations.

5.  **Defense Costs** under all **Coverage Sections** are part of and not in addition to each of the Limits of Liability set forth in Item 4. of the Declarations, and any payments by the **Insurer** of **Defense Costs** under any **Coverage Section** shall reduce the maximum aggregate Limit of Liability applicable to such **Coverage Section** and any applicable Sub-limit of Liability.  The maximum aggregate Limit of Liability applicable to such **Coverage Section** shall be subject to any applicable shared Limit of Liability, and the maximum aggregate Limit of Liability, if any, set forth in Item 4.A. of the Declarations.  In the event of the reduction of any shared maximum aggregate Limit of Liability by payment of **Defense Costs**, such reduced Limit of Liability shall be applicable to all **Coverage Sections** subject to such shared Limit of Liability.

6.  If the maximum aggregate Limit of Liability, if any, for all **Loss** on account of all **Claims** under all **Coverage Sections** is exhausted by payment of **Loss**, the **Insurer's** obligations under this Policy shall be completely fulfilled.   If the maximum aggregate Limit of Liability for any **Coverage Section** for all **Loss** on account of all **Claims** under  that **Coverage Section** is exhausted by payment of **Loss**, the **Insurer's** obligations under that **Coverage Section** shall be completely fulfilled.  If the maximum aggregate Limit of Liability for any **Coverage Section** subject to a shared Limit of Liability is exhausted by payment of **Loss** under that **Coverage Section**, the **Insurer's** obligations under all **Coverage Sections** subject to that shared Limit of Liability shall be completely fulfilled.

7.  The Limit of Liability for any **Extended Reporting Period** shall be part of and not in addition to the applicable Limits of Liability set forth in Item 4. of the Declarations.

B.  **RETENTION**

1.  Each Retention amount shall apply separately to each **Coverage Section** as set forth on the Declarations. The payment of **Loss** credited to the satisfaction of the Retention under one **Coverage Section** shall not be credited to the satisfaction of the Retention under any other **Coverage Section.**

2.  In the event a **Claim** gives rise to **Loss** covered under multiple **Coverage Sections** and no such **Coverage Sections** are subject to a shared Limit of Liability, the Retention amount for each such **Coverage Section** shall apply separately to the **Loss** under such **Coverage Section**.

3.  In the event a **Claim** gives rise to **Loss** covered under multiple **Coverage Sections** and such **Coverage Sections** are subject to a shared Limit of Liability, the Retention applicable to **Loss** covered under such multiple **Coverage Sections** with a shared Limit of Liability shall be the single highest Retention applicable to such **Loss** under any one **Coverage Section**.

4.  Each **Coverage Section** contains its own provision regarding the applicability of the Retention. This Section **IV**.B. shall apply to each **Coverage Section** in addition to the specific provisions relating to the Retention set forth in each such **Coverage Section**.

C.  **ALLOCATION**

In the event the **Insured(s)** incur **Loss** that is both covered and not covered by this Policy, either because the **Claim** includes both covered and uncovered matters or because the **Claim** includes both insured and uninsured parties, the **Insured(s)** and the **Insurer** agree to use all reasonable efforts to determine a fair and equitable allocation of the amounts as between covered and uncovered **Loss**, without any presumption as to a fair and equitable allocation.

In the event that the **Insurer** and the **Insured(s)** cannot agree on an allocation of **Defense Costs** to be advanced under any **Coverage Section** providing for such advancement, the **Insurer** shall advance amounts that the **Insurer** believes to be covered until a different allocation is negotiated by the parties or achieved pursuant to Section N. of this General Terms and Conditions Section and applicable law.

D.  **PRIORITY OF PAYMENTS**

In the event of **Loss** arising from one or more covered **Claims** for which payment is due under this Policy, the **Insurer** shall:

1.  first, pay the **Loss** incurred by an **Insured Person** that is not paid, advanced or indemnified by any entity that is **Insured**;

2.  second, only after paying **Loss** pursuant to Subsection 1. above, and to the extent of any remaining Limit of Liability, pay the **Loss** of any entity that is an **Insured,** whether directly or as indemnitor of an **Insured Person**.

E.  **REPORTING AND NOTICE**

As a condition precedent to coverage under this Policy, the **Insured(s)** shall give to the **Insurer** written notice of any **Claim** made against the **Insured(s)** as soon as practicable after the **Company's** general counsel or risk manager (or functionally equivalent position) first becomes aware of the **Claim**, but in no event later than (i) sixty (60) days after expiration of the **Policy Period**, or (ii) the expiration of the applicable **Extended Reporting Period**, if exercised.

If during the **Policy Period** or the applicable **Extended Reporting Period**, if exercised, the **Insured(s)** become aware of and notifies the **Insurer** in writing of circumstances that may give rise to a **Claim** against the **Insured(s)** and provides details as set forth in this paragraph, then any **Claim** that is subsequently made against an **Insured** that arises from such circumstances and that is reported in accordance with this Section **IV**.E., shall be deemed to have been first made at the time of the notification of circumstances for the purpose of establishing whether such subsequent **Claim** was first made during the **Policy Period** or during the applicable **Extended Reporting Period**, if exercised. No coverage is afforded under this Policy for any **Loss** incurred in connection with such circumstances prior to the time such circumstances result in a **Claim**. Pursuant to this paragraph, and as a condition precedent to exercising any rights under this Policy with respect to a notice of circumstances that may give rise to a **Claim** against the **Insured(s)**, the **Insured(s)** shall specify and include within any such notice of circumstance a description of the circumstances that may give rise to a **Claim**, the nature of the alleged **Wrongful Act(s)** (or the nature of the alleged **Wrongful Act(s)** anticipated) and reasons for anticipating such **Claim**, with full particulars as to dates, persons and entities involved.

This Section **IV**.E. shall apply to the Fiduciary Liability **Coverage Section** in addition to the specific provisions relating to notice set forth in such **Coverage Section.**

F.    **INTERRELATED CLAIMS**

All **Claims** arising from, based upon, or attributable to the same **Wrongful Act** or **Interrelated Wrongful Acts** shall be deemed to be a single **Claim** first made on the earliest date that:

1.    any of such **Claims** was first made, or deemed to have been made pursuant to Section **IV**.E. above, even if such date is before the **Policy Period**;

2.    proper notice of such **Wrongful Act** or any **Interrelated Wrongful Act** was given to the **Insurer** pursuant to Section **IV**.E. above; or

3.    notice of such **Wrongful Act** or any **Interrelated Wrongful Act** was given under any prior directors and officers liability, management liability, employment practices liability, fiduciary liability or professional liability insurance policy or any insurance similar to any of the foregoing.

This Section **IV**.F. shall not apply to the Fiduciary Liability **Coverage Section.**

G.    **ORGANIZATIONAL CHANGES**

If during the **Policy Period**:

1.    the **Policyholder** shall consolidate with, merge into, or sell or substantially sell all of its assets to any other person or entity or group of persons or entities acting in concert; or

2.    any person or entity or group of persons or entities acting in concert shall acquire

more than fifty percent (50%) of the consolidated assets of the **Policyholder**,

(any events described in Subsections 1. or 2. above is an "**Organizational Change**"), then this Policy shall continue in full force and effect as to **Wrongful Acts** occurring prior to the effective date of the **Organizational Change**. However, there shall be no coverage afforded by this Policy for any actual or alleged **Wrongful Act(s)** occurring after the effective date of the **Organizational Change**.

In the event of an **Organizational Change**, this Policy shall not be cancelled by the **Policyholder** after such **Organizational Change** occurs.

H.    **OTHER INSURANCE**

The **Insured(s)** agree that any insurance provided by this Policy shall apply only as excess over any other valid and collectible insurance, whether primary, contributory, excess, contingent or otherwise, unless such insurance is written only as specific excess insurance over the Limits of Liability provided by this Policy. This Policy shall be specifically excess over any other valid and collectible insurance pursuant to which any other insurer has a duty to defend a **Claim** for which this Policy may be obligated to pay **Loss**. This Policy shall not be subject to the terms and conditions of any other insurance policy.

I.    **TERMINATION, CANCELLATION AND NONRENEWAL**

This Policy shall terminate at the earlier of the end of the **Policy Period** shown in Item 2. of the Declarations or the effective date of cancellation, as described below.

1.    Cancellation

a.    The **Policyholder** may cancel this Policy by surrender of this Policy to the **Insurer.** The **Policyholder** may also cancel this Policy or any **Coverage Section** by giving prior written notice to the **Insurer** stating when such cancellation shall take effect; provided, however, that such date of cancellation shall not be later than the end of the **Policy Period**. If the **Policyholder** cancels this Policy, or any **Coverage Section**, the **Insurer** shall retain the proportion of the premium paid for the Policy, or any such **Coverage Section**, on a pro-rata basis.

b.    The **Insurer** may cancel this Policy or any **Coverage Section** only for non-payment of premium. In this event, the **Insurer** shall mail written notice of cancellation for non-payment of premium to the **Policyholder**. The **Insurer's** notice shall state the effective date of cancellation, which shall not be less than twenty (20) days after mailing such notice. If the **Insurer** cancels this Policy or any **Coverage Section**, the **Insurer** shall retain the proportion of the premium paid on a pro-rata basis.

2.    Non-Renewal

The **Insurer** has no obligation to renew this Policy or any **Coverage Section**. If the **Insurer** elects not to renew this Policy or any **Coverage Section**, the **Insurer** shall mail to the **Policyholder** written notice of non-renewal at least sixty (60) days prior to the expiration of the **Policy Period**.

3.    Notice

The **Insurer** shall send all notices required under this Section **IV**.I. by certified or

registered mail to the **Policyholder** at the address listed in Item 1. of the Declarations, and by mail or electronic mail to the **Policyholder's** authorized agent, if any. Proof of mailing shall be sufficient proof of notice.

J.   **SUBROGATION**

In the event of any payment under this Policy, the **Insurer** shall be subrogated to any **Insureds'** rights of recovery. The **Insured(s)** shall execute all papers reasonably required and provide reasonable assistance and cooperation in securing or enabling the **Insurer** to exercise subrogation rights or any other rights, directly in the name of the **Company** or any **Insured Person**.

In no event shall the **Insurer** exercise its right of subrogation against an **Insured** under this Policy unless it shall have been finally adjudicated that such **Insured** committed a deliberate criminal or deliberate fraudulent act or omission, knowingly violated any statute, regulation or law or gained any profit, remuneration or other advantage to which such **Insured** was not legally entitled.

This Section **IV.**J. shall not apply to the Fiduciary Liability **Coverage Section**.

K.   **BANKRUPTCY**

Bankruptcy or insolvency of any **Insured** shall not relieve the **Insurer** of its obligations nor deprive the **Insurer** of its rights, remedies or defenses under this Policy or at law.

In the event a liquidation or reorganization proceeding is commenced by or against the **Company** pursuant to the United States Bankruptcy Code, as amended, or any similar foreign, state or local law, the **Company** and the **Insured Persons** hereby agree to cooperate in any efforts by the **Insurer**, the **Company** or any **Insured Person(s)** to obtain relief from any stay or injunction that may prohibit or delay the **Insurer's** payment of **Loss**.

L.   **ALTERNATIVE DISPUTE RESOLUTION**

The **Insured(s)** and the **Insurer** shall submit any dispute or controversy under this Policy to either non-binding mediation or binding arbitration as described in this Subsection (the "ADR process"). Either the **Insured(s)** or the **Insurer** may initiate the ADR process by sending written notice to the other party designating which type of ADR process is being elected. If within fourteen (14) days after such notice is given the parties disagree on the type of ADR process, the **Insureds'** preference shall control.

Unless otherwise agreed by the parties, any non-binding mediation or binding arbitration shall be administered by the American Arbitration Association in accordance with its then-prevailing Commercial Mediation Rules or Commercial Arbitration Rules, respectively. The **Insured(s)** and the **Insurer** shall each select a disinterested arbitrator, and those two arbitrators shall select a third disinterested arbitrator. A decision by a majority of those three (3) arbitrators shall be final and binding upon the **Insured(s)** and the **Insurer**, but the arbitrators' award shall not include attorneys' fees or other costs incurred in connection with the arbitration.

If the ADR process is non-binding mediation, and if the dispute is not resolved during the mediation process, then either party to the mediation may thereafter commence a judicial proceeding against the other party with respect to such dispute, provided that neither party may commence such a judicial proceeding prior to ninety (90) days following termination of the mediation.

The parties to the ADR process shall share equally the fees and expenses of the mediator or the third-appointed arbitrator as well as other common expenses of the ADR process, although each party shall pay the fees and expenses of that party's appointed arbitrator.

M.    **ALTERATION AND HEADINGS**

No alteration, change or modification to this Policy shall be effective unless made by written Endorsement to this Policy which is signed by an authorized representative of the **Insurer**.

The titles and headings to the various sections, subsections and endorsements of this Policy are included solely for ease of reference and do not in any way limit, expand or otherwise affect the provisions or existence of such sections, subsections or endorsements.

N.    **TERRITORY AND VALUATION**

Coverage under this Policy shall extend to **Wrongful Acts** taking place, **Loss** incurred or **Claims** made anywhere in the world, to the extent legally permitted.

All premiums, Limits of Liability, Retentions, **Loss** and other amounts under this Policy are expressed and payable in the currency of the United States of America. If judgment is rendered, settlement is denominated or another element of **Loss** under this Policy is stated in a currency other than United States dollars, payment under this Policy shall be made in United States dollars at the rate of exchange on the date the final judgment is reached, the amount of the settlement is agreed upon or the other element of **Loss** is due, respectively.

O.    **AUTHORIZATION CLAUSE**

By acceptance of this Policy, the **Policyholder** agrees to act on behalf of the **Insured(s)** with respect to:

1.    giving or receiving notices provided for in this Policy, including but not limited to giving notices of **Claim** or circumstances that may give rise to a **Claim** or giving or receiving notice of termination, cancellation or non-renewal, provided, however, that any **Insured Person** may give notice to the **Insurer** pursuant to Section **IV**.E. of this Policy

2.    paying premiums and receiving any return premiums that may become due under this Policy;

3.    agreeing to any changes in the Policy; and

the **Insured(s)** agree that the **Policyholder** shall act on their behalf.

P.  **ASSIGNMENT**

This Policy and any and all rights hereunder are not assignable without the prior written consent of the **Insurer**.

By:

_____
President

_____
Secretary

PRIVATE PLAYBOOK<sup>SM</sup>
**DIRECTORS & OFFICERS**
**LIABILITY COVERAGE**
**SECTION**



In consideration of payment of the premium and in reliance upon the statements and representations made in the **Application**, and subject to the Declarations and the other terms of this Policy applicable to this **Coverage Section**, the Insurance Company shown in the Declarations (the "**Insurer**") and the **Insured(s)** agree as follows:

**I.     INSURING AGREEMENTS**

    A.     **NON-INDEMNIFIED LOSS COVERAGE**

        The **Insurer** shall pay **Loss** of any **Insured Person(s)** arising from a **Claim** first made during the **Policy Period** (or **Extended Reporting Period**, if exercised) against such **Insured Person(s)** for a **Wrongful Act**, if the **Company** has not indemnified the **Insured Person(s)** for such **Loss**.

    B.     **COMPANY REIMBURSEMENT COVERAGE**

        The **Insurer** shall pay **Loss** of the **Company** arising from a **Claim** first made during the **Policy Period** (or **Extended Reporting Period**, if exercised) against any **Insured Person(s)** for a **Wrongful Act**, but only to the extent the **Company** has indemnified the **Insured Person(s)** for such **Loss**.

    C.     **COMPANY LIABILITY COVERAGE**

        The **Insurer** shall pay **Loss** of the **Company** arising from a **Claim** first made during the **Policy Period** (or **Extended Reporting Period**, if exercised) against the **Company** for a **Wrongful Act**.

    D.     **DERIVATIVE DEMAND INVESTIGATION COSTS COVERAGE**

        The **Insurer** shall pay **Investigative Costs**, subject to an aggregate Sub-limit of Liability as stated in Item 4.B.2. of the Declarations, resulting from a **Shareholder Derivative Demand** first made during the **Policy Period** (or **Extended Reporting Period**, if exercised) regardless of the outcome of, or finding as a result of, such **Shareholder Derivative Demand**.

**II.     DEFINITIONS**

    A.     **Claim** means:

        1.     a written demand against any **Insured** for monetary damages, non-monetary or injunctive relief, including a written demand that the **Insured** toll or waive a statute of limitations pertaining to a **Wrongful Act**;

        2.     a civil proceeding against any **Insured** commenced by the service of a complaint or similar pleading;

        3.     a criminal proceeding against any **Insured** commenced by return of an indictment, information or similar document;

        4.     an administrative or regulatory proceeding against any **Insured** commenced by the

filing of a notice of charges or similar document;

5. a civil, criminal, administrative or regulatory investigation of any **Insured Person** commenced by the service upon or other receipt by the **Insured Person** of a Wells notice, target letter or other written notice from the investigating authority identifying by name the **Insured Person** as an individual against whom a proceeding may be commenced;

6. an official request for the **Extradition** of any **Insured Person** or the execution of a warrant for the arrest of any **Insured Person** where such execution is an element of **Extradition**; or

7. an arbitration, mediation or any other alternative dispute resolution proceeding against any **Insured**;

8. solely with respect to **INSURING AGREEMENT** A., any request, demand or subpoena by a regulatory, administrative, governmental or similar authority to interview or depose an **Insured Person,** or for the production of documents by an **Insured Person,** in his or her capacity as such; or

9. solely with respect to **INSURING AGREEMENT** D., a **Shareholder Derivative Demand**.

**Claim** shall also include any appeal resulting from Subsections 2., 3., 4., 5. or 7. above.

B. **Defense Costs** means that part of **Loss** consisting of reasonable costs, charges, fees (including but not limited to attorney's fees and expert's fees) and expenses (other than regular or overtime wages, benefit expenses, salaries, fees, other types of compensation or overhead expenses of **Insured Person(s)**, or the **Company**) (i) incurred by the **Insurer** or by the **Insured(s)** and consented to by the **Insurer** (such consent to not be unreasonably withheld) in defending or investigating **Claims**, including costs assessed against the **Insured(s)** in a **Claim** or the premium for appeal, attachment or similar bonds provided the **Insurer** shall have no obligation to apply for or furnish such bonds or (ii) incurred at the **Insurer's** request to assist the **Insurer** in the investigation of a **Claim**.

C. **Employed Lawyers Claim** means a **Claim** against any **Insured Person** arising out of, based upon or attributable to an actual or alleged **Wrongful Act** as defined in **II. DEFINITIONS** Section M. Subsection 2.

D. **Extradition** means any formal process by which an **Insured Person** located in any country is or is sought to be surrendered to any other country for trial, or otherwise to answer any criminal accusation, for a **Wrongful Act**.

E. **Insured(s)** means:

1. the **Insured Person(s)**; and

2. the **Company**.

F. **Insured Person(s)** means:

1. any one or more natural persons who were, now are or shall become (i) a duly elected or appointed director, trustee, governor, management committee member, **Manager**, officer, in-house general counsel or controller of the **Company** (ii) director of human resources, risk manager or their functional equivalent of the **Company**; or (iii) with respect to a **Company** incorporated outside the United States, the functional equivalent of any of the foregoing positions; or

2. any one or more natural persons not described in Subsection 1. above who were, now are, or shall become full-time, part-time, seasonal or temporary employees of the **Company**;

Any individual included in Subsection 1. or 2. above is an **Insured Person** solely in his or her capacity as specified in such subsection.

G. **Investigative Costs** means that part of **Loss** consisting of reasonable and necessary fees (including but not limited to attorney's fees and expert's fees), costs and expenses (other than regular or overtime wages, benefit expenses, salaries, fees, other types of compensation or overhead expenses of **Insured Person(s)** or the **Company**) incurred by the **Company** (including its Board of Directors or any committee of its Board of Directors) and consented to by the **Insurer** (such consent to not be unreasonably withheld), in investigating or evaluating the claims alleged in a **Shareholder Derivative Demand**.

H. **Loss** means the total amount which the **Insured(s)** become legally obligated to pay on account of **Claims** made against them solely for **Wrongful Acts** for which coverage applies, including, but not limited to: damages, judgments and settlements; any award of pre-judgment and post-judgment interest on covered judgments and settlements; claimants' counsel fees awarded pursuant to a covered judgment or included as part of a covered settlement; and **Defense Costs**. **Loss** shall also include punitive or exemplary damages or the amount of multiplied damages that is not in excess of the damage award so multiplied awarded pursuant to a covered judgment or included as part of a covered settlement. Solely with respect to **INSURING AGREEMENT** D., **Loss** means **Investigative Costs**.

**Loss** shall not include:

1. criminal or civil fines or penalties;

2. taxes;

3. any amount for which the **Insured(s)** are not financially liable or which are without legal recourse to the **Insured(s)**;

4. matters which may be deemed uninsurable under the law pursuant to which this **Coverage Section** shall be construed, provided, however, that the insurability of punitive or exemplary damages and the multiplied portion of multiplied damages shall be governed by the law of any jurisdiction having a substantial relationship to the **Claim**, the **Loss** or this **Coverage Section** that most favors the insurability of such punitive, exemplary or multiplied damages;

5. any amounts paid or incurred by any **Insured(s)** in providing injunctive or non-pecuniary relief;

6. any amounts incurred by any **Insured(s)** to test for, monitor, clean up, remove, contain, treat, detoxify, or neutralize **Pollutants** regardless of whether such amounts are incurred compulsorily or voluntarily;

7. disgorgement or restitution, whether paid, returned or reimbursed pursuant to a settlement or in satisfaction of a judgment;

8. any amount of any judgment or settlement representing the amount by which any price or consideration is effectively increased in connection with the acquisition or completion of the acquisition of all or substantially all of the ownership interest in or assets of an entity; or

9.    commissions, fees or investigative costs except fees or investigative costs that constitute **Defense Costs** or **Investigative Costs.**

I.    **Moonlighting** means professional legal services rendered by an **Insured Person** outside the scope of his or her employment with the **Company** but during such time as the **Insured Person** is a licensed attorney employed by the **Company** to render professional legal services, which include notarizing, certifying or acknowledging signatures. **Moonlighting** shall not include any such professional legal services by any such **Insured Person** in his or her capacity with any entity that is not a current **Insured** at the time such services are rendered, including, without limitation, such **Insured Person's** capacity as an owner, principal, partner, employee, counsel or of counsel with any such entity.

J.    **Outside Entity** means:

1.    any organization chartered and operated as a not-for-profit organization;

2.    any other organization specifically included as an **Outside Entity** by specific written Endorsement applicable to this **Coverage Section**;

provided any organization referred to in Subsections 1. or 2. above is not included in the definition of **Company**.

K.    **Outside Position** means the position of director, officer, manager, trustee, governor or other equivalent executive position in an **Outside Entity** held by an **Insured Person** as defined in Subsection 1. of **II. DEFINITIONS** Section F. if service in such position is with the knowledge and consent of, at the direction or request of, or part of the duties regularly assigned to the **Insured Person**, by the **Company**.

L.    **Shareholder Derivative Demand** means a written demand by one or more shareholders of the **Company** against the **Company's** board of directors or board of managers to bring a civil proceeding on behalf of the **Company** against any **Insured Person** for a **Wrongful Act**;

M.    **Wrongful Act** means any actual or alleged act, error, omission, misstatement, misleading statement, neglect or breach of duty:

1.    by an **Insured Person** while acting in his or her capacity as such and on behalf of the **Company**, or any matter claimed against the **Insured Person** solely by reason of his or her status as an **Insured Person**;

2.    by an **Insured Person** employed by the **Company** as an attorney (i) while acting in his or her capacity as an **Insured Person** and as a licensed attorney rendering professional legal services, including, without limitation, pro bono legal service; or (ii) while **Moonlighting;** or (iii) by any **Insured Person** while acting under the supervision of and at the direction of another **Insured Person** who is employed by the **Company** as an attorney provided that such other **Insured Person**, in providing such supervision and direction, is acting in his or her capacity as an **Insured Person** and as a licensed attorney rendering professional legal services. Rendering professional legal services includes notarizing, certifying or acknowledging signatures;

3.    with respect to any **Outside Position**, by such **Insured Person** in his or her capacity as such and while acting on behalf of the **Outside Entity** or any matter claimed against such **Insured Person** solely by reason of his or her status in such **Outside Position**; or

4.    with respect to **INSURING AGREEMENT** C., by the **Company**.

**III.    EXCLUSIONS**

The **Insurer** shall not be liable for any **Loss** in connection with any **Claim** made against any **Insured**:

A.  based upon, arising out of, or attributable to:

1.  any **Wrongful Act**, matter, fact, circumstance, situation, transaction, or event which has been the subject of written notice given prior to the inception of this Policy under any other policy; or

2.  any other **Wrongful Act**, whenever committed or allegedly committed, which together with a **Wrongful Act** described in Subsection 1. above, constitute **Interrelated Wrongful Acts**;

B.  based upon, arising out of, or attributable to:

1.  any **Claim** pending as of or made prior to the Pending or Prior Date set forth in Item 11. of the Declarations, or any **Wrongful Act**, fact, circumstance or situation underlying or alleged therein; or

2.  any other **Wrongful Act**, whenever committed or allegedly committed, which together with a **Wrongful Act** described in Subsection 1. above, constitute **Interrelated Wrongful Acts**;

C.  brought or maintained by or on behalf of the **Company**, any **Insured Person** (as defined in **II. DEFINITIONS** Section F. Subsection 1.) in any capacity or by any past, present or future security holder, partner or member of the **Company**, provided this exclusion shall not apply to:

1.  a **Claim** by or on behalf of a security holder, partner or member of the **Company**, whether direct or derivative, that is brought and maintained without the solicitation, assistance or participation of any **Insured** or **Outside Entity**;

2.  a **Claim** brought or maintained by any **Insured Person** that is in the form of a cross-claim or third-party claim for contribution or indemnity which is part of, and results directly from, a **Claim** which is otherwise covered under the terms of this **Coverage Section**;

3.  a **Claim** brought by any **Insured Person** who has not served in such capacity for at least three (3) years prior to the date such **Claim** is first made and who brings and maintains such **Claim** without the solicitation or active assistance or participation of the **Company** or any other **Insured Person** who is serving or has served as an **Insured Person** within such three (3) year period;

4.  a **Claim** brought or maintained by or on behalf of a bankruptcy or insolvency trustee, examiner, receiver, similar official or creditors' committee for such **Company**, or any assignee of such trustee, examiner, receiver, or similar official or creditors' committee;

5.  a **Claim** brought by or on behalf of the **Company** against any **Insured Person** that is brought and maintained in any non-common law jurisdiction outside the United States; or

6.  a **Claim** brought against an **Insured Person** based upon or arising out of any protected activity specified in any "whistleblower" protection pursuant to any foreign, federal, state or local law;

D.  for any **Wrongful Act** by an **Insured Person** in an **Outside Position** if such **Claim** is brought or maintained by or on behalf of the **Outside Entity** in which the **Insured Person** serves, or by or on behalf of any past, present or future director, officer, manager, governor, trustee, security

holder, partner or member of such **Outside Entity**, provided this exclusion shall not apply to:

1.  a **Claim** by or behalf a security holder, partner or member of the **Outside Entity,** whether direct or derivative, that is brought and maintained without the solicitation, assistance or participation of the **Company**, any **Insured Person**, the **Outside Entity** or any director, officer, manager, governor or trustee of the **Outside Entity**;

2.  a **Claim** brought or maintained on behalf of such **Outside Entity** that is in the form of a cross-claim or third-party claim for contribution or indemnity which is part of, and results directly from, a **Claim** which is otherwise covered under the terms of this **Coverage Section**;

3.  a **Claim** brought by a director, officer, manager, governor or trustee of such **Outside Entity** who has not served as such for at least three (3) years prior to the date such **Claim** is first made and who brings and maintains such **Claim** without the solicitation by, or active assistance or participation of, such **Outside Entity** or any other director, officer, manager, governor or trustee of such **Outside Entity** who is serving or has served as such within such three (3) year period;

4.  a **Claim** brought or maintained by or on behalf of a bankruptcy or insolvency trustee, examiner, receiver, similar official or creditors' committee for such **Outside Entity**, or any assignee of such trustee, examiner, receiver, similar official or creditors' committee;

5.  a **Claim** by or on behalf of the **Outside Entity** brought and maintained in any non-common law jurisdiction outside the United States; or

6.  a **Claim** brought against the **Outside Entity** based upon or arising out of any protected activity specified in any "whistleblower" protection pursuant to any foreign, federal, state or local law;

E.  for actual or alleged bodily injury, mental anguish, emotional distress, sickness, disease or death of any person or damage to or destruction of any tangible property including loss of use thereof;

F.  based upon, arising out of or attributable to:

1.  the actual, alleged or threatened discharge, release, escape, seepage, migration or disposal of **Pollutants** at any time; provided, however, that this Subsection 1. shall not be applicable to **INSURING AGREEMENT** A. except with respect to **Loss** (Including without limitation legal and professional fees) incurred in connection with testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, or in any way responding to, or assessing the effects of, **Pollutants**; or

2.  any direction, demand or request to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, **Pollutants**;

G.  for service by the **Insured Person(s)** in any position or capacity in any organization other than the **Company** even if the **Company** directed or requested the **Insured Person(s)** to serve in such other position or capacity, provided this exclusion shall not apply to service by the **Insured Person** in an **Outside Position**;

H.  based upon, arising out of or attributable to (i) the actual or alleged purchase or sale, or offer to purchase or sell any securities of any kind, including, without limitation, securities issued by an entity other than the **Company**, or (ii) the actual or alleged violation of the Securities Act of 1933, the Securities Exchange Act of 1934 or any other federal, state or local regulation, rule or statute regulating securities. This exclusion shall not be applicable to:

1.   the actual or alleged purchase, sale or offer to purchase or sell any securities of the **Company** in any transaction that is in fact exempt from registration under the Securities Act of 1933 (including any amendments thereto and regulations promulgated there under) and under any similar provision of foreign law;

2.   a **Claim** by a securities holder of the **Company** arising out of the actual or alleged failure of the **Company** to undertake a public offering of securities, or

3.   a **Claim** for a **Wrongful Act** in connection the preparation of the **Company** to commence an initial public offering of securities, including without limitation, any **Wrongful Act** relating to a road show. This exception 3. to Exclusion H. shall be shall void ab initio upon the registration statement for such initial public offering's becoming effective (the "IPO Commencement Time"). The preceding sentence shall not be applicable, and this exception 3. to Exclusion H. shall not be void ab initio upon the IPO Commencement Time, if the **Claim** is made against an **Insured** and reported to the **Insurer** in accordance with the reporting provisions of **IV. NOTICE AND REPORTING** Section E. of the General Terms and Conditions of this Policy prior to the IPO Commencement Time and no other insurance policy is applicable to the **Claim** or would be applicable but for the exhaustion of its Limit of Liability or the failure to provide notice to the insurer of such other policy;

4.   If the **Policyholder**, at least thirty (30) days prior to the IPO Commencement Time in connection with an initial public offering of securities of the **Company** or at least 30 (thirty) days prior to the purchase or sale of securities in a transaction other than an such initial public offering, provides the **Insurer** with written notice of the initial public offering or other proposed transaction together with such information as the **Insurer** may require, the **Insurer** may, in its sole discretion, offer to amend this Policy to provide coverage with respect to the proposed transaction or to issue another policy applicable to such proposed transaction; provided that the **Policyholder** shall have agreed to any additional premium or amendments to the Policy or to the terms of another policy pertaining to such proposed transaction and provided further, that the **Policyholder** shall pay, when due, any required additional premium relating tothe amendment of this Policy or the issuance of another policy.

I.   based upon, arising out of or attributable to any actual or alleged employment related **Wrongful Act**, including but not limited to any refusal to employ, wrongful termination, wrongful discipline, breach of contract, harassment, violation of civil rights, or retaliation;

J.   based upon, arising out of, attributable to any actual or alleged violation of: (i) any law governing workers' compensation, unemployment insurance, social security or disability benefits (ii) the Fair Labor Standards Act; (iii) the National Labor Relations Act; (iv) the Worker Adjustment and Retraining Notification Act; (v) the Consolidated Omnibus Budget Reconciliation Act of 1985; (vi) the Occupational Safety and Health Act; (vii) the Employee Retirement Security Act of 1974 (viii) any federal, state, local or foreign statute, rule, regulation or common law similar or related to, or promulgated pursuant to, any of the foregoing in subparts (i) through (vii) or that otherwise pertain to compensation (including but not limited to the timely payment of compensation), bonuses, perquisites, benefits of any kind, deductions, withholdings, breaks in the workplace (for rest periods or any other purpose), or the provision of statements of earnings or amounts withheld from earnings;

K.   based upon, arising out of or attributable to any actual or alleged:

1.   Payments, commissions, gratuities, benefits or favors to or for the benefit of any full or part time domestic or foreign government official, agent, representative, employee, or military personnel, including any family member of, or any entity affiliated with, any of the foregoing;

2.    Payments, commissions, gratuities, benefits or favors to or for the benefit of any full or part time officers, directors, agents, partners, representatives, principal shareholders, owners or employees of any customer or potential customer of any **Insured**, including any family member of, or any entity affiliated with, any of the foregoing; or

3.    Political contributions, whether domestic or foreign;

L.    based upon, arising out of or attributable to any deliberate criminal or deliberate fraudulent act or omission or knowing violation of any statute, regulation or law by the **Insured** if established by any final, non-appealable adjudication in any action or proceeding other than an action or proceeding initiated by the **Insurer** to determine coverage under any **Coverage Section** of this Policy; or

M.    based upon, arising out of or attributable to any **Insured** gaining any profit, remuneration, or other advantage to which such **Insured** was not legally entitled if established by any final, non-appealable adjudication in any action or proceeding other than an action or proceeding initiated by the **Insurer** to determine coverage under any **Coverage Section** of this Policy.

For the purpose of determining the applicability of Exclusions L. and M., the **Wrongful Act** or knowledge of any **Insured Person** shall not be imputed to any other **Insured Person**, and under **Insuring Agreement** C., only the **Wrongful Act** or knowledge of the past, present or future Chief Executive Officer, Chief Financial Officer, President or General Counsel of a **Company** shall be imputed to such **Company**.

Solely with respect to **INSURING AGREEMENT** C., the **Insurer** shall not be liable for any **Loss** in connection with any **Claim** made against the **Company**:

N.    based upon, arising out of or attributable to any actual or alleged libel, slander oral or written publication of defamatory or disparaging material, invasion of privacy, wrongful entry, eviction, false arrest, false imprisonment, assault, battery, loss of consortium, malicious prosecution or malicious use or abuse or process;

O.    based upon, arising out of or attributable to any actual or alleged discrimination against, or harassment of, any person or entity, whether employment related or not;

P.    based upon, arising out of or attributable to the actual or alleged violation of intellectual property rights, including, without limitation: (i) infringement of patent, copyright, trademark, trade dress, service mark, service name, title or slogan; (ii) misappropriation of ideas or trade secrets; or iii) plagiarism;

Q.    based upon, arising out of or attributable to any actual or alleged (i) intentionally false or intentionally misleading advertising or (ii) price fixing, predatory pricing, restraint of trade, monopolization, anti-competitive conduct, unfair competition or unfair business or trade practice or any interference in another's contractual or business relationship. Without limitation, this exclusion shall be applicable to any actual or alleged violation of the Federal Trade Commission Act, the Sherman Act, the Clayton Act, any amendments to any of the foregoing or any regulations promulgated pursuant to any of the foregoing; any statutory or common law definition of unfair competition, or unfair business or trade practice; or any provision of any federal, state, local or foreign statute regulation or common law relating to any of the foregoing or actually or allegedly relating to any activity set forth in this exclusion;

R.    based upon, arising out of or attributable to any **Insured's** actual or alleged rendering or failure to render professional services, provided, however, that this exclusion shall not be applicable to **Investigative Costs**; or

S.    based upon, arising out of or attributable to any actual or alleged liability of the **Company** under any express contract or agreement; provided, however, that this exclusion shall not be

applicable to any liability that would have attached to the **Company** in the absence of such contract or agreement.

## IV.   OUTSIDE POSITION COVERAGE

Subject to this Policy's other terms, **INSURING AGREEMENTS** A. and B. shall extend coverage to **Insured Persons** while serving in an **Outside Position**. However, this coverage shall be specifically excess of any indemnification and insurance available from or provided by the **Outside Entity** or any other entity in which the **Insured Person(s)** serve(s) in the **Outside Position**. Payment by the **Insurer** or any affiliate of the **Insurer** under another policy as a result of a **Claim** against an **Insured Person(s)** in an **Outside Position** shall reduce, by the amount of such payment, the **Insurer's** Limit of Liability applicable to this **Coverage Section** with respect to such **Claim**.

## V.   GENERAL CONDITIONS AND LIMITATIONS

### A.   LIMITS OF LIABILITY

1.   The **Insurer's** maximum aggregate Limit of Liability for all **Investigative Costs** on account of all **Shareholder Derivative Demands** under **INSURING AGREEMENT** D. shall be the sub-limit set forth in Item 4.B.2. of the Declarations, which shall be part of and not in addition to the Limit of Liability set forth in Item 4.B.1. of the Declarations.

2.   The **Insurer's** maximum aggregate Limit of Liability for all **Loss** on account of all **Employed Lawyers Claims** shall be subject to the Sub-limit of Liability, if any, set forth in Item 4.B.3. of the Declarations.  If no such sub-limit is set forth, then coverage for any **Employed Lawyer Claim** shall not be subject to a Sub-limit of Liability.

Section **IV.A. LIMITS OF LIABILITY** of the General Terms and Conditions Section applies to the coverage afforded by this **Coverage Section** in addition to this Section **V.A.**

### B.   RETENTION

No Retention shall apply to any **Loss** under **INSURING AGREEMENT** A. or to **Investigative Costs** under **INSURING AGREEMENT** D. except as provided in the preceding sentence, and subject to all other terms of this Policy applicable to this **Coverage Section**, the **Insurer** shall only be liable for the amount of **Loss** arising from a **Claim** which is in excess of the applicable Retention set forth in Item 5.A. of the Declarations for each **INSURING AGREEMENT**.

The application of a Retention to **Loss** under one **INSURING AGREEMENT** shall not reduce the Retention that applies to **Loss** under any other **INSURING AGREEMENT**.  If **Loss** arising from a **Claim** is covered in whole or in part under more than one **INSURING AGREEMENT**, the largest applicable Retention shall apply.

If for any reason (including but not limited to **Financial Insolvency**), the **Company** fails or refuses to advance, pay or indemnify **Loss** of an **Insured Person** within the applicable Retention, if any, then the **Insurer** shall advance such amounts on behalf of the **Insured Person** until the **Company** agrees to make such payments, or the Retention has been satisfied.  In no event shall any such advancement by the **Insurer** relieve the **Company** of any duty it may have to provide advancement, payment or indemnification to any **Insured Person**, and the **Company** agrees to provide such advancement, payment or indemnification to the fullest extent permitted by law.

Section **IV.B. RETENTION** of the General Terms and Conditions Section applies to the coverage afforded by this **Coverage Section** in addition to this Section **V.B.**

### C.   DEFENSE, SETTLEMENT AND COOPERATION

The **Insurer** shall have the right and duty to defend any **Claim** covered under this **Coverage**

Section under **INSURING AGREEMENTS** A., B. or C. even if the allegations are false, fraudulent or groundless. The **Insurer's** duty to defend any **Claim** under this **Coverage Section** shall terminate upon the earliest of (i) the exhaustion of the maximum aggregate Limit of Liability applicable to this Policy; (ii) the exhaustion of the maximum aggregate Limit of Liability applicable to this **Coverage Section**; or (iii) the exhaustion of the applicable Sub-limit of Liability of coverage for the **Claim** is afforded solely under a Sub-limit. If the maximum aggregate Limit of Liability applicable to this **Coverage Section** is subject to a shared Limit of Liability with another **Coverage Section**, the maximum aggregate Limit of Liability applicable to this **Coverage Section** shall be reduced or exhausted by payments made by the **Insurer** under such other **Coverage Section**.

The **Insured(s)** shall give the **Insurer** full cooperation, assistance and information as the **Insurer** shall reasonably require, including without limitation, attendance at hearings and trials; the giving and securing of evidence; assistance in enforcing rights of contribution and indemnity or in asserting any counterclaim, cross claim or third party claim; and in the evaluation of damages and liability in connection with any **Claim**. The **Insured(s)** shall do nothing that shall prejudice the **Insurer's** position or its potential rights of recovery. The **Insured(s)** shall not undertake to negotiate to settle, offer to settle, or settle any **Claim**, incur any **Defense Costs** or otherwise assume any contractual obligation, admit any liability, or stipulate to any judgment with respect to any **Claim** without the **Insurer's** prior written consent, such consent not to be unreasonably withheld. Any **Defense Costs** incurred or settlements made without the **Insurer's** prior written consent shall not be covered under this **Coverage Section**.

In the event the **Insurer** recommends a settlement of a **Claim**, the amount of which when added to the amount of **Defense Costs** and other **Loss** incurred as of the date of such recommendation, is within the applicable Limit of Liability and is acceptable to the claimant, the **Insurer's** liability for all **Loss** in connection with such **Claim** shall be subject to a 15% coinsurance obligation with respect to all **Loss** in excess of the amount of **Loss** (inclusive of **Defense Costs** and the recommended settlement) incurred as of the date of the recommendation. This paragraph shall not be applicable when, as of the date of the recommendation, **Loss** (inclusive of **Defense Costs** and the recommended settlement) is within the applicable Retention.

D.    **APPLICABILITY OF GENERAL TERMS AND CONDITIONS**

For ease of reference only, certain provision(s) of this **Coverage Section** specifically cross-reference a provision in the General Terms and Conditions Section, but unless otherwise stated to the contrary in the General Terms and Conditions Section or in this **Coverage Section**, the terms of the General Terms and Conditions Section shall apply to this **Coverage Section**. In the event of any conflict between the General Terms and Conditions Section and this **Coverage Section**, the terms of this **Coverage Section** shall apply.

E.    **REPRESENTATIONS**

By acceptance of this Policy, the **Insured(s)** represent and acknowledge that the statements and information contained in the **Application** are accurate and complete and that this Policy is issued in reliance upon the accurateness and completeness of such representations, statements and information. No knowledge possessed by an **Insured Person** shall be imputed to any other **Insured Person**.

The **Insured(s)** further agree that in the event of any material misstatement, misrepresentation or omission in the **Application**, this **Coverage Section** shall be void as to:

1.    **Loss** under **INSURING AGREEMENT** B. for the indemnification of any **Insured Person** who knew, as of the inception date of this Policy, the facts that were not accurately and completely disclosed; and

2.   **Loss** under **INSURING AGREEMENT** C. if any **Insured Person** who is or was a Chief Executive Officer or Chief Financial Officer of the **Policyholder** knew, as of the inception date of this Policy, the facts that were not accurately and completely disclosed;

This Section applies even if the **Insured Person** did not know that such incomplete or inaccurate disclosure has been provided to the **Insurer** or included within the **Application**.

The **Insurer** irrevocably waives any right it may have to rescind or void coverage available under **INSURING AGREEMENT** A. of this **Coverage Section**, in whole or in part, on any grounds.

By:

_____          _____
President                            Secretary

**PRIVATE PLAYBOOK**<sup>SM</sup>
**EMPLOYMENT PRACTICES**
**LIABILITY COVERAGE**
**SECTION**

 ARGO INSURANCE

In consideration of payment of the premium and in reliance upon the statements and representations made in the **Application**, and subject to the Declarations and the other terms of this Policy applicable to this **Coverage Section**, the Insurance Company shown in the Declarations (the "**Insurer**") and the **Insured(s)** agree as follows:

I.    **INSURING AGREEMENTS**

  A.    **EMPLOYMENT PRACTICES WRONGFUL ACT COVERAGE**

     The **Insurer** shall pay the **Loss** of any **Insured** arising from a **Claim** first made during the **Policy Period** (or the **Extended Reporting Period**, if exercised) against such **Insured** for an **Employment Practices Wrongful Act.**

  B.    **THIRD PARTY WRONGFUL ACT COVERAGE**

     The **Insurer** shall pay the **Loss** of any **Insured** arising from a **Claim** first made during the **Policy Period** (or the **Extended Reporting Period**, if exercised) against such **Insured** for a **Third Party Wrongful Act.**

II.    **DEFINITIONS**

  A.    **Claim** means:

     1.    a written demand against any **Insured** for monetary, non-monetary or injunctive relief, including a written demand that the **Insured** toll or waive a statute of limitations pertaining to an **Employment Practices Wrongful Act** or **Third Party Wrongful Act**;

     2.    a civil proceeding against any **Insured** commenced by the service of a complaint or similar pleading;

     3.    a criminal proceeding against any **Insured** commenced by return of an indictment, information or similar document;

     4.    an administrative or regulatory proceeding against any **Insured** commenced by the filing of a notice of charges or similar document, including but not limited to any such proceeding before the Equal Employment Opportunity Commission or any similar state, local or foreign governmental body or a proceeding instituted on behalf of the Office of Federal Contract Compliance Programs pursuant to Executive Order 11246 and Department of Labor Regulations promulgated pursuant thereto; or

     5.    an arbitration, mediation or any other alternative dispute resolution proceeding against any **Insured**;

     **Claim** shall also include any appeal resulting from Subsections 2., 3., 4. or 5. above.

     **Claim** shall not include any labor or grievance proceeding pursuant to a collective bargaining agreement.

B.  **Defense Costs** means that part of **Loss** consisting of reasonable costs, charges, fees (including but not limited to attorney's fees and expert's fees) and expenses (other than regular or overtime wages, benefit expenses, salaries, fees, other types of compensation or overhead expenses of **Insured Person(s)**, or the **Company**) (i) incurred by the **Insurer** or the **Insured(s)** and consented to by the **Insurer** (such consent to not be unreasonably withheld) in defending or investigating **Claims**, including costs assessed against the **Insured(s)** in a **Claim** or the premium for appeal, attachment or similar bonds provided the **Insurer** shall have no obligation to apply for or furnish such bonds or (ii) incurred at the **Insurer's** request to assist the **Insurer** in the investigation of a **Claim**.

C.  **Discrimination** means the violation of any federal, state, local or foreign statute, rule, regulation or common law prohibiting discrimination, including, without limitation, discrimination based upon race, color, religion, age, sex, disability, pregnancy, sexual orientation, national origin or military status.

D.  **Employment Practices Wrongful Act** means any employment related actual or alleged:

1.  Wrongful dismissal, discharge or termination of employment (whether actual or constructive);

2.  **Discrimination**;

3.  **Harassment**;

4.  Wrongful demotion or deprivation of promotion or other career opportunity, including the failure to grant tenure;

5.  Wrongful change in the terms and conditions of employment or employment status;

6.  **Retaliation**;

7.  Defamation, libel and slander, including defamatory employment references; invasion of privacy; infliction of emotional distress or mental anguish; misrepresentation; negligence (including negligent hiring, evaluation, training, retention and supervision), false arrest, false imprisonment; and wrongful detention of a natural person;

8.  Violation of civil rights;

9.  Wrongful discipline;

10.  Wrongful failure to provide or enforce **Company** policies or procedures;

11.  Wrongful failure to employ; or

12.  Breach of implied employment contract;

committed or allegedly committed by any **Insured** provided, however, that with respect to any of the foregoing **Employment Practices Wrongful Acts**, such **Employment Practices Wrongful Act(s)** must relate: (i) in the case of a **Claim** by any **Employee,** to the employment relationship of the **Employee(s)** with the **Company**; or (ii) in the case of **Claim** by any applicant for employment, to the potential employment relationship of the applicant(s) with the **Company.**

E.  **Employee** means any past, present or future full time, part time, seasonal or temporary employee of the **Company**, including any officer, volunteer, leased employee or natural person independent contractor, provided, that in each instance such individual is an **Employee** solely in his or her capacity as such and provided, further, in the case of leased employees, volunteers and independent contractors, the **Company** indemnifies such individuals in the same manner it indemnifies permanent employees.

F.    **Harassment** means unwelcomed sexual advances, requests for sexual favors or other verbal, visual or physical conduct of a sexual or nonsexual nature where such conduct is based upon the race, color, age, religion, sex, disability, pregnancy, sexual orientation, national origin or other classification of an **Employee** or applicant for employment with the **Company** or other individual protected by federal, state or local law;

For the purposes of **INSURING AGREEMENT** B. only, **Harassment** means unwelcome sexual advances against, or requests for sexual favors from, an individual other than an **Employee** or applicant for employment with the **Company**.

G.    **Insured(s)** means:

1.    the **Insured Person(s)**; and

2.    the **Company**.

H.    **Insured Person(s)** means:

1.    any one or more natural persons who were, now are or shall become a duly elected or appointed director, trustee, governor, management committee member, **Manager** or officer of the **Company** and with respect to a **Company** incorporated outside the United States, the functional equivalent of any of the foregoing positions; provided, that in each instance such individual is an **Insured Person** solely in his or her capacity as such; or

2.    any **Employee**.

I.    **Loss** means the total amount which the **Insured(s)** become legally obligated to pay on account of **Claims** made against them solely for **Employment Practices Wrongful Acts** or **Third Party Wrongful Acts** for which coverage applies, including, but not limited to: damages, judgments and settlements; any award of pre-judgment and post-judgment interest on covered judgments and settlements; claimants' counsel fees awarded pursuant to a covered judgment or included as part of a covered settlement; front pay back pay and **Defense Costs**. **Loss** shall also include (i) punitive or exemplary damages, the multiplied portion of multiplied damages not in excess of the amount so multiplied and liquidated damages under the Equal Pay Act or the Age Discrimination in Employment Act awarded pursuant to a covered judgment or included as part of a covered settlement and (ii) the cost of any training, re-education, sensitivity or minority development program that an **Insured** is obligated to institute by reason of a covered judgment or settlement (any such costs constituting "**Sensitivity Training Costs**"). Coverage for all **Sensitivity Training Costs** is subject to the Sub-limit of Liability set forth in Item 4.C.3. of the Declarations;

**Loss** shall not include:

1.    criminal or civil fines or penalties;

2.    taxes;

3.    any amount for which the **Insured(s)** are not financially liable or which are without legal recourse to the **Insured(s)**;

4.    matters which may be deemed uninsurable under the law pursuant to which this **Coverage Section** shall be construed, provided, however, that the insurability of punitive or exemplary damages, the multiplied portion of multiplied damages or liquidated damages under the Equal Pay Act or the Age Discrimination in Employment Act shall be governed by the law of any jurisdiction having a substantial relationship to the **Claim**, the **Loss** or this **Coverage Section** that most favors the insurability of such punitive or exemplary damages, multiplied portion of multiplied damages or liquidated damages;

5. any amounts paid or incurred by any **Insured(s)** in providing any injunctive or non-pecuniary relief, including any liability for or cost to modify any building or property. For the purposes of this provision, **Sensitivity Training Costs** shall not be considered injunctive or non-pecuniary relief;

6. disgorgement or restitution, whether paid, returned or reimbursed pursuant to a settlement or in satisfaction of a judgment;

7. compensation or benefits of any kind, except salary and wages (as a component of a front pay or back pay award), including but not limited to the following: stock, stock options or grants, the right to purchase stock at a discount from the market, stock appreciation rights, or any other stock related compensation, perquisites, severance compensation of any kind, profit sharing, commissions, bonuses, holiday pay, and sick pay; or

8. in the case of payment by, or on behalf of, an **Insured** to, or for the benefit of, a claimant hired, promoted or reinstated pursuant to a settlement, judgment or other resolution of a **Claim,** future salary or wages or compensation of any kind, including without limitation: stock, stock options or grants, the right to purchase stock at a discount from the market, stock appreciation rights, or any other stock related compensation, perquisites, severance compensation of any kind, profit sharing, commissions, bonuses, holiday pay, and sick pay.

J. **Retaliation** means an **Employment Practices Wrongful Act**, as defined in **II. DEFINITIONS** D. Subsections 1., 2., and 4. through 12., against an **Employee** committed or allegedly committed as a result of such **Employee's**:

1. exercising any rights under any law pertaining to employee rights, including any worker's compensation law, the Family and Medical Leave Act or the Americans with Disabilities Act;

2. refusing to violate any law or opposing unlawful conduct;

3. disclosing, or threatening to disclose, unlawful conduct to any governmental body or to management of the **Company** or an **Outside Entity**;

4. filing, or threatening to file, any action under the Federal False Claims Act or any other federal, state, local or foreign "whistleblower" statute or

5. cooperating in any legal proceeding or governmental investigation pertaining to alleged violations of law by the **Insured** or an **Outside Entity**.

K. **Third Party Wrongful Act** means, when committed or allegedly committed by an **Insured(s)**, any actual or alleged **Harassment** of, or **Discrimination** against, any individual other than an **Employee** of, or applicant for employment with, the **Company** including any civil rights violation relating to such **Harassment** or **Discrimination**, provided that such **Harassment** or **Discrimination** occurs or is alleged to have occurred in the course of such individual's relationship with the **Company**, including without limitation any such relationship as an actual or potential customer, patient, student or service provider. **Third Party Wrongful Act** shall not include any actual or alleged violation of any federal, state, local or foreign statute, rule, regulation or common law pertaining to unfair competition, unfair business practices, price discrimination or anti-competitive conduct.

## III. EXCLUSIONS

The **Insurer** shall not be liable for any **Loss** in connection with any **Claim** made against any **Insured**:

A. based upon, arising out of, or attributable to:

1.    any **Employment Practices Wrongful Act**, **Third Party Wrongful Act**, matter, fact, circumstance, situation, transaction, or event which has been the subject of written notice given prior to the inception of this Policy under any other policy; or

2.    any other **Employment Practices Wrongful Act** or **Third Party Wrongful Act**, whenever committed or allegedly committed, which together with an **Employment Practices Wrongful Act** or **Third Party Wrongful Act** described in subparagraph 1. above, constitute **Interrelated Wrongful Acts**;

B.    based upon, arising out of, or attributable to:

1.    any **Claim** pending as of or made prior to the Pending or Prior Date set forth in Item 11.B. of the Declarations, or any **Employment Practices Wrongful Act**, **Third Party Wrongful Act**, fact, circumstance or situation underlying or alleged therein; or

2.    any other **Employment Practices Wrongful Act** or **Third Party Wrongful Act**, whenever committed or allegedly committed, which together with an **Employment Practices Wrongful Act** or **Third Party Wrongful Act** described in subparagraph 1. above, constitute **Interrelated Wrongful Acts**;

C.    for any actual or alleged liability of any **Insured** under any express contract or agreement; provided, however, that this exclusion shall not apply to any liability that would have attached in the absence of such contract or agreement or to **Defense Costs**;

D.    for any actual or alleged violation of the Employee Retirement Income Security Act of 1974 ("ERISA") (or amendments thereto), or similar provisions of any federal, state, local, or foreign, statute, rule, regulation or common law pertaining to fiduciaries of any pension, profit sharing, health and welfare or other employee benefit plan or trust;

E.    for any actual or alleged violation of: (i) any law governing workers' compensation, unemployment insurance, social security or disability benefits (ii) the Fair Labor Standards Act (except the Equal Pay Act); (iii) the National Labor Relations Act; (iv) the Worker Adjustment and Retraining Notification Act; (v) the Consolidated Omnibus Budget Reconciliation Act of 1985; (vi) the Occupational Safety and Health Act; (vii) any federal state, local, or foreign, statute, rule, regulation or common law similar to, or promulgated pursuant to, any of the foregoing in subparts (i) through (vi); provided that this exclusion shall not apply to the extent a **Claim** is for **Retaliation**;

F.    for bodily injury, sickness, disease or death of any person or damage to or destruction of any tangible property including loss of use thereof; provided this exclusion shall not apply to **Loss** for emotional distress or mental anguish that is otherwise covered under this **Coverage Section**;

G.    brought by or on behalf of any security holder of the **Company** in their capacity as such, including but not limited to any such security holder who is an **Employee** or applicant for employment and irrespective of whether such **Claim** is brought directly or derivatively;

H.    for service by the **Insured Person(s)** in any position or capacity in any organization other than the **Company** even if the **Company** directed or requested the **Insured Person(s)** to serve in such other position or capacity;

I.    based upon, arising out of or attributable to any deliberate criminal or deliberate fraudulent act or omission by any **Insured** if established by any final, non-appealable adjudication in any action or proceeding other than an action or proceeding initiated by the **Insurer** to determine coverage under any **Coverage Section** of this Policy;

For the purpose of determining the applicability of this exclusion, the **Employment Practices Wrongful Act, Third Party Wrongful Act** or knowledge of any **Insured Person** shall not be imputed to any other

Insured Person and only the Employment Practices Wrongful Act, Third Party Wrongful Act or knowledge of the past, present or future Chief Executive Officer, President or Chief Financial Officer of a Company shall be imputed to such Company;

J.  Arising out of, based upon or attributable to any labor dispute or labor negotiations involving a union, including without limitation any lockout, strike, picket line or hiring of replacement workers; provided, however, this exclusion shall not be applicable to the extent a Claim is for Retaliation; or

K.  based upon, arising out of or attributable to any actual or alleged:

  1.  failure to provide or enforce meal breaks or rest breaks required by law;

  2.  improper classification of individuals for the purposes of determining eligibility for compensation or other benefits under any statute;

  3.  improper deductions from pay for any Employee;

  4.  refusal, failure, or inability of any Insured to pay, or to pay timely, wages or overtime pay for time worked (as opposed to front pay or back pay arising from tortious conduct or violations of the Civil Rights Act of 1964 or any similar federal, state, local or foreign statute, rule regulation or common law); or

  5.  failure to provide, or to provide timely, statements of earnings or amounts withheld from earnings.

  This exclusion K. shall not apply to the extent a Claim is for Retaliation.

## IV.  GENERAL CONDITIONS AND LIMITATIONS

### A.  LIMITS OF LIABILITY

  1.  The Insurer's maximum aggregate Limit of Liability for all Loss under INSURING AGREEMENT B. shall be the Sub-limit set forth in Item 4.C.2. of the Declarations, which shall be part of and not in addition to the Limit of Liability set forth in Item 4.C.1. of the Declarations.

  2.  The Insurer's maximum aggregate Limit of Liability for all Loss under INSURING AGREEMENT A. and INSURING AGREEMENT B. constituting Sensitivity Training Costs shall be the Sub-limit set forth in Item 4.C.3. of the Declarations, which shall be part of and not in addition to the Limit of Liability set forth in Item 4.C.1. of the Declarations.

  3.  Section IV.A. LIMITS OF LIABILITY of the General Terms and Conditions Section applies to the coverage afforded by this Coverage Section in addition to this Section IV.A.

### B.  RETENTION

The Insurer shall only be liable for the amount of Loss arising from a Claim which is in excess of the applicable Retention set forth in Item 5.B. of the Declarations for each INSURING AGREEMENT.

The application of a Retention to Loss under one INSURING AGREEMENT shall not reduce the Retention that applies to Loss under any other INSURING AGREEMENT. If Loss arising from a Claim is covered in whole or in part under more than one INSURING AGREEMENT, the largest applicable Retention shall apply.

If for any reason (including but not limited to Financial Insolvency), the Company fails or refuses to advance, pay or indemnify Loss of an Insured Person within the applicable Retention, then the Insurer shall advance such amounts on behalf of the Insured Person until the Company agrees to make such payments, or the Retention has been satisfied. In no event shall any such advancement by the Insurer

relieve the **Company** of any duty it may have to provide advancement, payment or indemnification to any **Insured Person**, and the **Company** agrees to provide such advancement, payment or indemnification to the fullest extent permitted by law.

Section **IV**.B. **RETENTION** of the General Terms and Conditions applies to the coverage afforded by this **Coverage Section** in addition to this Section **IV**.B.

C.    **DEFENSE, SETTLEMENT AND COOPERATION**

The **Insurer** shall have the right and duty to defend any **Claim** covered under this **Coverage Section** even if the allegations are false, fraudulent or groundless. The **Insurer's** duty to defend any **Claim** under this **Coverage Section** shall terminate upon the earliest of (i) the exhaustion of the maximum aggregate Limit of Liability applicable to this Policy; (ii) the exhaustion of the maximum aggregate Limit of Liability applicable to this **Coverage Section**; or (iii) the exhaustion of the applicable Sub-limit of Liability if coverage for the **Claim** is afforded solely under a Sub-limit. If the maximum aggregate Limit of Liability applicable to this **Coverage Section** is subject to a shared Limit of Liability with another **Coverage Section**, the maximum aggregate Limit of Liability applicable to this **Coverage Section** shall be reduced or exhausted by payments made by the **Insurer** under such other **Coverage Section**.

The **Insured(s)** shall give the **Insurer** full cooperation, assistance and information as the **Insurer** shall reasonably require, including without limitation, attendance at hearings and trials; the giving and securing of evidence; assistance in enforcing rights of contribution and indemnity or in asserting any counterclaim, cross claim or third party claim; and in the evaluation of damages and liability in connection with any **Claim**. The **Insured(s)** shall do nothing that shall prejudice the **Insurer's** position or its potential rights of recovery. The **Insured(s)** shall not undertake to negotiate to settle, offer to settle, or settle any **Claim**, incur any **Defense Costs** or otherwise assume any contractual obligation, admit any liability, or stipulate to any judgment with respect to any **Claim** without the **Insurer's** prior written consent, such consent not to be unreasonably withheld. Any **Defense Costs** incurred or settlements made without the **Insurer's** prior written consent shall not be covered under this **Coverage Section**.

In the event the **Insurer** recommends a settlement of a **Claim**, the amount of which when added to the amount of **Defense Costs** and other **Loss** incurred as of the date of such recommendation, is within the applicable Limit of Liability and is acceptable to the claimant, the **Insurer's** liability for all **Loss** in connection with such **Claim** shall be subject to a 15% coinsurance obligation with respect to all **Loss** in excess of the amount of **Loss** (inclusive of **Defense Costs** and the recommended settlement) incurred as of the date of the recommendation. This paragraph shall not be applicable when, as of the date of the recommendation, **Loss** (inclusive of **Defense Costs** and the recommended settlement) is within the applicable Retention.

D.    **APPLICABILITY OF GENERAL TERMS AND CONDITIONS**

For ease of reference only, certain provision(s) of this **Coverage Section** specifically cross-reference a provision in the General Terms and Conditions Section, but unless otherwise stated to the contrary in the General Terms and Conditions Section or in this **Coverage Section**, the terms of the General Terms and Conditions Section shall apply to this **Coverage Section.** In the event of any conflict between the General Terms and Conditions Section and this **Coverage Section**, the terms of this **Coverage Section** shall apply.

E.    **REPRESENTATIONS**

By acceptance of this Policy, the **Insured(s)** represent and acknowledge that the statements and information contained in the **Application** are accurate and complete and that this Policy is issued in reliance upon the accurateness and completeness of such representations, statements and information. No knowledge possessed by an **Insured Person** shall be imputed to any other **Insured Person**.

The **Insured(s)** further agree that in the event of any material misstatement, misrepresentation or omission in the **Application**, this **Coverage Section** shall be void as to:

1.   Any **Insured Person** who knew, as of the inception date of this Policy, that the facts were not accurately and completely disclosed, and the **Company** as indemnitor of any such **Insured Person**; and

2.   The **Company**, either for claims against it or as indemnitor of any **Insured Person**, if any **Insured Person** who is or was a Chief Executive Officer, President or Chief Financial Officer of the **Policyholder** knew, as of the inception date of this Policy, the facts that were not accurately and completely disclosed;

This Section applies even if the **Insured Person(s)** did not know that such incomplete or inaccurate disclosure has been provided to the **Insurer** or included within the **Application**.

By:

_____          _____
President                                 Secretary



## Privacy Policy

Argo Group US, Inc. ("Argo Group") recognizes the importance of maintaining the privacy of our customers and the confidentiality of each individual's nonpublic personal information, including Social Security numbers. We take seriously the responsibility that accompanies our collection of nonpublic personal information, including Social Security numbers. Accordingly, Argo's corporate policy is to protect the privacy and confidentiality of our consumers and their nonpublic personal information as required by law.

### Information Collection and Use

In order to conveniently and effectively provide and service the insurance products we sell, we may collect and use Social Security numbers and other nonpublic personal information. As such, this policy does not prohibit the collection or use of Social Security numbers and nonpublic personal information where legally authorized and/or required. This policy complies with the requirements of the Gramm-Leach-Bliley Act (GLBA) and applicable federal and state laws and regulations implementing the act. Such laws impose certain obligations upon third persons and organizations with which we share nonpublic personal information of our consumers, customers, former customers, or claimants. Accordingly, we prohibit the unauthorized disclosure of Social Security numbers and other protected nonpublic personal information, except as legally required or authorized.

### Information Sharing and Disclosure

Argo Group does not rent, sell or share your personally identifiable information with nonaffiliated third parties. Argo Group may, however, share personally identifiable information with third-party contractors. These third-party contractors are prohibited from using the information for purposes other than performing services for Argo Group. Argo Group may disclose your information to third parties when obligated to do so by law and to investigate, prevent, or take action regarding suspected or actual prohibited activities, including but not limited to fraud and situations involving the security of our operations and employees.

Finally, Argo Group may transfer information, including any personally identifiable information, to a successor entity in connection with a corporate merger, consolidation, sale of all or a portion of its assets, bankruptcy, or other corporate change.

### Security

In order to protect your nonpublic personal information, we limit access to nonpublic personal information by only allowing authorized personnel to have access to such information. Furthermore, we maintain physical, electronic and procedural security protections to safeguard the nonpublic personal information in our records. Documents that contain an individual's protected information are destroyed before disposal; this destruction process includes the shredding of print and disposable media and deletion of electronic media. Argo Group has security measures in place to protect the loss, misuse and alteration of the information under our control. Our hardware infrastructure is housed in a controlled access facility that restricts access to authorized individuals. The network infrastructure is protected by a firewall and traffic is monitored and logged both on the firewall and servers. Sensitive administrative activities are carried out over secure, encrypted links between our offices and hosting facility. Administrative

access is limited not only to authorized employees but also to specific remote administration protocols and IP addresses. All employees with access to personally identifiable information have been advised of Argo Group's security policies and practices. Argo Group will continue to conduct internal audits of its security systems and make all necessary enhancements to ensure the safety of the website and its users. No method of transmission over the Internet or method of electronic storage is 100% secure; therefore, while Argo Group uses commercially acceptable means to protect your information, we cannot guarantee absolute security.

Any Argo Group employee who becomes aware of the inappropriate use or disclosure of Social Security numbers and other protected nonpublic personal information is expected to immediately report such behavior to the General Counsel for further action.

**Corrected/Updated Information**

This policy applies to certain insureds of Argo Group, including but not limited to worker's compensation claimants. If you have any questions about this Privacy Policy, please contact:

General Counsel
Argo Group US, Inc.
P.O. Box 469011
San Antonio, Texas 78246
(210) 321-8400

*Note: Argo Group is the parent of Argonaut Insurance Company; Argonaut-Southwest Insurance Company; Argonaut-Midwest Insurance Company; Argonaut Great Central Insurance Company; Argonaut Limited Risk Insurance Company; ARIS Title Insurance Corporation; Select Markets Insurance Company; Colony Insurance Company; Colony Specialty Insurance Company; Peleus Insurance Company (fka Colony National Insurance Company); Rockwood Casualty Insurance Company; Somerset Casualty Insurance Company; Grocers Insurance Agency, Inc.; Central Insurance Management, Inc.; Alteris Insurance Services, Inc.; Trident Insurance Services, LLC; Commercial Deposit Insurance Agency, Inc.; Sonoma Risk Management, LLC; John Sutak Insurance Brokers, Inc.; Colony Management Services, Inc.; Argonaut Management Services, Inc.; and Argonaut Claims Management, LLC. This Privacy Policy applies to all companies and business produced or underwritten within Argo Group.

**POLICYHOLDER DISCLOSURE**
**NOTICE OF TERRORISM**
**INSURANCE COVERAGE**

You are hereby notified that under the Terrorism Risk Insurance Act, as amended, you have a right to purchase insurance coverage for losses resulting from acts of terrorism. *As defined in Section 102(1) of the Act:* The term "act of terrorism" means any act or acts that are certified by the Secretary of the Treasury—in consultation with the Secretary of Homeland Security, and the Attorney General of the United States—to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of certain air carriers or vessels or the premises of a United States mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

YOU SHOULD KNOW THAT WHERE COVERAGE IS PROVIDED BY THIS POLICY FOR LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM, SUCH LOSSES MAY BE PARTIALLY REIMBURSED BY THE UNITED STATES GOVERNMENT UNDER A FORMULA ESTABLISHED BY FEDERAL LAW. HOWEVER, YOUR POLICY MAY CONTAIN OTHER EXCLUSIONS WHICH MIGHT AFFECT YOUR COVERAGE, SUCH AS AN EXCLUSION FOR NUCLEAR EVENTS. UNDER THE FORMULA, THE UNITED STATES GOVERNMENT GENERALLY REIMBURSES 85% THROUGH 2015; 84% BEGINNING ON JANUARY 1, 2016; 83% BEGINNING ON JANUARY 1, 2017; 82% BEGINNING ON JANUARY 1, 2018; 81% BEGINNING ON JANUARY 1, 2019 and 80% BEGINNING ON JANUARY 1, 2020, OF COVERED TERRORISM LOSSES EXCEEDING THE STATUTORILY ESTABLISHED DEDUCTIBLE PAID BY THE INSURANCE COMPANY PROVIDING THE COVERAGE. THE PREMIUM CHARGED FOR THIS COVERAGE IS PROVIDED BELOW AND DOES NOT INCLUDE ANY CHARGES FOR THE PORTION OF LOSS THAT MAY BE COVERED BY THE FEDERAL GOVERNMENT UNDER THE ACT.

YOU SHOULD ALSO KNOW THAT THE TERRORISM RISK INSURANCE ACT, AS AMENDED, CONTAINS A $100 BILLION CAP THAT LIMITS U.S. GOVERNMENT REIMBURSEMENT AS WELL AS INSURERS' LIABILITY FOR LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM WHEN THE AMOUNT OF SUCH LOSSES IN ANY ONE CALENDAR YEAR EXCEEDS $100 BILLION. IF THE AGGREGATE INSURED LOSSES FOR ALL INSURERS EXCEED $100 BILLION, YOUR COVERAGE MAY BE REDUCED.

**Acceptance or Rejection of Terrorism Insurance Coverage**

  X      I hereby elect to purchase terrorism coverage for a prospective premium of $ Included.

        I hereby decline to purchase terrorism coverage for certified acts of terrorism. I understand that I will have no coverage for losses resulting from certified acts of terrorism.

| | Yellowstone Capital, LLC |
|---|---|
| Policyholder/Applicant's Signature | Named Insured |
| | Argonaut Insurance Company |
| Print Name | Insurance Company |
| | ML 7601979-2 |
| Title | Policy Number |
| | Swett & Crawford |
| Date | Producer |

AG ML 7052 PC (01/15)　　　　　　　　　　　　　　　　　　Page 1 of 2
© 2015 National Association of Insurance Commissioners

## POLICYHOLDER NOTICE
## U.S. DEPARTMENT OF TREASURY OFFICE OF FOREIGN ASSET CONTROL
## ("OFAC")

No coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of this Policy. Please read the Policy and review the Declarations page for complete information on the coverage provided by it.

This Policyholder Notice provides information concerning the potential impact on the coverage provided under this Policy due to directives issued by OFAC. Please read this Notice carefully. Please also review any economic and trade sanctions exclusion that may be attached to the Policy.

The Office of Foreign Assets Control (OFAC) administers and enforces sanctions policy, based on Presidential declarations of "national emergency". OFAC has identified and listed numerous"

- Foreign agents;
- Front organizations;
- Terrorists;
- Terrorist organizations; and
- Narcotics traffickers;

as "Specially Designated Nationals and Blocked Persons". This list can be located on the United States Treasury's web site – http//www.treas.gov/ofac.

In accordance with OFAC regulations, if it is determined that any Insured, or any other person or entity claiming the benefits of this Policy, has violated U.S. sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this Policy shall be considered a blocked or frozen contract and all provisions of this insurance are immediately subject to OFAC. When an insurance policy is considered to be such a blocked or frozen contract, no payments or premium refunds may be made without authorization from OFAC. Other limitations on the premiums and payments also apply.

AG ML 7053 PC (9 11)                     Page 1 of 1

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NEW JERSEY AMENDATORY ENDORSEMENT

In consideration of the payment of the premium for this Policy, it is hereby understood and agreed that the Policy is amended as follows:

**GENERAL TERMS AND CONDITIONS SECTION**

1.  Section **III. EXTENSIONS OF COVERAGE** B. **EXTENDED REPORTING PERIOD** is deleted and replaced by the following:

    B.    **EXTENDED REPORTING PERIOD**

    1.   If the **Insurer** or **Policyholder** terminates or refuses to renew this Policy or any **Coverage Section** of this Policy other than for nonpayment of premium, the **Insured(s)** shall receive, without payment of an additional premium, a thirty (30) day Automatic Extended Reporting Period following the effective date of termination or nonrenewal, but only with respect to any **Wrongful Act** taking place prior to the effective date of such termination or nonrenewal.    The Automatic Extended Reporting Period shall only be applicable to a particular **Coverage Section** if the **Insurer** or **Policyholder** terminates or refuses to renew such **Coverage Section**.

    2.   If the **Insurer** or **Policyholder** terminates or refuses to renew this Policy or any **Coverage Section** of this Policy other than for nonpayment of premium, the **Insured(s)** shall have the right, upon payment of the additional premium set forth in Item 7. of the Declarations, to the applicable **Extended Reporting Period** following the end of the Automatic Extended Reporting Period, but only with respect to any **Wrongful Act** taking place prior to the effective date of such termination or nonrenewal. The **Extended Reporting Period** shall only be applicable to a particular **Coverage Section** if the **Insurer** or **Policyholder** terminates or refuses to renew such **Coverage Section**.

    3.   The right of the **Insureds** to purchase the **Extended Reporting Period** shall lapse unless written notice of such election, together with payment of the additional premium due is given by the **Insureds** to the **Insurer** within thirty (30) days following the effective date of termination or nonrenewal.  The **Extended Reporting Period** offered by the **Insurer** shall be at least three (3) years in length.   The **Extended Reporting Period** is non-cancellable and the entire additional premium shall be deemed fully earned.

    4.   Neither the extension of the Automatic Extended Reporting Period nor the purchase of the **Extended Reporting Period** shall in any way increase the Limit of Liability set forth in Item 4. of the Declarations, and the Limit of Liability with respect to **Claims** made during the Automatic Extended Reporting Period and the **Extended Reporting Period** shall be part of, and not in addition to, the Limit of Liability for all **Claims** made during the **Policy Period**.

2.  Section **IV. GENERAL CONDITIONS AND LIMITATIONS** E. **REPORTING AND NOTICE** is amended by the addition of the following:

    Provided, however, notice given by or on behalf of the **Insured** to any authorized agent of the **Insurer** within this state, with particulars sufficient to identify the **Insured**, shall be deemed to be notice to the **Insurer**. Provided, further, the failure to give any notice required under this Policy shall not invalidate any **Claim** made by the **Insured** if it is shown not to have been reasonably

possible to give the notice within the prescribed time and that notice was given as soon as reasonably practicable.

3.  Section **IV. GENERAL CONDITIONS AND LIMITATIONS** I. **TERMINATION, CANCELLATION AND NONRENEWAL** 1.a. is amended by the addition of the following:

    The **Insurer** shall send the **Policyholder** any premium refund within a reasonable time not to exceed sixty (60) days from the date of cancellation or date of notice, whichever occurs last, or sixty (60) days after the completion of any payroll audit necessary to determine the amount of premium earned while the Policy was in force.

4.  Section **IV. GENERAL CONDITIONS AND LIMITATIONS** I. **TERMINATION, CANCELLATION AND NONRENEWAL** 1.b. is amended by the addition of the following:

    The notice of cancellation shall state the amount of premium due and the due date.  No cancellation for nonpayment of premium shall be effective if the amount due is made prior to the effective date set forth in the notice.

5.  Section **IV. GENERAL CONDITIONS AND LIMITATIONS** I. **TERMINATION, CANCELLATION AND NONRENEWAL** 2. is amended by deleting the words "sixty (60) days" and replacing them with the words "not more than one hundred twenty (120) days, but not less than thirty (30) days" and by the addition of the following:

    The notice of non-renewal shall state the reason for non-renewal.

6.  Section **IV. GENERAL CONDITIONS AND LIMITATIONS** I. **TERMINATION, CANCELLATION AND NONRENEWAL** is amended by the addition of the following:

    4.  If the **Insurer** elects to renew this Policy, the **Insurer** shall mail to the **Policyholder** written notice of the amount of the renewal premium and any change in Policy terms to the **Policyholder**, not more than one hundred twenty (120) days, but not less than thirty (30) days, prior to the due date of the premium and such notice shall state the effect of nonpayment of premium by the due date.

    5.  Pursuant to New Jersey law, this Policy cannot be cancelled or non-renewed for any underwriting reason or guideline which is arbitrary, capricious or unfairly discriminatory or without adequate prior notice to the **Policyholder**.  The underwriting reasons or guidelines that the **Insurer** can use to cancel or non-renew this Policy are maintained by the **Insurer** in writing and shall be furnished to the **Policyholder** or the **Policyholder's** lawful representative upon written request.

        This provision shall not apply to any Policy which has been in effect for less than sixty (60) days at the time notice of cancellation is mailed, unless the Policy is a renewal Policy.

7.  Section **IV. GENERAL CONDITIONS AND LIMITATIONS** is amended by the addition of the following:

    **THIS POLICY IS SUBJECT TO A MAXIMUM AGGREGATE LIMIT OF LIABILITY SPECIFIED IN ITEM 4.A. OF THE DECLARATIONS, FOR ALL LOSS UNDER ALL COVERAGE SECTIONS.  THE INSURER'S MAXIMUM AGGREGATE LIMIT OF LIABILITY FOR ALL LOSS ON ACCOUNT OF ALL CLAIMS UNDER ANY**

COVERAGE SECTION SHALL BE THE MAXIMUM AGGREGATE LIMIT OF LIABILITY FOR SUCH COVERAGE SECTION SET FORTH IN ITEM 4. OF THE DECLARATIONS, WHICH SHALL BE PART OF AND NOT IN ADDITION TO THE MAXIMUM AGGREGATE LIMIT OF LIABILITY, IF ANY, SET FORTH IN ITEM 4.A. OF THE DECLARATIONS.   THE INSURER'S MAXIMUM AGGREGATE LIMIT OF LIABILITY UNDER ALL COVERAGE SECTIONS SUBJECT TO A SHARED LIMIT OF LIABILITY AS SET FORTH IN ITEM 3. OF THE DECLARATIONS SHALL BE THE LARGEST SINGLE MAXIMUM AGGREGATE LIMIT OF LIABILITY APPLICABLE TO ANY ONE COVERAGE SECTION SUBJECT TO THE SHARED LIMIT OF LIABILITY, WHICH SHALL BE PART OF AND NOT IN ADDITION TO THE MAXIMUM AGGREGATE LIMIT OF LIABILITY, IF ANY, SET FORTH IN ITEM 4.A. OF THE DECLARATIONS.

UNDER THE DIRECTORS & OFFICERS LIABILITY COVERAGE SECTION, THE INSURER'S MAXIMUM AGGREGATE LIMIT OF LIABILITY FOR ALL INVESTIGATIVE COSTS ON ACCOUNT OF ALL SHAREHOLDER DERIVATIVE DEMANDS UNDER INSURING AGREEMENT D. SHALL BE THE SUB-LIMIT SET FORTH IN ITEM 4.B.2. OF THE DECLARATIONS, WHICH SHALL BE A PART OF, AND NOT IN ADDITION TO, THE LIMIT OF LIABILITY SET FORTH IN ITEM 4.B.1. OF THE DECLARATIONS.   THE INSURER'S MAXIMUM AGGREGATE LIMIT OF LIABILITY FOR ALL LOSS ON ACCOUNT OF ALL EMPLOYED LAWYERS CLAIMS SHALL BE SUBJECT TO THE SUB-LIMIT OF LIABILITY, IF ANY, SET FORTH IN ITEM 4.B.3. OF THE DECLARATIONS. IF NO SUCH SUB-LIMIT IS SET FORTH, THEN COVERAGE FOR ANY EMPLOYED LAWYER CLAIM SHALL NOT BE SUBJECT TO A SUB-LIMIT OF LIABILITY.

UNDER THE EMPLOYMENT PRACTICES LIABILITY COVERAGE SECTION, THE INSURER'S MAXIMUM AGGREGATE LIMIT OF LIABILITY FOR ALL LOSS UNDER INSURING AGREEMENT B. SHALL BE THE SUB-LIMIT SET FORTH IN ITEM 4.C.2. OF THE DECLARATIONS, WHICH SHALL BE A PART OF, AND NOT IN ADDITION TO, THE LIMIT OF LIABILITY SET FORTH IN ITEM 4.C.1. OF THE DECLARATIONS.   THE INSURER'S MAXIMUM AGGREGATE LIMIT OF LIABILITY FOR ALL LOSS UNDER

INSURING AGREEMENTS A. AND B. CONSTITUTING SENSITIVITY TRAINING COSTS SHALL BE THE SUB-LIMIT SET FORTH IN ITEM 4.C.3. OF THE DECLARATIONS, WHICH SHALL BE A PART OF, AND NOT IN ADDITION TO, THE LIMIT OF LIABILITY SET FORTH IN ITEM 4.C.1. OF THE DECLARATIONS.

UNDER THE FIDUCIARY LIABILITY COVERAGE SECTION, THE INSURER'S MAXIMUM AGGREGATE LIMIT OF LIABILITY FOR ALL VOLUNTARY COMPLIANCE LOSS UNDER INSURING AGREEMENT B. SHALL BE THE SUB-LIMIT SET FORTH IN ITEM 4.D.2. OF THE DECLARATIONS, WHICH SHALL BE A PART OF, AND NOT IN ADDITION TO, THE LIMIT OF LIABILITY SET FORTH IN ITEM 4.D.1. OF THE DECLARATIONS. THE INSURER'S LIMIT OF LIABILITY FOR ALL HIPAA CLAIMS SHALL BE THE SUB-LIMIT SET FORTH IN ITEM 4.D.3. OF THE DECLARATIONS, WHICH SHALL BE A PART OF, AND NOT IN ADDITION TO, THE AGGREGATE LIMIT OF LIABILITY SET FORTH IN ITEM 4.D.1. OF THE DECLARATIONS.

THE MAXIMUM AGGREGATE LIMIT OF LIABILTIY FOR ALL LOSS UNDER THE MISCELLANEOUS PROFESSIONAL LIABILITY COVERAGE SECTION IS SET FORTH IN ITEM 4.E. OF THE DECLARATIONS.

LOSS INCLUDES DEFENSE COSTS.

All other terms, conditions and exclusions remain unchanged.

This endorsement changes the Policy to which it is attached and is effective on the date issued unless otherwise stated.

Endorsement Effective ____May 25, 2018____ Policy No. __ML 7601979-2__ Endorsement No. __1__

Insured __Yellowstone Capital, LLC__    Premium _____

Insurance Company __Argonaut Insurance Company__    Authorized Signature

AG ML 7100 PC (9/11)        Page 4 of 4

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

## STATE AMENDATORY INCONSISTENCY

*This Endorsement amends the <Directors & Officers Liability Coverage Section; Employment Practices Liability Coverage Section; Fiduciary Liability Coverage Section; Miscellaneous Professional Liability Coverage Section>.*

In consideration of the payment of the premium, it is hereby understood and agreed that in the event there is an inconsistency between a state amendatory endorsement applicable to this Policy or any **Coverage Section** and any term or condition of this Policy or of any such **Coverage Section**, then where permitted by applicable law, the **Insurer** shall apply those terms and conditions of either the amendatory endorsement or the Policy or any such **Coverage Section** that are more favorable to the **Insured**.

All other terms, conditions and exclusions remain unchanged.

This endorsement changes the Policy to which it is attached and is effective on the date issued unless otherwise stated.

Endorsement Effective ____May 25, 2018____ Policy No. __ML 7601979-2__ Endorsement No. ___2___

Insured ___Yellowstone Capital, LLC___ Premium _____

Insurance Company ___Argonaut Insurance Company___ Authorized Signature _____

AG ML 7086 PC (9 11)                          Page 1 of 1

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

## SUPPLEMENTARY APPLICATION MATERIALS

In consideration of the payment of the premium, it is hereby understood and agreed that the General Terms and Conditions Section is amended to add the following:

Without in any way limiting the definition of **Application** set forth in **II. DEFINITIONS** Section **A.**, of the General Terms and Condition Section and **II. DEFINITIONS** Section **B**. of the Fiduciary Liability **Coverage Section**, **Application** specifically includes information contained in any application form of another insurer, or other information provided to another insurer, that in either case is provided to the **Insurer** during the negotiation of this Policy or is contained in any application or other materials or information provided to the **Insurer** in connection with the underwriting of this Policy. As part of the **Application**, the materials noted in this Endorsement have been relied upon by the **Insurer** in the issuance of this Policy and are deemed attached to and incorporated by reference into this Policy.

All other terms, conditions and exclusions remain unchanged.

This endorsement changes the Policy to which it is attached and is effective on the date issued unless otherwise stated.

Endorsement Effective _____ May 25, 2018 _____ Policy No. _ ML 7601979-2 _____ Endorsement No. ___ 3 ___

Insured _ Yellowstone Capital, LLC _____ Premium _____

Insurance Company _ Argonaut Insurance Company _____ Authorized Signature _____

AG ML 7070 PC (9 11)                                 Page 1 of 1

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

## AMEND EXTENDED REPORTING PERIOD

This Endorsement modifies the coverage provided under the following insurance policy:

**Private Playbook: Private Company Directors & Officers Liability, Employment Practices Liability, Fiduciary Liability and Miscellaneous Professional Liability Insurance Policy**

In consideration of the payment of the premium for this Policy, it is hereby understood and agreed that Item 7 of the Declarations of this Policy is replaced with the following:

Item 7. **Extended Reporting Period:**

Option 1:
Additional Premium for the Extended Reporting Period:   100% of Annual Premium
Length of the **Extended Reporting Period**:   One Year

Option 2:
Additional Premium for the Extended Reporting Period:   125% of Annual Premium
Length of the **Extended Reporting Period**:   Two Years

Option 3:
Additional Premium for the Extended Reporting Period:   150% of Annual Premium
Length of the **Extended Reporting Period**:   Three Years

All other terms, conditions and exclusions remain unchanged.

This endorsement changes the Policy to which it is attached and is effective on the date issued unless otherwise stated.

Endorsement Effective ____May 25, 2018____   Policy No. __ML 7601979-2__   Endorsement No. __4__

Insured ___Yellowstone Capital, LLC___                                         Premium _____

Insurance Company ___Argonaut Insurance Company___   Authorized Signature _____

Manuscript Endorsement

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## AMEND DEFINITION OF SUBSIDIARY TO ADD ENTITIES

This Endorsement modifies the coverage provided under the following insurance policy:

**Private Playbook: Private Company Directors & Officers Liability, Employment Practices Liability, Fiduciary Liability and Miscellaneous Professional Liability Insurance Policy**

*This Endorsement amends the General Terms and Conditions Section.*

In consideration of the payment of the premium, it is hereby understood and agreed that **II. DEFINITIONS** Section L. **Subsidiary** is amended to add the following:

- Yellowstone Capital West, LLC

All other terms, conditions and exclusions remain unchanged.

This endorsement changes the Policy to which it is attached and is effective on the date issued unless otherwise stated.

Endorsement Effective ____May 25, 2018____ Policy No. ___ML 7601979-2___ Endorsement No. ___5___

Insured ___Yellowstone Capital, LLC___ Premium _____

Insurance Company ___Argonaut Insurance Company___ Authorized Signature _____

Manuscript Endorsement                Page 1 of 1

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## AMEND DEFINITION OF APPLICATION

This Endorsement modifies the coverage provided under the following insurance policy:

**Private Playbook: Private Company Directors & Officers Liability, Employment Practices Liability, Fiduciary Liability and Miscellaneous Professional Liability Insurance Policy**

In consideration of the payment of the premium for this Policy, it is hereby understood and agreed that the first paragraph of Subsection A. of Section **II. DEFINITIONS** of the General Terms and Conditions **Coverage Section** is deleted and replaced with the following:

A.    **Application** means the written statements and representations made by an **Insured** as defined in any **Coverage Section** and provided to the **Insurer** during the negotiation of this Policy, or contained in any application or other materials or information provided to the **Insurer** in connection with the underwriting of this Policy.

All other terms, conditions and exclusions remain unchanged.

This endorsement changes the Policy to which it is attached and is effective on the date issued unless otherwise stated.

Endorsement Effective ____May 25, 2018____   Policy No. ML 7601979-2   Endorsement No. ____6____

Insured ____Yellowstone Capital, LLC____                                              Premium _____

Insurance Company ____Argonaut Insurance Company____   Authorized Signature _____

Manuscript Endorsement

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# AMEND AUTOMATIC ACQUISITION THRESHOLD AND PERIOD

This Endorsement modifies the coverage provided under the following insurance policy:

**Private Playbook: Private Company Directors & Officers Liability, Employment Practices Liability, Fiduciary Liability and Miscellaneous Professional Liability Insurance Policy**

In consideration of the payment of the premium for this Policy, it is hereby understood and agreed that Subsections II.L.2 and II.L.3 of the **General Terms and Conditions Section** of this Policy are replaced with the following:

> 2.  any entity after the effective date of this Policy by reason of being created or acquired by the **Policyholder** after such date, if the gross revenues of the created or acquired entity for the prior year is less than 35% of the assets of the **Policyholder** as reflected in the **Policyholder's** most recent audited consolidated financial statement prior to such creation or acquisition; or

> 3.  any entity after the effective date of this Policy by reason of being created or acquired by the **Policyholder** after such date, other than as described in Subsection 2. above, but such entity shall be a **Subsidiary** only for either (i) a period of 60 days from the date such entity was created or acquired by the **Policyholder**; or (ii) until the end of the **Policy Period**, whichever occurs first (such period of time constituting the "**Auto-Sub Period**").

All other terms, conditions and exclusions remain unchanged.

This endorsement changes the Policy to which it is attached and is effective on the date issued unless otherwise stated.

| | | | |
|---|---|---|---|
| Endorsement Effective | May 25, 2018 | Policy No.  ML 7601979-2 | Endorsement No.  7 |
| Insured  Yellowstone Capital, LLC | | | Premium |
| Insurance Company  Argonaut Insurance Company | | Authorized Signature | |

Manuscript Endorsement

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## OTHER INSURANCE PROVISION AMENDED

This Endorsement modifies the coverage provided under the following insurance policy:

**Private Playbook: Private Company Directors & Officers Liability, Employment Practices Liability, Fiduciary Liability and Miscellaneous Professional Liability Insurance Policy**

In consideration of the payment of the premium for this Policy, it is hereby understood and agreed that the **General Terms & Conditions Section**, Subsection IV GENERAL TERMS AND CONDITIONS, subparagraph H of this policy is deleted and replaced with the following:

H.     **OTHER INSURANCE**

The **Insured(s)** agree that any insurance provided by this Policy shall apply only as excess over any other valid and collectible insurance, whether primary, contributory, excess, contingent or otherwise, unless such insurance is written only as specific excess insurance over the Limits of Liability provided by this Policy.   This Policy shall be specifically excess over any other valid and collectible insurance pursuant to which any other insurer has a duty to defend a **Claim** for which this Policy may be obligated to pay **Loss**.  This Policy shall not be subject to the terms and conditions of any other insurance policy.

Notwithstanding the foregoing, this policy shall apply as primary insurance with respect to (i) any private equity or venture capital liability, general partner liability, or other similar management or professional liability insurance maintained by any direct or indirect shareholder of the **Policyholder**; (ii) any indemnification which may be owed to any **Insured Person** by a direct or indirect shareholder of the **Policyholder**; or (iii) any personal liability insurance that may be available to an **Insured Person**.

All other terms, conditions and exclusions remain unchanged.

This endorsement changes the Policy to which it is attached and is effective on the date issued unless otherwise stated.

Endorsement Effective _____May 25, 2018_____ Policy No. __ML 7601979-2__ Endorsement No. __8__

Insured ____Yellowstone Capital, LLC____                              Premium _____

Insurance Company ____Argonaut Insurance Company____ Authorized Signature _____

Manuscript Endorsement

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## AMEND ALTERNATE DISPUTE RESOLUTION

This Endorsement modifies the coverage provided under the following insurance policy:

**Private Playbook: Private Company Directors & Officers Liability, Employment Practices Liability, Fiduciary Liability and Miscellaneous Professional Liability Insurance Policy**

In consideration of the payment of the premium for this Policy, it is hereby understood and agreed that the third paragraph of Subsection IV.L. of the General Terms and Conditions Section of this Policy is replaced with the following:

> If the ADR process is non-binding mediation, and if the dispute is not resolved during the mediation process, then either party to the mediation may thereafter commence a judicial proceeding against the other party with respect to such dispute, provided that neither party may commence such a judicial proceeding prior to thirty (30) days following termination of the mediation.

All other terms, conditions and exclusions remain unchanged.

This endorsement changes the Policy to which it is attached and is effective on the date issued unless otherwise stated.

Endorsement Effective ____May 25, 2018____ Policy No. __ML 7601979-2__ Endorsement No. __9__

Insured __Yellowstone Capital, LLC__ Premium _____

Insurance Company __Argonaut Insurance Company__ Authorized Signature _____

Manuscript Endorsement

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## DEFINITION OF INSURED PERSON AMENDED

This Endorsement modifies the coverage provided under the following insurance policy:

**Private Playbook: Private Company Directors & Officers Liability, Employment Practices Liability, Fiduciary Liability and Miscellaneous Professional Liability Insurance Policy**

In consideration of the payment of the premium for this Policy, it is hereby understood and agreed that the **Directors & Officers Liability Coverage Section**, Subsection II DEFINITIONS, subparagraph F.2. of this policy is deleted and replaced with the following:

> 2.    any one or more natural persons not described in Subsection 1. above who were, now are, or shall become full-time, part-time, seasonal or temporary employees of the **Company**; **Insured Person** shall also include independent contractors and leased employees to extent such individuals receive indemnification from the **Company**.

All other terms, conditions and exclusions remain unchanged.

This endorsement changes the Policy to which it is attached and is effective on the date issued unless otherwise stated.

| | | | | | |
|---|---|---|---|---|---|
| Endorsement Effective | May 25, 2018 | Policy No: | ML 7601979-2 | Endorsement No. | 10 |
| Insured | Yellowstone Capital, LLC | | | Premium | |
| Insurance Company | Argonaut Insurance Company | | Authorized Signature | | |

Manuscript Endorsement

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## DEFINITION OF INSURED PERSON AMENDED: SHADOW DIRECTORS

This Endorsement modifies the coverage provided under the following insurance policy:

**Private Playbook: Private Company Directors & Officers Liability, Employment Practices Liability, Fiduciary Liability and Miscellaneous Professional Liability Insurance Policy**

In consideration of the payment of the premium for this Policy, it is hereby understood and agreed that the **Directors & Officers Liability Coverage Section**, Subsection II DEFINITIONS, subparagraph F **Insured Person** is amended to include Shadow Directors, as that term is defined under Section 741 of the United Kingdoms Companies Act of 1985, of any **Subsidiary** of a **Company** that is incorporated and/or domiciled in the United Kingdom or the Republic of Ireland.

All other terms, conditions and exclusions remain unchanged.

This endorsement changes the Policy to which it is attached and is effective on the date issued unless otherwise stated.

Endorsement Effective ____May 25, 2018____ Policy No. __ML 7601979-2__ Endorsement No. __11__

Insured ___Yellowstone Capital, LLC_____ Premium _____

Insurance Company ___Argonaut Insurance Company___ Authorized Signature _____

Manuscript Endorsement

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## CIVIL PENALTIES UNDER SECTIONS OF FOREIGN CORRUPT PRACTICES ACT, UK BRIBERY ACT

This Endorsement modifies the coverage provided under the following insurance policy:

**Private Playbook: Private Company Directors & Officers Liability, Employment Practices Liability, Fiduciary Liability and Miscellaneous Professional Liability Insurance Policy**

In consideration of the payment of the premium for this Policy, it is hereby understood and agreed that the **Directors & Officers Liability Coverage Section** is amended as follows:

I.    Subsection II DEFINITIONS, subparagraph H. is amended to include the following:

Notwithstanding any other provision in this section to the contrary, **Loss** shall also specifically include any civil penalties assessed against any **Insured Person** pursuant to Section 2(g)(2)(B) of the foreign corrupt Practices Act, 15 U.S.C. § 78dd-2(g)(2)(B) , and **UK Bribery Act Fines**.

II.    Subsection III EXCLUSIONS, subparagraph K. is deleted and replaced with the following:

K.    based upon, arising out of or attributable to any actual or alleged:

1.    Payments, commissions, gratuities, benefits or favors to or for the benefit of any full or part time domestic or foreign government official, agent, representative, employee, or military personnel, including any family member of, or any entity affiliated with, any of the foregoing;

2.    Payments, commissions, gratuities, benefits or favors to or for the benefit of any full or part time officers, directors, agents, partners, representatives, principal shareholders, owners or employees of any customer or potential customer of any **Insured**, including any family member of, or any entity affiliated with, any of the foregoing; or

3.    Political contributions, whether domestic or foreign;

Provided, however, this Exclusion shall not apply to civil penalties assessed against any **Insured Person** pursuant to Section 2(g)(2)(B) of the foreign corrupt Practices Act, 15 U.S.C. § 78dd-2(g)(2)(B), nor to **UK Bribery Act Fines**.

III.    Subsection III EXCLUSIONS, subparagraph Q. is deleted and replaced with the following:

Q.    based upon, arising out of or attributable to any actual or alleged (i) intentionally false or intentionally misleading advertising or (ii) price fixing, predatory pricing, restraint of trade, monopolization, anti-competitive conduct, unfair competition or unfair business or trade practice or any interference in another's contractual or business relationship. Without limitation, this exclusion shall be applicable to any actual or alleged violation of the Federal Trade Commission Act, the Sherman Act, the Clayton Act, any amendments to any of the foregoing or any regulations promulgated pursuant to any of the foregoing; any statutory or common law definition of unfair competition, or unfair business or trade practice; or any

Manuscript Endorsement

provision of any federal, state, local or foreign statute regulation or common law relating to any of the foregoing or actually or allegedly relating to any activity set forth in this exclusion; provided, however, this Exclusion shall not apply to civil penalties assessed against any **Insured Person** pursuant to Section 2(g)(2)(B) of the foreign corrupt Practices Act, 15 U.S.C. § 78dd-2(g)(2)(B), nor to **UK Bribery Act Fines**.

IV.     For the purposes of the coverage provided by this endorsement, **UK Bribery Act Fines** means fines or penalties assessed against any **Insured Person** pursuant to Section 11(1)(a) of the United Kingdom Bribery Act of 2012, Chapter 23, up to a maximum amount of $10,000 per event,

All other terms, conditions and exclusions remain unchanged.

This endorsement changes the Policy to which it is attached and is effective on the date issued unless otherwise stated.

| | | | | | | |
|---|---|---|---|---|---|---|
| Endorsement Effective | May 25, 2018 | Policy No: | ML 7601979-2 | Endorsement No. | 12 |
| Insured | Yellowstone Capital, LLC | | | Premium | |
| Insurance Company | Argonaut Insurance Company | | Authorized Signature | | |

Manuscript Endorsement

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## AMEND DEFINITION OF LOSS

This Endorsement modifies the coverage provided under the following insurance policy:

**Private Playbook: Private Company Directors & Officers Liability, Employment Practices Liability, Fiduciary Liability and Miscellaneous Professional Liability Insurance Policy**

In consideration of the payment of the premium for this Policy, it is hereby understood and agreed that subparagraph H. of Subsection II DEFINITIONS of the **Directors & Officers Liability Coverage Section** of this policy is amended to include the following:

> In addition, the Underwriter shall not assert with respect to a **Claim** that **Loss** incurred by any **Insured**, in the **Insured's** capacity as such, is uninsurable due to the **Insured's** actual or alleged violation of Sections 11, 12 or 15 of the Securities Act of 1933, as amended, provided, however, this paragraph shall not apply to any settlement or judgment in said **Claim** if and to the extent a final and non-appealable judgment adverse to such **Insured** in any proceeding not brought by the Underwriter, or a final determination by a regulatory or other governmental authority, or a written admission by such **Insured** in a settlement of such **Claim**, establishes such settlement or judgment constitutes disgorgement, restitution or the return of ill-gotten gain.

All other terms, conditions and exclusions remain unchanged.

This endorsement changes the Policy to which it is attached and is effective on the date issued unless otherwise stated.

| | | | | | |
|---|---|---|---|---|---|
| Endorsement Effective | May 25, 2018 | Policy No. | ML 7601979-2 | Endorsement No. | 13 |
| Insured | Yellowstone Capital, LLC | | | Premium | |
| Insurance Company | Argonaut Insurance Company | | Authorized Signature | | |

Manuscript Endorsement

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## DEFINITION OF LOSS AMENDED "BUMP-UP" DEFENSE COSTS

In consideration of the payment of the premium for this Policy, it is hereby understood and agreed that the **Directors & Officers Liability Coverage Section**, Subsection II. DEFINITIONS, subparagraph H.8 is deleted and replaced with the following:

8.    any amount of any judgment or settlement representing the amount by which any price or consideration is effectively increased in connection with the acquisition or completion of the acquisition of all or substantially all of the ownership interest in or assets of an entity, provided this paragraph shall not exclude **Defense Costs** with respect to any such judgment of settlement.

All other terms, conditions and exclusions remain unchanged.

This endorsement changes the Policy to which it is attached and is effective on the date issued unless otherwise stated.

Endorsement Effective ____May 25, 2018____ Policy No: __ML 7601979-2__ Endorsement No. __14__

Insured ___Yellowstone Capital, LLC_____ Premium _____

Insurance Company ___Argonaut Insurance Company___ Authorized Signature _____

Manuscript Endorsement

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## EXCLUSION A PRIOR NOTICE AMENDED D&O

This Endorsement modifies the coverage provided under the following insurance policy:

**Private Playbook: Private Company Directors & Officers Liability, Employment Practices Liability, Fiduciary Liability and Miscellaneous Professional Liability Insurance Policy**

In consideration of the payment of the premium for this Policy, it is hereby understood and agreed that the **Directors & Officers Liability Coverage Section**, Subsection III EXCLUSIONS, subparagraph A. of this policy is deleted and replaced with the following:

A.    based upon, arising out of, or attributable to:

   1.    any **Wrongful Act**, matter, fact, circumstance, situation, transaction, or event which has been the subject of written notice given prior to the inception of this Policy under any other policy of which this policy is a renewal or replacement; or

   2.    any other **Wrongful Act**, whenever committed or allegedly committed, which together with a **Wrongful Act** described in Subsection 1. above, constitute **Interrelated Wrongful Acts**;

All other terms, conditions and exclusions remain unchanged.

This endorsement changes the Policy to which it is attached and is effective on the date issued unless otherwise stated.

Endorsement Effective _____May 25, 2018_____ Policy No: __ML 7601979-2__ Endorsement No. __15__

Insured ___Yellowstone Capital, LLC_____ Premium _____

Insurance Company ___Argonaut Insurance Company___ Authorized Signature _____

Manuscript Endorsement

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## INSURED VERSUS INSURED EXCLUSION AMENDED

This Endorsement modifies the coverage provided under the following insurance policy:

**Private Playbook: Private Company Directors & Officers Liability, Employment Practices Liability, Fiduciary Liability and Miscellaneous Professional Liability Insurance Policy**

In consideration of the payment of the premium for this Policy, it is hereby understood and agreed that subparagraph C.3. of Subsection **III. EXCLUSIONS** of the **Directors & Officers Liability Coverage Section** of this policy is deleted and replaced with the following:

3.    a **Claim** brought by any **Insured Person** who has not served in such capacity for at least two (2) years prior to the date such **Claim** is first made and who brings and maintains such **Claim** without the solicitation or active assistance or participation of the **Company** or any other **Insured Person** who is serving or has served as an **Insured Person** within such two (2) year period;

All other terms, conditions and exclusions remain unchanged.

This endorsement changes the Policy to which it is attached and is effective on the date issued unless otherwise stated.

Endorsement Effective    May 25, 2018    Policy No.    ML 7601979-2    Endorsement No.    16

Insured    Yellowstone Capital, LLC    Premium

Insurance Company    Argonaut Insurance Company    Authorized Signature

Manuscript Endorsement

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## EXCLUSION E AMENDED, SECURITIES CLAIM CARVE-OUT

This Endorsement modifies the coverage provided under the following insurance policy:

**Private Playbook: Private Company Directors & Officers Liability, Employment Practices Liability, Fiduciary Liability and Miscellaneous Professional Liability Insurance Policy**

In consideration of the payment of the premium for this Policy, it is hereby understood and agreed that the **Directors & Officers Liability Coverage Section**, Subsection III. EXCLUSIONS, subparagraph E of this policy is deleted and replaced with the following:

E.    for actual or alleged bodily injury, mental anguish, emotional distress, sickness, disease or death of any person or damage to or destruction of any tangible property including loss of use thereof, provided, however, that this exclusion shall not be applicable to **Securities Claims**; or

For the purposes of the coverage provided by this endorsement, **Securities Claim** means any **Claim**:

1.    based upon, arising out of or attributable to the actual or alleged purchase, sale or offer to purchase or sell any securities of the **Company** in any transaction that is in fact exempt from registration under the Securities Act of 1933 (including any amendments thereto and regulations promulgated there under) and under any similar provision of foreign law;

2.    by a securities holder of the **Company** arising out of the actual or alleged failure of the **Company** to undertake a public offering of securities; or

3.    for a **Wrongful Act** in connection the preparation of the **Company** to commence an initial public offering of securities, including without limitation, any **Wrongful Act** relating to a road show. This addition to the definition of **Securities Claim** shall be shall void ab initio upon the registration statement for such initial public offering becoming effective (the "IPO Commencement Time"). The preceding sentence shall not be applicable, and this addition to the definition of **Securities Claim** shall not be void ab initio upon the IPO Commencement Time, if the **Claim** is made against an **Insured** and reported to the **Insurer** in accordance with the reporting provisions of **IV. NOTICE AND REPORTING** Section E. of the General Terms and Conditions of this Policy prior to the IPO Commencement Time and no other insurance policy is applicable to the **Claim** or would be applicable but for the exhaustion of its Limit of Liability or the failure to provide notice to the insurer of such other policy;

All other terms, conditions and exclusions remain unchanged.

This endorsement changes the Policy to which it is attached and is effective on the date issued unless otherwise stated.

| | | | | | |
|---|---|---|---|---|---|
| Endorsement Effective | May 25, 2018 | Policy No: | ML 7601979-2 | Endorsement No: | 17 |
| Insured | Yellowstone Capital, LLC | | | Premium | |
| Insurance Company | Argonaut Insurance Company | | Authorized Signature | | |

Manuscript Endorsement

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# DIRECTORS AND OFFICERS LIABILITY SECTION, EXCLUSION J AMENDED

This Endorsement modifies the coverage provided under the following insurance policy:

**Private Playbook: Private Company Directors & Officers Liability, Employment Practices Liability, Fiduciary Liability and Miscellaneous Professional Liability Insurance Policy**

In consideration of the payment of the premium for this Policy, it is hereby understood and agreed that subparagraph J of Subsection III EXCLUSIONS of the **Directors & Officers Liability Coverage Section** of this policy is deleted and replaced with the following:

J.     for any actual or alleged violation of: (i) any law governing workers' compensation, unemployment insurance, social security or disability benefits (ii) the Fair Labor Standards Act; (iii) the National Labor Relations Act; (iv) the Worker Adjustment and Retraining Notification Act; (v) the Consolidated Omnibus Budget Reconciliation Act of 1985; (vi) the Occupational Safety and Health Act; (vii) the Employee Retirement Security Act of 1974 (viii) any federal, state, local or foreign statute, rule, regulation or common law similar or related to, or promulgated pursuant to, any of the foregoing in subparts (i) through (vii) or that otherwise pertain to compensation (including but not limited to the timely payment of compensation), bonuses, perquisites, benefits of any kind, deductions, withholdings, breaks in the workplace (for rest periods or any other purpose), or the provision of statements of earnings or amounts withheld from earnings;

All other terms, conditions and exclusions remain unchanged.

This endorsement changes the Policy to which it is attached and is effective on the date issued unless otherwise stated.

| | | | | | |
|---|---|---|---|---|---|
| Endorsement Effective | May 25, 2018 | Policy No: | ML 7601979-2 | Endorsement No. | 18 |
| Insured | Yellowstone Capital, LLC | | | Premium | |
| Insurance Company | Argonaut Insurance Company | | Authorized Signature | | |

Manuscript Endorsement

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

## CONDUCT EXCLUSIONS AMENDED TO INCLUDE UNDERLYING ACTION LANGAUGE

This Endorsement modifies the coverage provided under the following insurance policy:

**Private Playbook: Private Company Directors & Officers Liability, Employment Practices Liability, Fiduciary Liability and Miscellaneous Professional Liability Insurance Policy**

In consideration of the payment of the premium for this Policy, it is hereby understood and agreed that the subparagraphs L and M of Subsection **III. EXCLUSIONS** of the **Directors & Officers Liability Coverage Section** of this policy are deleted and respectively replaced with the following:

L.    based upon, arising out of or attributable to any deliberate criminal or deliberate fraudulent act or omission or knowing violation of any statute, regulation or law by the **Insured** if established by any final, non-appealable adjudication in the underlying action; or,

M.    based upon, arising out of or attributable to any **Insured** gaining any profit, remuneration, or other advantage to which such **Insured** was not legally entitled if established by any final, non-appealable adjudication in the underlying action.

All other terms, conditions and exclusions remain unchanged.

This endorsement changes the Policy to which it is attached and is effective on the date issued unless otherwise stated.

Endorsement Effective ____ May 25, 2018 ____ Policy No. __ ML 7601979-2 __ Endorsement No. __ 19 __

Insured ____ Yellowstone Capital, LLC _____ Premium _____

Insurance Company ___ Argonaut Insurance Company ___ Authorized Signature _____

Manuscript Endorsement

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## EXCLUSIONS N, P, AND R AMENDED

This Endorsement modifies the coverage provided under the following insurance policy:

**Private Playbook: Private Company Directors & Officers Liability, Employment Practices Liability, Fiduciary Liability and Miscellaneous Professional Liability Insurance Policy**

In consideration of the payment of the premium for this Policy, it is hereby understood and agreed that the **Directors & Officers Liability Coverage Section**, Subsection III. EXCLUSIONS, subparagraphs N, P and R shall not apply to any **Securities Claim**.

For the purposes of this endorsement, **Securities Claim** means:

1.     any **Claim** based upon, arising out of or attributable to the actual or alleged purchase, sale or offer to purchase or sell any securities of the **Company** in any transaction that is in fact exempt from registration under the Securities Act of 1933 (including any amendments thereto and regulations promulgated there under) and under any similar provision of foreign law;

2.     any **Claim** by a securities holder of the **Company** arising out of the actual or alleged failure of the **Company** to undertake a public offering of securities, or

3.     any **Claim** based upon arising out of or attributable to a **Wrongful Act** in connection the preparation of the **Company** to commence an initial public offering of securities, including without limitation, any **Wrongful Act** relating to a road show. This addition to the definition of **Securities Claim** shall be shall void ab initio upon the registration statement for such initial public offerings becoming effective (the "IPO Commencement Time"). The preceding sentence shall not be applicable, and this addition to the definition of **Securities Claim** shall not be void ab initio upon the IPO Commencement Time, if the **Claim** is made against an **Insured** and reported to the **Insurer** in accordance with the reporting provisions of **IV. NOTICE AND REPORTING** Section E. of the General Terms and Conditions of this Policy prior to the IPO Commencement Time and no other insurance policy is applicable to the **Claim** or would be applicable but for the exhaustion of its Limit of Liability or the failure to provide notice to the insurer of such other policy;

All other terms, conditions and exclusions remain unchanged.

This endorsement changes the Policy to which it is attached and is effective on the date issued unless otherwise stated.

| | | | | | |
|---|---|---|---|---|---|
| Endorsement Effective | May 25, 2018 | Policy No: | ML 7601979-2 | Endorsement No. | 20 |
| Insured | Yellowstone Capital, LLC | | | Premium | |
| Insurance Company | Argonaut Insurance Company | | Authorized Signature | | |

Manuscript Endorsement

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## AMEND DEFENSE, SETTLEMENT AND COOPERATION

This Endorsement modifies the coverage provided under the following insurance policy:

**Private Playbook: Private Company Directors & Officers Liability, Employment Practices Liability, Fiduciary Liability and Miscellaneous Professional Liability Insurance Policy**

In consideration of the payment of the premium for this Policy, it is hereby understood and agreed that the second paragraph of Subsection V. GENERAL CONDITIONS AND LIMITATIONS, C. DEFENSE, SETTLEMENT AND COOPERATION, of the **Directors & Officers Liability Coverage Section** of this Policy is replaced with the following:

> The **Insured(s)** shall give the **Insurer** full cooperation, assistance and information as the **Insurer** shall reasonably require, including without limitation, attendance at hearings and trials; the giving and securing of evidence; assistance in enforcing rights of contribution and indemnity or in asserting any counterclaim, cross claim or third party claim; and in the evaluation of damages and liability in connection with any **Claim**. The **Insured(s)** shall do nothing that shall prejudice the **Insurer's** position or its potential rights of recovery. The **Insured(s)** shall not undertake to negotiate to settle, offer to settle, or settle any **Claim**, incur any **Defense Costs** or otherwise assume any contractual obligation, admit any liability, or stipulate to any judgment with respect to any **Claim** without the **Insurer's** prior written consent, such consent not to be unreasonably withheld. The failure of any **Insured Person** to comply with the provisions of this subsection shall not be imputed to any other **Insured Person**. Any **Defense Costs** incurred or settlements made without the **Insurer's** prior written consent shall not be covered under this **Coverage Section**.

All other terms, conditions and exclusions remain unchanged.

This endorsement changes the Policy to which it is attached and is effective on the date issued unless otherwise stated.

| Endorsement Effective | May 25, 2018 | Policy No. | ML 7601979-2 | Endorsement No. | 21 |
|---|---|---|---|---|---|

Insured _Yellowstone Capital, LLC_                                      Premium

Insurance Company _Argonaut Insurance Company_     Authorized Signature

Manuscript Endorsement

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## REPRESENTATIONS AMENDED: FULL NONRESCINDABLE

This Endorsement modifies the coverage provided under the following insurance policy:

**Private Playbook: Private Company Directors & Officers Liability, Employment Practices Liability, Fiduciary Liability and Miscellaneous Professional Liability Insurance Policy**

In consideration of the payment of the premium for this Policy, it is hereby understood and agreed that subparagraph **E. REPRESENTATIONS** of Subsection **V. GENERAL CONDITIONS AND LIMITATIONS** of the **Directors & Officers Liability Coverage Section** of this policy is deleted and replaced with the following:

E.   **REPRESENTATIONS**

By acceptance of this Policy, the **Insured(s)** represent and acknowledge that the statements and information contained in the **Application** are accurate and complete and that this Policy is issued in reliance upon the accurateness and completeness of such representations, statements and information. No knowledge possessed by an **Insured Person** shall be imputed to any other **Insured Person**.

The **Insured(s)** further agree that in the event of any material misstatement, misrepresentation or omission in the **Application**, this **Coverage Section** shall be void as to:

1.   **Loss** under **INSURING AGREEMENT** A. for any **Insured Person** who knew, as of the inception date of this Policy, the facts that were not accurately and completely disclosed;

2.   **Loss** under **INSURING AGREEMENT** B. for the indemnification of any **Insured Person** who knew, as of the inception date of this Policy, the facts that were not accurately and completely disclosed; and

3.   **Loss** under **INSURING AGREEMENT** C. if any **Insured Person** who is or was a Chief Executive Officer or Chief Financial Officer of the **Policyholder** knew, as of the inception date of this Policy, the facts that were not accurately and completely disclosed;

This Section applies even if the **Insured Person** did not know that such incomplete or inaccurate disclosure has been provided to the **Insurer** or included within the **Application**.

The **Insurer** irrevocably waives any right it may have to rescind this **Coverage Section**.

All other terms, conditions and exclusions remain unchanged.
This endorsement changes the Policy to which it is attached and is effective on the date issued unless otherwise stated.

| | | | | | |
|---|---|---|---|---|---|
| Endorsement Effective | May 25, 2018 | Policy No: | ML 7601979-2 | Endorsement No. | 22 |
| Insured | Yellowstone Capital, LLC | | | Premium | |
| Insurance Company | Argonaut Insurance Company | | Authorized Signature | | |

Manuscript Endorsement

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# GENERAL TERMS AMENDED ALLOCATION OF DEFENSE COSTS

This Endorsement modifies the coverage provided under the following insurance policy:

**Private Playbook: Private Company Directors & Officers Liability, Employment Practices Liability, Fiduciary Liability and Miscellaneous Professional Liability Insurance Policy**

In consideration of the payment of the premium for this Policy, and solely as concerns the coverage provided by this policy under **Employment Practices Liability Coverage Section**, it is hereby understood and agreed that the **General Terms and Conditions Section**, Subsection IV. GENERAL CONDITIONS AND LIMITATIONS, subparagraph C. ALLOCATION of this policy is deleted and replaced with the following:

C.   **ALLOCATION**

In the event the **Insured(s)** incur loss that is both covered and not covered by this Policy, either because the **Claim** includes both covered and uncovered matters or because the **Claim** includes both insured and uninsured parties, the **Insured(s)** and the **Insurer** agree to use all reasonable efforts to determine a fair and equitable allocation of the amounts as between covered and uncovered loss, without any presumption as to a fair and equitable allocation; provided, however, regarding **Defense Costs** to be advanced under any applicable **Coverage Section,** one hundred percent (100%) of any such **Defense Costs** shall be allocated to covered **Loss** if and to the extent such **Defense Costs** are incurred by covered **Insureds** and are in part covered and in part not covered by this policy solely because the **Claim** against the **Insureds** includes both covered and uncovered matters.

Notwithstanding the above, no **Defense Costs** shall be allocated to covered **Loss** in connection with any **Claim** excluded under the Subparagraphs E and K of subsection III EXCLUSIONS of the **Employment Practices Liability Coverage Section** of this policy.

All other terms, conditions and exclusions remain unchanged.

This endorsement changes the Policy to which it is attached and is effective on the date issued unless otherwise stated.

Endorsement Effective ____May 25, 2018____    Policy No. __ML 7601979-2__    Endorsement No. __23__

Insured ___Yellowstone Capital, LLC___                                    Premium _____

Insurance Company ___Argonaut Insurance Company___    Authorized Signature _____

Manuscript Endorsement

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## EXCLUSION A PRIOR NOTICE AMENDED EPL

This Endorsement modifies the coverage provided under the following insurance policy:

**Private Playbook: Private Company Directors & Officers Liability, Employment Practices Liability, Fiduciary Liability and Miscellaneous Professional Liability Insurance Policy**

In consideration of the payment of the premium for this Policy, it is hereby understood and agreed that the **Employment Practices Liability Coverage Section**, Subsection III EXCLUSIONS, subparagraph A. of this policy is deleted and replaced with the following:

A.    based upon, arising out of, or attributable to:

1.    any **Employment Practices Wrongful Act, Third Party Wrongful Act**, matter, fact, circumstance, situation, transaction, or event which has been the subject of written notice given prior to the inception of this Policy under any other employment practices liability policy; or

2.    any other **Employment Practices Wrongful Act** or **Third Party Wrongful Act** whenever occurring, which together with an **Employment Practices Wrongful Act** or **Third Party Wrongful Act** described in subparagraph 1. above, constitute **Interrelated Wrongful Acts**;

All other terms, conditions and exclusions remain unchanged.

This endorsement changes the Policy to which it is attached and is effective on the date issued unless otherwise stated.

Endorsement Effective ____May 25, 2018____ Policy No. __ML 7601979-2__ Endorsement No. __24__

Insured ____Yellowstone Capital, LLC_____ Premium _____

Insurance Company ____Argonaut Insurance Company____ Authorized Signature _____

Manuscript Endorsement

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## AMEND EXCLUSION D, RETALIATION CARVE-OUT

This Endorsement modifies the coverage provided under the following insurance policy:

**Private Playbook: Private Company Directors & Officers Liability, Employment Practices Liability, Fiduciary Liability and Miscellaneous Professional Liability Insurance Policy**

In consideration of the payment of the premium for this Policy, it is hereby understood and agreed that the **Employment Practices Liability Coverage Section**, Subsection III. EXCLUSIONS, subparagraph D of this policy is deleted and replaced with the following:

> D.     for any actual or alleged violation of the Employee Retirement Income Security Act of 1974 ("ERISA") (or amendments thereto), or similar provisions of any federal, state, local, or foreign, statute, rule, regulation or common law pertaining to fiduciaries of any pension, profit sharing, health and welfare or other employee benefit plan or trust; provided, this exclusion will not apply to the extent a **Claim** is for **Retaliation**.

All other terms, conditions and exclusions remain unchanged.

This endorsement changes the Policy to which it is attached and is effective on the date issued unless otherwise stated.

| | | | | | |
|---|---|---|---|---|---|
| Endorsement Effective | May 25, 2018 | Policy No. | ML 7601979-2 | Endorsement No. | 25 |
| Insured | Yellowstone Capital, LLC | | | Premium | |
| Insurance Company | Argonaut Insurance Company | | Authorized Signature | | |

Manuscript Endorsement

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION G DELETED

This Endorsement modifies the coverage provided under the following insurance policy:

**Private Playbook: Private Company Directors & Officers Liability, Employment Practices Liability, Fiduciary Liability and Miscellaneous Professional Liability Insurance Policy**

In consideration of the payment of the premium for this Policy, it is hereby understood and agreed that the **Employment Practices Liability Coverage Section**, Subsection III EXCLUSIONS, subparagraph G of this policy is deleted.

All other terms, conditions and exclusions remain unchanged.

This endorsement changes the Policy to which it is attached and is effective on the date issued unless otherwise stated.

Endorsement Effective ____May 25, 2018____ Policy No: __ML 7601979-2__ Endorsement No. __26__

Insured ___Yellowstone Capital, LLC_____ Premium _____

Insurance Company ___Argonaut Insurance Company____ Authorized Signature _____

Manuscript Endorsement

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## EXCLUSION H DELETED

This Endorsement modifies the coverage provided under the following insurance policy:

**Private Playbook: Private Company Directors & Officers Liability, Employment Practices Liability, Fiduciary Liability and Miscellaneous Professional Liability Insurance Policy**

In consideration of the payment of the premium for this Policy, it is hereby understood and agreed that the **Employment Practices Liability Coverage Section**, Subsection III EXCLUSIONS, subparagraph H of this policy is deleted.

All other terms, conditions and exclusions remain unchanged.

This endorsement changes the Policy to which it is attached and is effective on the date issued unless otherwise stated.

| | | | | | |
|---|---|---|---|---|---|
| Endorsement Effective | May 25, 2018 | Policy No: | ML 7601979-2 | Endorsement No. | 27 |
| Insured | Yellowstone Capital, LLC | | | Premium | |
| Insurance Company | Argonaut Insurance Company | | Authorized Signature | | |

Manuscript Endorsement

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

## EXCLUSION I AMENDED

This Endorsement modifies the coverage provided under the following insurance policy:

**Private Playbook: Private Company Directors & Officers Liability, Employment Practices Liability, Fiduciary Liability and Miscellaneous Professional Liability Insurance Policy**

In consideration of the payment of the premium for this Policy, it is hereby understood and agreed that Subparagraph I of Subsection III. EXCLUSIONS of the **Employment Practices Liability Coverage Section** of this policy is deleted and replaced with the following:

I.    based upon, arising out of or attributable to any deliberate criminal or deliberate fraudulent act or omission by any **Insured** if established by any final, non-appealable adjudication in the underlying action or proceeding;

All other terms, conditions and exclusions remain unchanged.

This endorsement changes the Policy to which it is attached and is effective on the date issued unless otherwise stated.

Endorsement Effective    May 25, 2018    Policy No.    ML 7601979-2    Endorsement No.    28

Insured    Yellowstone Capital, LLC    Premium

Insurance Company    Argonaut Insurance Company    Authorized Signature

Manuscript Endorsement

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## AMEND DEFENSE, SETTLEMENT AND COOPERATION

This Endorsement modifies the coverage provided under the following insurance policy:

**Private Playbook: Private Company Directors & Officers Liability, Employment Practices Liability, Fiduciary Liability and Miscellaneous Professional Liability Insurance Policy**

In consideration of the payment of the premium for this Policy, it is hereby understood and agreed that the second paragraph of Subsection IV. GENERAL CONDITIONS AND LIMITATIONS, C. DEFENSE, SETTLEMENT AND COOPERATION, of the **Employment Practices Liability Coverage Section** of this Policy is replaced with the following:

> The **Insured(s)** shall give the **Insurer** full cooperation, assistance and information as the **Insurer** shall reasonably require, including without limitation, attendance at hearings and trials; the giving and securing of evidence; assistance in enforcing rights of contribution and indemnity or in asserting any counterclaim, cross claim or third party claim; and in the evaluation of damages and liability in connection with any **Claim**. The **Insured(s)** shall do nothing that shall prejudice the **Insurer's** position or its potential rights of recovery. The **Insured(s)** shall not undertake to negotiate to settle, offer to settle, or settle any **Claim**, incur any **Defense Costs** or otherwise assume any contractual obligation, admit any liability, or stipulate to any judgment with respect to any **Claim** without the **Insurer's** prior written consent, such consent not to be unreasonably withheld. The failure of any **Insured Person** to comply with the provisions of this subsection shall not be imputed to any other **Insured Person**. Any **Defense Costs** incurred or settlements made without the **Insurer's** prior written consent shall not be covered under this **Coverage Section**.

All other terms, conditions and exclusions remain unchanged.

This endorsement changes the Policy to which it is attached and is effective on the date issued unless otherwise stated.

Endorsement Effective ___May 25, 2018___ Policy No. ___ML 7601979-2___ Endorsement No. ___29___

Insured ___Yellowstone Capital, LLC___ Premium ___

Insurance Company ___Argonaut Insurance Company___ Authorized Signature ___

Manuscript Endorsement

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# AMEND DEFENSE, SETTLEMENT AND COOPERATION PROVISION

This Endorsement modifies the coverage provided under the following insurance policy:

**Private Playbook: Private Company Directors & Officers Liability, Employment Practices Liability, Fiduciary Liability and Miscellaneous Professional Liability Insurance Policy**

In consideration of the payment of the premium for this Policy, it is hereby understood and agreed that the last paragraph of subparagraph **C. DEFENSE, SETTLEMENT AND COOPERATION** of Subsection **IV. GENERAL CONDITIONS AND LIMITATIONS** of the **Employment Practices Liability Coverage Section** of this policy is deleted and replaced with the following:

> In the event the **Insurer** recommends a settlement of a **Claim**, the amount of which when added to the amount of **Defense Costs** and other **Loss** incurred as of the date of such recommendation, is within the applicable Limit of Liability and is acceptable to the claimant, the **Insurer's** liability for all **Loss** in connection with such **Claim** shall be subject to a 10% coinsurance obligation with respect to all **Loss** in excess of the amount of **Loss** (inclusive of **Defense Costs** and the recommended settlement) incurred as of the date of the recommendation. This paragraph shall not be applicable when, as of the date of the recommendation, **Loss** (inclusive of **Defense Costs** and the recommended settlement) is within the applicable Retention.

All other terms, conditions and exclusions remain unchanged.

This endorsement changes the Policy to which it is attached and is effective on the date issued unless otherwise stated.

| | | | |
|---|---|---|---|
| Endorsement Effective | May 25, 2018 | Policy No.  ML 7601979-2 | Endorsement No.    30 |
| Insured    Yellowstone Capital, LLC | | | Premium |
| Insurance Company    Argonaut Insurance Company | | Authorized Signature | |

Manuscript Endorsement

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# REPRESENTATIONS AMENDED NON-RESCINDABLE EPL COVERAGE SECTION

This Endorsement modifies the coverage provided under the following insurance policy:

**Private Playbook: Private Company Directors & Officers Liability, Employment Practices Liability, Fiduciary Liability and Miscellaneous Professional Liability Insurance Policy**

In consideration of the payment of the premium for this Policy, it is hereby understood and agreed that the **Employment Practices Liability Coverage Section**, Subsection IV. GENERAL CONDITIONS AND LIMITATIONS, subparagraph E. REPRESENTATIONS, of this policy is amended to add the following:

The **Insurer** waives any right it may have to rescind this **Coverage Section.**

All other terms, conditions and exclusions remain unchanged.

This endorsement changes the Policy to which it is attached and is effective on the date issued unless otherwise stated.

| Endorsement Effective | May 25, 2018 | Policy No. | ML 7601979-2 | Endorsement No. | 31 |

Insured    Yellowstone Capital, LLC                                   Premium

Insurance Company    Argonaut Insurance Company    Authorized Signature

Manuscript Endorsement