# EXHIBIT B



## Private PROtect<sup>SM</sup>

# Private Company Directors & Officers, Employment Practices and Fiduciary Insurance Policy Declarations

**NOTICE: THIS IS CLAIMS MADE AND REPORTED COVERAGE.  DEFENSE COSTS ARE A PART OF, AND NOT IN ADDITION TO, THE POLICY LIMITS. PLEASE READ THE POLICY CAREFULLY.**

**DEFENSE WITHIN LIMITS: THE LIMIT OF LIABILITY AVAILABLE TO PAY SETTLEMENTS OR JUDGMENTS WILL BE REDUCED, AND MAY BE EXHAUSTED, BY DEFENSE COSTS.**

| **Insurer:** | Argonaut Insurance Company<br>225 West Washington Street<br>24th Floor<br>Chicago, IL 60606 | **CRC Insurance Services, Inc.<br>515 South Figueroa St., Suite 600<br>Los Angeles, CA 90071** |
|---|---|---|
| **Policy Number:** | ML7601979-3 | |
| Renewal of Policy Number: | ML7601979-2 | |

**IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS AND CONDITIONS OF THIS POLICY, THE INSURER AGREES WITH THE INSUREDS TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.**

Item 1.  **Named Insured**:    Yellowstone Capital LLC
         Mailing Address:     One Evertrust Plaza, Suite 1401
                              Jersey City, NJ 07302

Item 2.  **Policy Period:**  From: 12:01 a.m. on   October 25, 2019    To: 12:01 a.m. on  October 25, 2020
                             Local time at the address shown in Item 1.

Item 3.  **Coverage Parts**:    This policy is written by a surplus lines insurer and is not subject to the filing or approval requirements of the New Jersey Department of Banking and Insurance. Such a policy may contain conditions, limitations, exclusions and different terms than a policy issued by an insurer granted a Certificate of Authority by the New Jersey Department of Banking and Insurance. The insurer has been approved by the Department as an eligible surplus lines insurer, but the policy is not covered by the New Jersey Insurance Guaranty Fund, and only a policy of medical malpractice liability insurance as defined in N.J.S.A. 17:30D-3d or a policy of property insurance covering owner-occupied dwellings of less than four dwelling units are covered by the New Jersey Surplus Lines Guaranty Fund

| Coverage Part | Purchased | Not Purchased | Separate Limits | Shared Limits |
|---|---|---|---|---|
| Directors & Officers Liability | x | | x | |
| Employment Practices Liability | _____ | x | | |
| Fiduciary Liability | | x | | |

Item 4.  Limits of Liability:

    A.    Maximum Aggregate Limit of Liability for all **Loss** under all **Coverage Parts** other than as indicated in Item 4.B.4. below:     $3,000,000

    B.    Limits of Liability applicable to **Directors & Officers Liability Coverage Part**:

        1.    Maximum Aggregate Limit of Liability for all **Loss** under **INSURING AGREEMENTS** A., B., C. and D.:     $3,000,000

        2.    Aggregate Sub-Limit of Liability for all **Shareholder Derivative Demands** under **INSURING AGREEMENT** D.:     $100,000

        3.    Aggregate Sub-Limit of Liability for **Inquiry Costs** under **INSURING AGREEMENT** E.:     Not Included

        4.    Aggregate Sub-Limit of Liability for all **Loss** from all **Employed Lawyers Claims**:     Not Included

        5.    Aggregate Additional Limit of Liability for Non-Indemnified **Loss**:     Not Included

    C.    Limit of Liability applicable to **Employment Practices Liability Coverage Part**:

        1.    Maximum Aggregate Limit of Liability for all **Loss** under **INSURING AGREEMENTS** A. and B.:     Not Included

        2.    Aggregate Sub-Limit of Liability for all **Loss** from all **Claims** under **INSURING AGREEMENT** B.:     Not Included

        3.    Aggregate Sub-Limit of Liability for all **Loss** constituting **Sensitivity Training Costs** under **INSURING AGREEMENTS** A. and B.:     Not Included

    D.    Limits of Liability applicable to **Fiduciary Liability Coverage Part**:

        1.    Maximum Aggregate Limit of Liability for all **Loss** under **INSURING AGREEMENTS** A. and B.:     Not Included

        2.    Aggregate Sub-Limit of Liability for all **Voluntary Compliance Loss** under **INSURING AGREEMENT** B.:     Not Included

        3.    Aggregate Sub-Limit of Liability for all **Loss** from all **HIPAA CLAIMS** under **INSURING AGREEMENT** A.:     Not Included

Item 5.   Retentions:

    A.    Retentions applicable to **Directors & Officers Liability Coverage Part:**

        1.    Each **Claim** under **INSURING AGREEMENT** B.:      $75,000

        2.    Each **Claim** under **INSURING AGREEMENT** C.:      $75,000

No Retention is applicable to **INSURING AGREEMENTS** A. (**NON-INDEMNIFIED LOSS COVERAGE**)

    B.    Retentions applicable to **Employment Practices Liability Coverage Part**:

        1.    Each **Claim** under **INSURING AGREEMENT** A.:      Not Included

        2.    Each **Claim** under **INSURING AGREEMENT** B.:      Not Included

    C.    Retentions applicable to **Fiduciary Liability Coverage Part**:

        1.    Each **Claim** under **INSURING AGREEMENT** A.:      Not Included
            (Not Applicable to **Non-Indemnified Loss** or **HIPAA Claims**)

        No Retention is applicable to **INSURING AGREEMENT** B.

Item 6.   Annual Premiums:

    A.  **Directors & Officers Liability Coverage Part**:      Included

    B.  **Employment Practices Liability Coverage Part**:      Included

    C.  **Fiduciary Liability Coverage Part**:      Included

                        Total   $33,908

Other: _____
       (Specific type of tax, fee or surcharge, if required)
                        Total   $33,908

Item 7.   **Extended Reporting Period:**

    Additional Premium for the Extended Reporting Period: 150% of Annualized Premium
    Length of the Extended Reported Period: 1 Year

    Additional Premium for the Extended Reporting Period: 200% of Annualized Premium
    Length of the Extended Reported Period: 2 Years

    Additional Premium for the Extended Reporting Period: 250% of Annualized Premium
    Length of the Extended Reported Period: 3 Years

Additional Premium for the Extended Reporting Period: 300% of Annualized Premium
Length of the Extended Reported Period: 4 Years

Additional Premium for the Extended Reporting Period: 350% of Annualized Premium
Length of the Extended Reported Period: 5 Years

Additional Premium for the Extended Reporting Period: 400% of Annualized Premium
Length of the Extended Reported Period: 6 or More Years

Item 8.    Pre-Determined Run-Off

| Length of Run-Off Period | Additional Premium |
|---|---|
| 1 Year | 150% |
| 2 Years | 200% |
| 3 Years | 250% |
| 4 Years | 300% |
| 5 Years | 350% |

Item 9.    Notices to **Insurer**:

Claims:
Attn:    Argo Pro Claims
         413 W. 14th Street 3rd Floor
         New York, NY 10014
         Phone: (855) 225-7204
         Email: argoproclaims@argogroupus.com

All Other Notices:
Attn:    Argo Pro Underwriting
         413 W. 14th Street 3rd Floor
         New York, NY 10014
         Phone: (210) 321-8400

Item 10.   Endorsements Applicable to Coverage at Inception of Policy:

| | |
|---|---|
| PrivacyNotice 0415 | Privacy Policy |
| TRIA Notice A 0115 | Policyholder Disclosure Statement Under the Terrorism Risk Insurance Act |
| ILP001 0104 | Policyholder Notice- US Dept of Treasury Office of Foreign Asset Control (OFAC) |
| FS-APP001 0618 | Fraud Statements |
| CLMSMADENOTICE 0117 | Important Information For Policyholders - Claims-Made Notice |
| DECSCH 0117 | Schedule Of Forms And Endorsements |
| ILP0208NJ 0418 | New Jersey Changes - Cancellation And Nonrenewal |
| PPRO2060NJ 0219 | NJ Changes |
| DWLNOTICE 0117 | Policyholder Notice - Defense Within Limits |
| PPRO4032 0719 | Liquidated Damages Exclusion Endorsement |
| PPRO4029 0719 | Liberalization Endorsement |

Item 11.  Pending or Prior Date:

|  | | | |
|---|---|---|---|
| A. | **Directors & Officers Liability Coverage Part**: | N/A |
| B. | **Employment Practices Liability Coverage Part**: | N/A |
| C. | **Fiduciary Liability Coverage Part**: | N/A |

This Policy shall not be valid unless also signed by another duly authorized representative of the **Insurer**.

Countersigned:                              By:

Date: Nov 13, 2019                    Authorized Representative:



# Private PROtect<sup>SM</sup>
# General Terms and Conditions Part

In consideration of payment of the premium and in reliance upon the statements and representations made in the **Application**, all of which are made part of this Policy, and subject to the Declarations and the other terms of this Policy, the Insurance Company shown in the Declarations (the "**Insurer**") and the **Insured(s)** agree as follows:

**I.     APPLICABILITY OF GENERAL TERMS AND CONDITIONS**

**All Coverage Parts** are subject to this General Terms and Conditions Part. In the event of any conflict between this General Terms and Conditions Part and a particular **Coverage Part**, the terms of the **Coverage Part** shall apply to the coverage afforded by such **Coverage Part**.  The terms of each **Coverage Part** shall only apply to that **Coverage Part**.  Any term that is bolded but not defined in this General Terms and Conditions Part shall, for the purpose of applying this General Terms and Conditions Part to a particular **Coverage Part**, incorporate the definition of such term as set forth in such **Coverage Part**.

**II.    DEFINITIONS**

A.    **Application** means the written statements and representations made by an **Insured** including as defined in any **Coverage Part** (if applicable) and provided to the **Insurer** during the negotiation of this Policy, or contained in any application or other materials or information provided to the **Insurer** in connection with the underwriting of this Policy.

B.    **Company** means:

1.    the **Named Insured**; and

2.    any **Subsidiary** of the **Named Insured**.

**Company** shall also include any such organization as a debtor-in-possession under United States bankruptcy law or an equivalent status under the law of any other country.

C.    **Coverage Part** means the **Directors & Officers Liability Coverage Part**, the **Employment Practices Liability Coverage Part** and the **Fiduciary Liability Coverage Part**, but only if such **Coverage Part** is purchased.

D.    **Defense Costs** means that part of **Loss** consisting of reasonable costs, charges, fees (including but not limited to attorney's fees and expert's fees) and expenses (other than regular or overtime wages, benefit expenses, salaries, fees, other

types of compensation or overhead expenses of **Insured Person(s)**, or the **Company**) (i) incurred by the **Insurer** on behalf of the **Insured(s)** or by the **Insured(s)** and consented to by the **Insurer** (such consent to not be unreasonably withheld) in defending or investigating **Claims**, including costs assessed against the **Insured(s)** in a **Claim** or the premium for appeal, attachment or similar bonds provided the **Insurer** shall have no obligation to apply for or furnish such bonds or (ii) incurred at the **Insurer's** request to assist the **Insurer** in the investigation of a **Claim**.

E.    **Domestic Partner** means any natural person qualifying as a domestic partner under the provisions of any applicable federal, state, local law or under the provisions of any formal program established by the **Company**.

F.    **Employee** means any past, present or future full time, part time, seasonal or temporary employee of the **Company**, including any officer, volunteer, intern, leased employee or natural person independent contractor, provided, that in each instance such individual is an **Employee** solely in his or her capacity as such and provided, further, in the case of leased employees, volunteers and independent contractors, the **Company** indemnifies such individuals in the same manner it indemnifies permanent employees. Furthermore, regarding leased employees and independent contractors, coverage provided under this policy shall be excess of any other insurance coverage or other indemnification provision provided by any professional employment organization.

Regarding the coverage provided under the **Fiduciary Liability Coverage Part**, if purchased, **Employee** will not include any independent contractor.

G.    **Extended Reporting Period** means the period or periods of extended coverage set forth in Item 7. of the Declarations.

H.    **Extradition** means any formal process by which an **Insured Person** located in any country is or is sought to be surrendered to any other country for trial, or otherwise to answer any criminal accusation, for a **Wrongful Act**.

I.    **Financial Insolvency** means the appointment by any state or federal official, agency or court of any receiver, conservator, liquidator, trustee, rehabilitator or similar official to take control of, supervise, manage or liquidate the **Company**, or the **Company** becoming a debtor in possession.

J.    **Insured(s)** means:

1.    the **Insured Person(s)**; and

2.    the **Company**.

K.    **Insured Person(s)** means:

1.    any one or more natural persons who were, now are or shall become (i) a duly elected or appointed director, trustee, governor, management committee member, advisory board member, **Manager**, officer, in-house

general counsel or controller of the **Company** (ii) director of human resources, risk manager or their functional equivalent of the **Company**; or (iii) with respect to a **Company** incorporated outside the United States, the functional equivalent of any of the foregoing positions; or

2.    any **Employee**;

Any individual included in Subsections 1. or 2. above is an **Insured Person** solely in his or her capacity as specified in such subsection.

If the **Fiduciary Liability Coverage Part** is purchased, any individual included in Subsections 1. or 2. above is an **Insured Person** solely in his or her capacity as a fiduciary of a **Plan** or in his or her **Administration** of a **Plan**.  A **Claim** against a "plan committee" comprised entirely of **Insured Persons** shall be deemed to be a **Claim** against each of the individual members of the committee.

L.    **Interrelated Wrongful Acts** means all **Wrongful Acts** that have as a common nexus any fact, circumstance, situation, event, transaction, cause or series of logically or causally connected facts, circumstances, situations, events, transactions or causes.

M.    **Manager** means any natural person who was, now is or shall become a (i) a manager, member of the board of managers or equivalent executive of a **Company** that is a limited liability company, and (ii) a general partner, managing partner or equivalent executive of a **Company** that is a partnership or joint venture.

N.    **Named Insured** means the organization set forth in Item 1. of the Declarations.

O.    **Policy Period** means the period beginning at the inception date and ending at the expiration date stated in Item 2. of the Declarations or any earlier Policy cancellation or termination date.

P.    **Pollutants** means any substance located anywhere in the world exhibiting hazardous characteristics as defined by, or identified on any list of hazardous substances issued by, the United States Environmental Protection Agency or any state, local or foreign counterpart.  **Pollutants** shall also mean any other air emission, odor, waste water, oil or oil products, infectious or medical waste, asbestos or asbestos products, silica, noise, fungus (including mold, mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi, but not any fungi intended by the **Insured(s)** for consumption) and electric or magnetic or electromagnetic field.  Such matters shall include, without limitation, solids, liquids, gaseous, thermal, biological, nuclear or radiological irritants, contaminants or smoke, soot, fumes, acids, alkalis, chemicals or waste materials.

Q.    **Subsidiary** means:

1.    any entity in which more than fifty percent (50%) of the outstanding voting securities or voting rights representing the present right to vote for election of directors, **Managers** or equivalent executives is owned or controlled by the **Named Insured**, either directly or indirectly on or before

the effective date of this Policy;

2.  any entity in which the **Named Insured** has the right, pursuant to written contract or by-laws, charter, operating agreement or similar documents of a **Company**, to elect, appoint or designate a majority of: the Board of Directors of a corporation; the management committee of a joint venture; or the management board of a limited liability company; or

3.  any entity that becomes a subsidiary (as defined in subparts P.1. or P.2.) after the effective date of this Policy by reason of being created or acquired by the **Named Insured** after such date.

**Subsidiary** also means any foundation or charitable trust controlled or directly sponsored by the **Named Insured**.

Provided, however, this Policy shall only apply to **Wrongful Acts** committed or allegedly committed after the effective date an entity becomes a **Subsidiary** and prior to the effective date such entity ceases to be a **Subsidiary**.

R.  **Wage and Hour Violation** means any actual or alleged:

1.  violation of the Fair Labor Standards Act (except the Equal Pay Act)

2.  refusal, failure, or inability of any **Insured** to pay, or to pay timely, wages, bonuses, perquisites, benefits or overtime pay for time worked (as opposed to front pay or back pay arising from tortious conduct or violations of the Civil Rights Act of 1964 or any similar federal, state, local or foreign statute, rule regulation or common law); or

3.  failure to provide or enforce meal breaks or rest breaks required by law;

4.  improper classification of individuals for the purposes of determining eligibility for compensation or other benefits under any statute;

5.  improper deductions from pay for any **Employee**;

6.  failure to provide, or to provide timely, statements of earnings or amounts withheld from earnings.

## III.  GENERAL EXCLUSIONS

Under all **Coverage Parts** purchased, and in addition to any Exclusions included in such **Coverage Parts**, the **Insurer** shall not be liable for that portion of **Loss** in connection with any **Claim** made against any **Insured**:

A.  based upon, arising out of, or attributable to:

1.  any **Wrongful Act**, matter, fact, circumstance, situation, transaction, or event which has been the subject of written notice given and accepted prior to the inception of this Policy under any other directors & officers

management, employment practices or fiduciary liability policy; or

2.    any other **Wrongful Act**, whenever committed or allegedly committed, which together with a **Wrongful Act** described in Subsection 1. above, constitute **Interrelated Wrongful Acts**;

B.    based upon, arising out of, or attributable to:

1.    any **Claim** pending as of or made prior to the Pending or Prior Date set forth in Item 11. of the Declarations, or any **Wrongful Act**, fact, circumstance or situation underlying or alleged therein; or

2.    any other **Wrongful Act**, whenever committed or allegedly committed, which together with a **Wrongful Act** described in Subsection 1. above, constitute **Interrelated Wrongful Acts**;

C.    based upon, arising out of or attributable to:

1.    any deliberate criminal or deliberate fraudulent act or omission or intentional or knowing violation of law by any **Insured** if established by any final, non-appealable adjudication in any underlying action or proceeding; or

2.    any **Insured** gaining any personal profit, remuneration, or other financial advantage to which the **Insured** was not legally entitled if established by any final, non-appealable adjudication in any underlying action or proceeding.

For the purpose of determining the applicability of this General Exclusion C., the **Wrongful Act** or knowledge of any **Insured Person** shall not be attributed to any other **Insured Person**, and only the **Wrongful Act** or knowledge of any past, present or future Chief Executive Officer or Chief Financial Officer (or functional equivalent), and/or regarding coverage provided under the **Employment Practices Liability Coverage Part**, if purchased, the head of the department of Human Resources (or functional equivalent), of the **Company** (or of any **Plan** if the **Fiduciary Liability Coverage Part** is purchased) shall  be imputed to such **Company** (or **Plan** if the **Fiduciary Liability Coverage Part** is purchased).

D.    for bodily injury, sickness, disease emotional distress or mental anguish or death of any person or damage to or destruction of any tangible property including loss of use thereof; provided this exclusion shall not apply:

1.    to **Loss** for emotional distress or mental anguish that is attributable to any **Claim** otherwise covered under the **Employment Practices Liability Coverage Part**; or

2.    if the **Directors & Officers Liability Coverage Part** is purchased, to any **Exempt Securities Claim** as defined and otherwise covered under such **Coverage Part**.

IV.    **EXTENSIONS OF COVERAGE**

A.    **ESTATES, LEGAL REPRESENTATIVES, SPOUSES AND DOMESTIC PARTNERS**

The estates, heirs, legal representatives, assigns, spouses and **Domestic Partners** of **Insured Person(s)** shall be considered an **Insured Person(s)** under this Policy but only for a **Claim** arising solely out of their status as such and, in the case of a spouse or **Domestic Partner**, where such **Claim** seeks damages from marital community property, jointly held property or property transferred from the **Insured Person(s)** to the spouse or **Domestic Partner**.  No coverage is provided for any wrongful act or omission of an estate, heir, legal representative, assign, spouse or **Domestic Partner**.  All terms of this Policy applicable to **Loss** incurred by the **Insured Person(s)** shall also apply to **Loss** incurred by such estates, heirs, legal representatives, assigns, spouses and **Domestic Partners**.

B.    **EXTENDED REPORTING PERIOD**

If the **Insurer** or **Named Insured** terminates or refuses to renew this Policy or any **Coverage Part** of this Policy other than for nonpayment of premium, the **Insured(s)** shall have the right, upon payment of the applicable additional premium set forth in Item 7. of the Declarations, to the applicable **Extended Reporting Period** following the effective date of termination or nonrenewal, but only with respect to any **Wrongful Act** taking place in whole or in part prior to the effective date of such termination or nonrenewal.  This right of extension shall lapse unless written notice of such election, together with payment of the additional premium due is given by the **Insured(s)** to the **Insurer** within sixty (60) days following the effective date of termination or nonrenewal.  The **Extended Reporting Period** shall only be applicable to a particular **Coverage Part** if the **Insurer** or Named Insured terminates or refuses to renew such **Coverage Part**.

The **Extended Reporting Period** shall be subject to all the terms and conditions of this Policy. No coverage will be provided for any actual or alleged **Wrongful Acts** occurring in whole after the effective date of such termination or nonrenewal.

The **Extended Reporting Period** is non-cancellable and the entire additional premium shall be deemed fully earned.

C.    **PRE-DETERMINED RUN-OFF**

In the event of an **Organizational Change** in accordance with **SECTION V. GENERAL CONDITIONS AND LIMITATIONS**, subsection H of the **General Terms and Conditions Part,** and solely with respect to coverage sections already purchased by the **Insured** (hereinafter the **Applicable Coverage Part(s)**), the **Named Insured**, on its own behalf or on behalf of any **Subsidiary** thereof, for an additional premium as indicated below, shall have the right to choose a period of time as listed in Item 8. Pre-Determined Run-Off of the Declarations following the effective date of the **Organizational Change** (hereinafter the **Run-Off Period**) in which to give written notice to the **Insurer** of **Claims** first made against the **Insureds** during said **Run-Off Period** for any

**Wrongful Act** occurring in whole or in part on or prior to the effective date of said **Organizational Change**.

The additional premium for the election of the **Run-Off Period** shall be the corresponding percentage amount as indicated in Item 8. Pre-Determined Run-Off of the Declarations for the option chosen of the full annual premium, less any remaining unearned pro-rata premium of this policy.

The **Run-Off Period** shall be subject to all the terms and conditions of this policy. No coverage will be provided for any actual or alleged **Wrongful Acts** occurring in whole after the effective date of the **Organizational Change**.

The Policy Aggregate Limit of Liability for the **Run-off Period** shall be part of and not in addition to the remaining Policy Aggregate Limit of Liability of this policy as of the effective date of the **Organizational Change**. If a Separate Limit of Liability applied to an **Applicable Coverage Part** for  the  **Policy  Period**, then the same  such  Separate  Limit of Liability shall also apply to such  **Applicable Coverage Part** for the **Discovery Period**, and such Separate Limit of Liability for the **Run-Off Period** shall be part of and not  in addition to the Separate  Limit of Liability  for the   **Policy  Period**. If a Shared Limit of Liability applied to two or more **Applicable Coverage Parts** for the **Policy Period**, then the same such Shared Limit of Liability shall also apply to such **Coverage Parts** for the **Run-Off Period**, and such Shared Limit of liability for the **Run-Off Period** shall be part of and not in addition to the Shared Limit of Liability for the **Policy Period**. In no way shall the language of this endorsement be construed to reinstate, renew or increase the Aggregate Limit of Liability for this policy or any applicable Separate Limit of Liability or Shared Limit of Liability for the **Discovery Period**.

## V.    GENERAL CONDITIONS AND LIMITATIONS

### A.    LIMITS OF LIABILITY

1.    The **Insurer's** maximum aggregate Limit of Liability for all **Loss** under all **Coverage Parts** combined shall be the maximum aggregate Limit of Liability, if any, set forth in Item 4.A. of the Declarations.

2.    The **Insurer's** maximum aggregate Limit of Liability for all **Loss** under any **Coverage Part** shall be the maximum aggregate Limit of Liability for such **Coverage Part** set forth in Item 4. of the Declarations, which shall be part of and not in addition to the maximum aggregate Limit of Liability set forth in Item 4.A. of the Declarations.

3.    The **Insurer's** maximum aggregate Limit of Liability for all **Loss** covered under all such shared **Coverage Parts** as set forth in Item 3. of the Declarations shall be the largest of such single maximum aggregate Limit of Liability applicable to any one **Coverage Part** subject to the shared Limit of Liability, which shall be part of and not in addition to the maximum aggregate Limit of Liability, set forth in Item 4.A. of the Declarations.

4.    The **Insurer's** maximum aggregate Limit of Liability for any coverage

subject to a Sub-limit of Liability as provided in any **Coverage Part** shall be the Sub-limit set forth in Item 4. of the Declarations for such sub-limited coverage. The Sub-limit of Liability shall be part of and not in addition to the maximum aggregate Limit of Liability applicable to such **Coverage Part**. The maximum aggregate Limit of Liability applicable to such **Coverage Part** shall be subject to any applicable shared maximum Limit of Liability, and the maximum aggregate Limit of Liability set forth in Item 4.A. of the Declarations.

5.  **Defense Costs** under all **Coverage Parts** are part of and not in addition to each of the Limits of Liability set forth in Item 4. of the Declarations, and any payments by the **Insurer** of **Defense Costs** under any **Coverage Part** shall reduce the maximum aggregate Limit of Liability applicable to such **Coverage Part** and any applicable Sub-limit of Liability. The maximum aggregate Limit of Liability applicable to such **Coverage Part** shall be subject to any applicable shared Limit of Liability, and the maximum aggregate Limit of Liability set forth in Item 4.A. of the Declarations. In the event of the reduction of any shared maximum aggregate Limit of Liability by payment of **Defense Costs**, such reduced Limit of Liability shall be applicable to all **Coverage Parts** subject to such shared Limit of Liability.

6.  If the maximum aggregate Limit of Liability, if any, for all **Loss** on account of all **Claims** under all **Coverage Parts** is exhausted by payment of **Loss**, the **Insurer's** obligations under this Policy shall be completely fulfilled. If the maximum aggregate Limit of Liability for any **Coverage Part** for all **Loss** on account of all **Claims** under that **Coverage Part** is exhausted by payment of **Loss**, the **Insurer's** obligations under that **Coverage Part** shall be completely fulfilled. If the maximum aggregate Limit of Liability for any **Coverage Part** subject to a shared Limit of Liability is exhausted by payment of **Loss** under that **Coverage Part**, the **Insurer's** obligations under all **Coverage Parts** subject to that shared Limit of Liability shall be completely fulfilled.

7.  The Limit of Liability for any **Extended Reporting Period** shall be part of and not in addition to the applicable Limits of Liability set forth in Item 4. of the Declarations.

B.  **RETENTION**

1.  Unless otherwise stated, the **Insurer** shall only be liable for the amount of **Loss** arising from a **Claim** which is in excess of the applicable Retention set forth in Item 5 of the Declarations.

2.  Each Retention amount shall apply separately to each **Coverage Part** as set forth in the Declarations. The payment of **Loss** credited to the satisfaction of the Retention under one **Coverage Part** shall not be credited to the satisfaction of the Retention under any other **Coverage Part.**

3.  In the event a **Claim** gives rise to **Loss** covered under multiple **Coverage**

**Parts** and no such **Coverage Parts** are subject to a shared Limit of Liability, the Retention amount for each such **Coverage Part** shall apply separately to the **Loss** under such **Coverage Part**.

4. In the event a **Claim** gives rise to **Loss** covered under multiple **Coverage Parts** and such **Coverage Parts** are subject to a shared Limit of Liability, the Retention applicable to **Loss** covered under such multiple **Coverage Parts** with a shared Limit of Liability shall be the single highest Retention applicable to such **Loss** under any one **Coverage Part**.

5. If for any reason (including but not limited to **Financial Insolvency**), the **Company** fails or refuses to advance, pay or indemnify **Loss** of an **Insured Person** within the applicable Retention, if any, then the **Insurer** shall advance such amounts on behalf of the **Insured Person** until the **Company** agrees to make such payments, or the Retention has been satisfied. In no event shall any such advancement by the **Insurer** relieve the **Company** of any duty it may have to provide advancement, payment or indemnification to any **Insured Person**, and the **Company** agrees to provide such advancement, payment or indemnification to the fullest extent permitted by law.

C. **DEFENSE, SETTLEMENT AND COOPERATION**

1. The **Insurer** shall have the right and duty to defend any **Claim,** other than a **Claim** alleging, in whole or in part, a **Wage and Hour Violation,** covered under any applicable **Coverage Part** under this Policy even if the allegations are false, fraudulent or groundless. The **Insurer's** duty to defend any **Claim** under this Policy shall terminate upon the earliest of (i) the exhaustion of the maximum aggregate Limit of Liability applicable to this Policy; (ii) the exhaustion of the maximum aggregate Limit of Liability applicable to any applicable **Coverage Part**; or (iii) the exhaustion of any applicable Sub-limit of Liability of coverage for the **Claim** if coverage is afforded solely under a Sub-limit. If the maximum aggregate Limit of Liability applicable to any **Coverage Part** is subject to a shared Limit of Liability with another **Coverage Part**, the maximum aggregate Limit of Liability applicable to this **Coverage Part** shall be reduced or exhausted by payments made by the **Insurer** under such other **Coverage Part**.

2. Regarding any **Claim** alleging, in whole or in part, a **Wage and Hour Violation**, it shall be the duty of the **Insureds**, and not the **Insurer**, to defend such **Claim**.

3. The **Insured(s)** shall give the **Insurer** full cooperation, assistance and information as the **Insurer** shall reasonably require, including without limitation: attendance at hearings and trials; the giving and securing of evidence; assistance in enforcing rights of contribution and indemnity or in asserting any counterclaim, cross claim or third party claim; and in the evaluation of damages and liability in connection with any **Claim** (or **Voluntary Compliance Loss** if the Fiduciary Liability Coverage Section is purchased). The **Insured(s)** shall do nothing that shall prejudice the **Insurer's** position or its potential rights of recovery. The **Insured(s)** shall

not undertake to negotiate to settle, offer to settle, or settle any **Claim**, (or negotiate to pay, offer to pay or pay any **Voluntary Compliance Loss** if the **Fiduciary Liability Coverage Part** is purchased), incur any **Defense Costs** or otherwise assume any contractual obligation, admit any liability, or stipulate to any judgment with respect to any **Claim** without the **Insurer's** prior written consent, such consent not to be unreasonably withheld.    The failure of any **Insured Person** to comply with the provisions of this subsection shall not be imputed to any other **Insured Person**. Any **Defense Costs** incurred or settlements made (or agreement to pay **Voluntary Compliance Loss** if the **Fiduciary Liability Coverage Part** is purchased) without the **Insurer's** prior written consent shall not be covered under this Policy.

D.    **ALLOCATION**

In the event the **Insured(s)** incur **Loss** that is both covered and not covered by this Policy, either because the **Claim** includes both covered and uncovered matters or because the **Claim** includes both insured and uninsured parties, the **Insured(s)** and the **Insurer** agree to use all reasonable efforts to determine a fair and equitable allocation of the amounts as between covered and uncovered **Loss** based upon the relative legal exposure of the parties, without any presumption as to a fair and equitable allocation; provided, however, regarding **Defense Costs** to be advanced under any applicable **Coverage Part,** one hundred percent (100%) of any such **Defense Costs** shall be allocated to covered **Loss** if and to the extent such **Defense Costs** are incurred by covered **Insureds** and are in part covered and in part not covered by this Policy solely because the **Claim** against the **Insureds** includes both covered and uncovered matters.

Notwithstanding the above, no **Defense Costs** shall be allocated to that portion of **Loss** in connection with any **Claim** alleging, in whole or in part, a **Wage and Hour Violation**.

E.    **PRIORITY OF PAYMENTS**

In the event of **Loss** arising from one or more covered **Claims** for which payment is due under this Policy, the **Insurer** shall:

1.    first, pay the **Loss** incurred by an **Insured Person** that is not paid, advanced or indemnified by the **Company**;

2.    second, only after paying **Loss** pursuant to Subsection 1. above, and to the extent of any remaining Limit of Liability, pay the **Loss** of the **Company,** whether directly or as indemnitor of an **Insured Person**.

F.    **REPORTING AND NOTICE**

1.    As a condition precedent to coverage under this Policy under each **Coverage Part** other than the **Directors and Officers Liability Coverage Part**, the **Insured(s)** shall give to the **Insurer** written notice of

any **Claim** made against, or, if the **Fiduciary Liability Coverage Part** is purchased, the intent to enter into a **Voluntary Compliance Program** by, the **Insured(s)** as soon as practicable after the **Company's** general counsel or risk manager (or functionally equivalent position) first becomes aware of the **Claim** or potential of the payment of **Voluntary Compliance Loss**, but in no event later than: (i) sixty (60) days after expiration of the **Policy Period**; or (ii) the expiration of the applicable **Extended Reporting Period**, if exercised.

2.  As a condition precedent to coverage under this Policy under the **Directors and Officer Liability Coverage Part**, the **Insured(s)** shall give to the **Insurer** written notice of any **Claim** made against the **Insured(s)** as soon as practicable after the **Company's** general counsel or risk manager (or functionally equivalent position) first becomes aware of the **Claim**, but in no event later than (i) ninety (90) days after the expiration of the **Policy Period** if this Policy is not renewed; (ii) one hundred and twenty (120) days after the expiration of the **Policy Period** if this Policy is renewed; or (iii) the expiration of the applicable **Extended Reporting Period**, if exercised.

3.  The **Insurer** shall not raise as a defense to any **Claim** that notice was not "as soon as practicable" if such **Claim** was reported during the **Policy Period**, and was otherwise reported in compliance with this section.

4.  If during the **Policy Period** the **Insured(s)** become aware of and notifies the **Insurer** in writing of circumstances that may give rise to a **Claim** against the **Insured(s)** and provides details as set forth in this paragraph, then any **Claim** that is subsequently made against an **Insured** that arises from such circumstances and that is reported in accordance with this Section **V**.F., shall be deemed to have been first made at the time of the notification of circumstances for the purpose of establishing whether such subsequent **Claim** was first made during the **Policy Period**.  No coverage is afforded under this Policy for any **Loss** incurred in connection with such circumstances prior to the time such circumstances result in a **Claim**. Pursuant to this paragraph, and as a condition precedent to exercising any rights under this Policy with respect to a notice of circumstances that may give rise to a **Claim** against the **Insured(s)**, the **Insured(s)** shall specify and include within any such notice of circumstance a description of the circumstances that may give rise to a **Claim**, the nature of the alleged **Wrongful Act(s)** (or the nature of the alleged **Wrongful Act(s)** anticipated) and reasons for anticipating such **Claim**, with full particulars as to dates, persons and entities involved.

G.  **INTERRELATED CLAIMS**

All **Claims** arising from, based upon, or attributable to the same **Wrongful Act** or **Interrelated Wrongful Acts** shall be deemed to be a single **Claim** first made on the earliest date that:

1.    any of such **Claims** was first made, or deemed to have been made pursuant to Section **V**.F. above, even if such date is before the **Policy Period**;

2.    proper notice of such **Wrongful Act** or any **Interrelated Wrongful Act** was given to the **Insurer** pursuant to Section **V**.F. above; or

3.    notice of such **Wrongful Act** or any **Interrelated Wrongful Act** was given under any other policy of insurance of which any of the applicable Coverage Parts is a direct or indirect renewal or replacement.

H.    **ORGANIZATIONAL CHANGES**

If during the **Policy Period**:

1.    the **Named Insured** shall consolidate with, merge into, or sell all or substantially all of its assets to any other person or entity or group of persons or entities acting in concert;

2.    any person or entity or group of persons or entities acting in concert shall acquire:

    i)    more than fifty percent (50%) of the voting, appointment or designation power for the selection of a majority of: the Board of Directors; management committee members (if a joint venture); or the members of the management board (if a limited liability company), of the **Named Insured**; or

    ii)    the right, pursuant to a written contract or the by-laws, charter, operating agreement or similar documents of the **Named Insured**, to elect, appoint or designate the majority of: the Board of Directors; management committee members (if a joint venture); or the members of the management board (if a limited liability company), of the **Named Insured,**

(any events described in Subsections 1. or 2. above is an "**Organizational Change**"), then this Policy shall continue in full force and effect as to **Wrongful Acts** occurring prior to the effective date of the **Organizational Change**. However, there shall be no coverage afforded by this Policy for any actual or alleged **Wrongful Act(s)** occurring after the effective date of the **Organizational Change**.

In the event of an **Organizational Change**, this Policy shall not be cancelled by the **Named Insured** after such **Organizational Change** occurs.

I.    **OTHER INSURANCE**

The **Insured(s)** agree that any insurance provided by this Policy shall apply only as excess over any other valid and collectible insurance, whether primary, contributory, excess, contingent or otherwise, unless such insurance is written only as specific excess insurance over the Limits of Liability provided by this

Policy. For coverage provided under this Policy to any **Employee** that is a leased employee or independent contractor, any insurance provided under this Policy shall be excess over any insurance or indemnification provided by any professional employer organization. This Policy shall not be subject to the terms and conditions of any other insurance policy.

Notwithstanding the foregoing, this policy shall apply as primary insurance with respect to: (i) any private equity or venture capital liability, general partner liability, or other similar management or professional liability insurance maintained by any **Insured Person** or any direct or indirect shareholder of the **Named Insured**; (ii) any indemnification which may be owed to any **Insured Person** by a direct or indirect shareholder of the **Named Insured**; (iii) any personal liability or umbrella insurance that may be available to an **Insured Person**; or (iv) if the **Employment Practices Liability Coverage Part** is purchased, with respect to any **Claim** covered under said **Coverage Part** for an **Employment Practices Wrongful Act,** other than that portion of a **Claim** made against a leased employee or natural person independent contractor.

J.    **TERMINATION, CANCELLATION AND NONRENEWAL**

This Policy shall terminate at the earlier of the end of the **Policy Period** shown in Item 2. of the Declarations or the effective date of cancellation, as described below.

1.    Cancellation

a.    The **Named Insured** may cancel this Policy by surrender of this Policy to the **Insurer.** The **Named Insured** may also cancel this Policy or any **Coverage Part** by giving prior written notice to the **Insurer** stating when such cancellation shall take effect; provided, however, that such date of cancellation shall not be later than the end of the **Policy Period**. If the **Named Insured** cancels this Policy, or any **Coverage Part**, the **Insurer** shall retain the proportion of the premium paid for the Policy, or any such **Coverage Part**, on a pro-rata basis.

b.    The **Insurer** may cancel this Policy or any **Coverage Part** only for non-payment of premium. In this event, the **Insurer** shall mail written notice of cancellation for non-payment of premium to the **Named Insured**. The **Insurer's** notice shall state the effective date of cancellation, which shall not be less than twenty (20) days after mailing such notice. If the **Insurer** cancels this Policy or any **Coverage Part**, the **Insurer** shall retain the proportion of the premium paid on a pro-rata basis.

2.    Non-Renewal

The **Insurer** has no obligation to renew this Policy or any **Coverage Part**. If the **Insurer** elects not to renew this Policy or any **Coverage Part**, the **Insurer** shall mail to the **Named Insured** written notice of non-renewal at least sixty (60) days prior to the expiration of the **Policy Period**.

3.      Notice

The **Insurer** shall send all notices required under this Section **V.J.** by certified or registered mail to the **Named Insured** at the address listed in Item 1. of the Declarations, and by mail or electronic mail to the **Named Insured's** authorized agent, if any.  Proof of mailing shall be sufficient proof of notice.

K.      **SUBROGATION**

In the event of any payment under this Policy, the **Insurer** shall be subrogated to any **Insured(s)'** rights of recovery.  The **Insured(s)** shall execute all papers reasonably required and provide reasonable assistance and cooperation in securing or enabling the **Insurer** to exercise subrogation rights or any other rights in the name of the **Company** or any **Insured Person**.

Regarding coverage provided by this Policy under the **Directors and Officers Liability Coverage Part** and/or the **Employment Practices Liability Coverage Part**, if purchased and as applicable:

In no event shall the **Insurer** exercise its right of subrogation against an **Insured** under this Policy unless there has been a final, non-appealable adjudication in the underlying proceeding establishing that such **Insured** committed a deliberate criminal or deliberate fraudulent act or omission, knowingly violated any statute, regulation or law or gained any personal profit, remuneration or other financial advantage to which such **Insured** was not legally entitled.

Regarding coverage provided by this Policy under the **Fiduciary Liability Coverage Part**, if purchased and as applicable:

If the premium for this Policy has been paid by an **Insured** other than a **Plan,**  the **Insurer** shall not exercise its right of subrogation against an **Insured** under this Policy unless there has been a final, non-appealable adjudication in the underlying proceeding establishing that such **Insured** committed a deliberate criminal or deliberate fraudulent act or omission, knowingly violated any statute, regulation or law or gained any personal profit, remuneration or other financial advantage to which such **Insured** was not legally entitled.

L.      **BANKRUPTCY**

Bankruptcy or insolvency of any **Insured** shall not relieve the **Insurer** of its obligations nor deprive the **Insurer** of its rights, remedies or defenses under this Policy or at law.

In the event a liquidation or reorganization proceeding is commenced by or against the **Company** pursuant to the United States Bankruptcy Code, as amended, or any similar foreign, state or local law, the **Company** and the **Insured Person(s)** hereby agree to cooperate in any efforts by the **Insurer**, the

**Company** or any **Insured Person(s)** to obtain relief from any stay or injunction that may prohibit or delay the **Insurer's** payment of **Loss**.

M. **ALTERATION AND HEADINGS**

No alteration, change or modification to this Policy shall be effective unless made by written Endorsement to this Policy which is signed by an authorized representative of the **Insurer**.

The titles and headings to the various sections, subsections and endorsements of this Policy are included solely for ease of reference and do not in any way limit, expand or otherwise affect the provisions or existence of such sections, subsections or endorsements.

N. **TERRITORY AND VALUATION**

Coverage under this Policy shall extend to **Wrongful Acts** taking place, **Loss** incurred or **Claims** made anywhere in the world, to the extent legally permitted.

All premiums, Limits of Liability, Retentions, **Loss** and other amounts under this Policy are expressed and payable in the currency of the United States of America. If judgment is rendered, settlement is denominated or another element of **Loss** under this Policy is stated in a currency other than United States dollars, payment under this Policy shall be made in United States dollars at the rate of exchange on the date the final judgment is reached, the amount of the settlement is agreed upon or the other element of **Loss** is due, respectively.

O. **AUTHORIZATION CLAUSE**

By acceptance of this Policy, the **Named Insured** agrees to act on behalf of the **Insured(s)** with respect to:

1.    giving or receiving notices provided for in this Policy, including but not limited to giving notices of **Claim** or circumstances that may give rise to a **Claim** or giving or receiving notice of termination, cancellation or non-renewal, provided, however, that any **Insured Person** may give notice to the **Insurer** pursuant to Section **V**.F. of this Policy

2.    paying premiums and receiving any return premiums that may become due under this Policy;

3.    agreeing to any changes in the Policy; and

the **Insured(s)** agree that the **Named Insured** shall act on their behalf.

P. **ASSIGNMENT**

This Policy and any and all rights hereunder are not assignable without the prior written consent of the **Insurer**.

Q.    **REPRESENTATIONS**

By acceptance of this Policy, the **Insured(s)** represent and acknowledge that the statements and information contained in the **Application** are accurate and complete and that this Policy is issued in reliance upon the accuracy and completeness of such representations, statements and information.    No knowledge possessed by an **Insured Person** shall be imputed to any other **Insured Person**.

The **Insured(s)** further agree that in the event of any material misstatement, misrepresentation or omission in the **Application**, no coverage under this Policy shall apply to:

1.    Any **Insured Person** who knew, as of the inception date of this Policy, that the facts were not accurately and completely disclosed; and

2.    The **Company** (or any **Plan** if the **Fiduciary Liability Coverage Part** is purchased), either for **Claims** against it or as indemnitor of any **Insured Person**, if any of the following individuals, or their functional equivalents, knew, as of the inception date of the Policy, the facts that were not accurately and completely disclosed:

   i)    regarding coverage under the **Directors and Officers Coverage Part**, or the **Fiduciary Liability Coverage Part**, if purchased: any **Insured Person** who is or was a Chief Executive Officer or Chief Financial Officer;

   ii)    regarding coverage under the **Employment Practices Liability Coverage Part**: any **Insured Person** who was or is the head of the **Company's** Human Resources department.

The **Insurer** waives any right it may have to rescind or void this Policy.



# Private PROtect<sup>SM</sup>
# Directors & Officers Liability Coverage Part

In consideration of payment of the premium and in reliance upon the statements and representations made in the **Application**, all of which are made part of this Policy, and subject to the Declarations and the other terms of this Policy applicable to this **Coverage Part**, the Insurance Company shown in the Declarations (the "**Insurer**") and the **Insured(s)** agree as follows:

## I.    INSURING AGREEMENTS

### A.    NON-INDEMNIFIED LOSS COVERAGE

The **Insurer** shall pay **Loss** of any **Insured Person(s)** arising from a **Claim** first made during the **Policy Period** (or **Extended Reporting Period**, if exercised) against such **Insured Person(s)** for a **Wrongful Act**, if the **Company** has not indemnified the **Insured Person(s)** for such **Loss**.

### B.    COMPANY REIMBURSEMENT COVERAGE

The **Insurer** shall pay **Loss** of the **Company** arising from a **Claim** first made during the **Policy Period** (or **Extended Reporting Period**, if exercised) against any **Insured Person(s)** for a **Wrongful Act**, but only to the extent the **Company** has indemnified the **Insured Person(s)** for such **Loss**.

### C.    COMPANY LIABILITY COVERAGE

The **Insurer** shall pay **Loss** of the **Company** arising from a **Claim** first made during the **Policy Period** (or **Extended Reporting Period**, if exercised) against the **Company** for a **Wrongful Act**.

### D.    DERIVATIVE DEMAND INVESTIGATION COSTS COVERAGE

The **Insurer** shall pay **Investigative Costs**, subject to an aggregate Sub-limit of Liability as stated in Item 4.B.2. of the Declarations, resulting from a **Shareholder Derivative Demand** first made during the **Policy Period** (or **Extended Reporting Period**, if exercised) regardless of the outcome of, or finding as a result of, such **Shareholder Derivative Demand**.

### E.    INQUIRY COSTS COVERAGE

The **Insurer** will pay **Inquiry Costs**, subject to an aggregate Sub-Limit of Liability as stated in Item 4.B.3. of the Declarations, incurred by an **Insured Person(s)** as a result of an **Inquiry** first received by such **Insured Person(s)** during the **Policy Period** (or **Extended Reporting Period**, if applicable) if the **Company** has not indemnified such **Insured Person** for such **Inquiry Costs**.

II.    **DEFINITIONS**

A.    **Claim** means:

1.    a written demand against any **Insured** for monetary damages, non-monetary or injunctive relief, including a written demand that the **Insured** toll or waive a statute of limitations pertaining to a **Wrongful Act,** commenced by the **Insured's** receipt of such demand;

2.    a civil proceeding against any **Insured** commenced by the service of a complaint or similar pleading;

3.    a criminal proceeding against any **Insured** commenced by return of an indictment or similar document;

4.    an administrative or regulatory proceeding against any **Insured** commenced by the filing of a notice of charges or similar document;

5.    a civil, criminal, administrative or regulatory investigation of any **Insured Person** commenced by the service upon or other receipt by the **Insured Person** of a Wells notice, target letter or other written notice from the investigating authority identifying by name the **Insured Person** as an individual against whom a proceeding may be commenced;

6.    an official request for the **Extradition** of any **Insured Person** or the execution of a warrant for the arrest of any **Insured Person** where such execution is an element of **Extradition**; or

7.    an arbitration, mediation or any other alternative dispute resolution proceeding against any **Insured** commenced by the service of such proceeding or demand or similar document;

8.    solely with respect to **INSURING AGREEMENT** D., a **Shareholder Derivative Demand**.

9.    solely with respect to **INSURING AGREEMENT** E., an **Inquiry.**

10.    any of 1 through 7 above against an **Insured Person** arising out of, based upon or attributable to an actual or alleged **Wrongful Act** as defined below in Section **II. DEFINITIONS**, subsection N., paragraph 2.

**Claim** shall also include any appeal resulting from Subsections 2., 3., 4. or 5. above.

B.    **Employed Lawyers Claim** means a **Claim** as defined in Subsection A. 10. of this **Coverage Part,** subject to an aggregate Sub-Limit of Liability as stated in Item 4.B.4. of the Declarations.

C.    **Exempt Securities Claim** means any **Claim**:

    1.    Based upon, arising out of or attributable to the actual or alleged purchase, sale or offer to purchase or sell any securities of the **Company** in any transaction that is in fact exempt from registration under the Securities Act of 1933 (including any amendments thereto and regulations promulgated there under and ), including any Regulation CF offering, or any other offering under any similar provision of foreign law;

    2.    by a securities holder of the **Company** arising out of the actual or alleged failure of the **Company** to undertake a public offering of securities;

    3.    for a **Wrongful Act** in connection with the preparation of the **Company** to commence an initial public offering of securities, including without limitation, any **Wrongful Act** relating to a road show.   This addition to the definition of **Exempt Securities Claim** shall be void ab initio upon the registration statement for such initial public offering's becoming effective (the "**IPO Commencement Time**") except to the extent, (i) prior to the **IPO Commencement Time**, a **Claim** was made against an **Insured** and reported to the **Insurer** in accordance with the reporting provisions of the General Terms and Conditions Section, Section **V. GENERAL CONDITIONS AND LIMITATIONS**, subsection F.2.   **REPORTING AND NOTICE** of this Policy and (ii) no other insurance policy is applicable to the **Claim** or would be applicable but for the exhaustion of its Limit of Liability or the failure to provide notice to the insurer of such other policy.

D.    **Inquiry** means:

    1.    a subpoena or similar document compelling witness testimony or document production by an **Insured Person** with respect to such **Insured Person's** capacity in any **Company** or a **Company's** business activities;

    2.    a written request by an **Investigating Authority** for an **Insured Person** to appear for an interview or meeting with respect to such **Insured Person's** capacity in the **Company** or **Company's** business activities; or

    3.    a written request by a **Company** for an **Insured Person** to appear for an interview or meeting in connection with an investigation by an **Investigating Authority** or a security holder derivative demand, with respect to such **Insured Person's** capacity in any **Company** or a **Company's** business activities;

provided that, **Inquiry** shall not mean any routine or regularly scheduled oversight, compliance, audit, examination or inspection conducted by an **Investigating Authority**.

E.    **Inquiry Costs** means reasonable and necessary fees, costs and expenses incurred solely by an **Insured Person** in connection with the preparation for or response to an **Inquiry**, but shall not include salaries, wages, overhead or benefit expenses associated with **Insured Persons** or employees of the **Company** or the costs of complying with any formal or informal discovery request or production request seeking documents, records or electronic information that are in the possession of the **Company** or any third party.

F.   **Investigating Authority** means any federal, state, local or foreign law enforcement or governmental investigative authority (including, but not limited to, the U.S. Department of Justice, the U.S. Securities and Exchange Commission and any attorney general) or the enforcement unit of any securities or commodities exchange or other self-regulatory body.

G.   **Investigative Costs** means that part of **Loss** consisting of reasonable and necessary fees (including but not limited to attorney's fees and expert's fees), costs and expenses (other than regular or overtime wages, benefit expenses, salaries, fees, other types of compensation or overhead expenses of **Insured Person(s)** or the **Company**) incurred by the **Company** (including its Board of Directors or any committee of its Board of Directors) and consented to by the **Insurer** (such consent to not be unreasonably withheld), in investigating or evaluating the claims alleged in a **Shareholder Derivative Demand**.

H.   **Loss** means the total amount which the **Insured(s)** become legally obligated to pay on account of **Claims** made against them solely for **Wrongful Acts** for which coverage applies, including, but not limited to: damages, judgments and settlements; any award of pre-judgment and post-judgment interest on covered judgments and settlements; claimants' attorney's fee award pursuant to a covered judgment or included as part of a covered settlement; and **Defense Costs**.
**Loss** shall also include punitive, exemplary, and multiplied damages included as part of a covered settlement to the extent that such damages are insurable provided, however, that the insurability of punitive, exemplary and multiplied damages shall be governed by the law of any jurisdiction having a substantial relationship to the **Claim**, the **Loss** or this **Coverage Part,** that most favors the insurability of such punitive, exemplary or multiplied damages. Solely with respect to **INSURING AGREEMENT** D., **Loss** means **Investigative Costs**. Solely with respect to **INSURING AGREEMENT** E., **Loss** means **Inquiry Costs**.

**Loss** shall not include, other than **Defense Costs**:

1.   criminal or civil fines or penalties, other than civil penalties assessed against any **Insured Person** pursuant to Section 2(g)(2)(B) of the Foreign Corrupt Practices Act, 15 U.S.C. § 78dd-2(g)(2)(B), or to **UK Bribery Act Fines**;

2.   taxes;

3.   any amount for which the **Insured(s)** are not financially liable or which are without legal recourse to the **Insured(s)**;

4.   matters which are deemed uninsurable under the law pursuant to which this **Coverage Part** shall be construed;

5.   any amounts paid or incurred by any **Insured(s)** in providing injunctive or non-pecuniary relief;

6.   any amounts incurred by any **Insured(s)** to test for, monitor, clean up, remove, contain, treat, detoxify, or neutralize **Pollutants** regardless of whether such amounts are incurred compulsorily or voluntarily;

7.    disgorgement or restitution, whether paid, returned or reimbursed pursuant to a settlement or in satisfaction of a judgment; or

8.    any amount of any judgment or settlement representing the amount by which any price or consideration is effectively increased in connection with the acquisition or completion of the acquisition of all or substantially all of the ownership interest in or assets of an entity; provided this paragraph shall not exclude plaintiffs' attorney's fees with respect to any such judgment or settlement.

In addition, the **Insurer** shall not assert with respect to a **Claim** that **Loss** incurred by any **Insured**, in the **Insured's** capacity as such, is uninsurable due to the **Insured's** actual or alleged violation of Sections 11, 12 or 15 of the Securities Act of 1933, as amended; provided, however, this paragraph shall not apply to any settlement or judgment in said **Claim** if and to the extent a final and non-appealable judgment adverse to such **Insured** in any proceeding not brought by the **Insurer**, or a final determination by a regulatory or other governmental authority, or a written admission by such **Insured** in a settlement of such **Claim**, establishes such settlement or judgment constitutes disgorgement, restitution or the return of ill-gotten gain.

I.    **Moonlighting** means professional legal services rendered by an **Insured Person** outside the scope of his or her employment with the **Company** but during such time as the **Insured Person** is a licensed attorney employed by the **Company** to render professional legal services, which include notarizing, certifying or acknowledging signatures. **Moonlighting** shall not include any such professional legal services by any such **Insured Person** in his or her capacity with any entity that is not a current **Insured** at the time such services are rendered, including, without limitation, such **Insured Person's** capacity as an owner, principal, partner, employee, counsel or of counsel with any such entity.

J.    **Outside Entity** means:

1.    any organization chartered and operated as a not-for-profit organization;

2.    any other organization specifically included as an **Outside Entity** by specific written Endorsement applicable to this **Coverage Part**;

provided any organization referred to in Subsections 1. or 2. above is not included in the definition of **Company**.

K.    **Outside Position** means the position of director, officer, manager, trustee, governor or other equivalent executive position in an **Outside Entity** held by an **Insured Person** as defined in Subsection 1. of **II. DEFINITIONS** Section F. if service in such position is with the knowledge and consent of and at the direction or request of or part of the duties regularly assigned to the **Insured Person**, by the **Company**.

L.    **Shareholder Derivative Demand** means a written demand by one or more shareholders of the **Company** against the **Company's** board of directors or board of managers to bring a civil proceeding on behalf of the **Company** against any **Insured Person** for a **Wrongful Act**;

M.    **UK Bribery Act Fines** means fines or penalties assessed against any **Insured Person**

pursuant to Section 11(1)(a) of the United Kingdom Bribery Act of 2012, Chapter 23, up to a maximum amount of $10,000 per event.

N.  **Wrongful Act** means any actual or alleged act, error, omission, misstatement, misleading statement, neglect or breach of duty:

1.  by an **Insured Person** while acting in his or her capacity as such and on behalf of the **Company**, or any matter claimed against the **Insured Person** solely by reason of his or her status as an **Insured Person**;

2.  by an **Insured Person** employed by the **Company** as an attorney (i) while acting in his or her capacity as an **Insured Person** and as a licensed attorney rendering professional legal services, including, without limitation, pro bono legal service; or (ii) while **Moonlighting;** or (iii) by any **Insured Person** while acting under the supervision of and at the direction of another **Insured Person** who is employed by the **Company** as an attorney provided that such other **Insured Person**, is providing. such supervision and direction, is acting in his or her capacity as an **Insured Person** and as a licensed attorney rendering professional legal services. Rendering professional legal services includes notarizing, certifying or acknowledging signatures;

3.  with respect to any **Outside Position**, by such **Insured Person** in his or her capacity as such and while acting on behalf of the **Outside Entity** or any matter claimed against such **Insured Person** solely by reason of his or her status in such **Outside Position**; or

4.  with respect to **INSURING AGREEMENT** C., by the **Company**.

## III.  EXCLUSIONS

The **Insurer** shall not be liable for any **Loss** in connection with any **Claim** made against any **Insured**:

A.  brought or maintained by or on behalf of the **Company,** any **Insured Person** (other than an **Employee**) in any capacity or by any past, present or future security holder, partner or member of the **Company**, provided this exclusion shall not apply to:

1.  a **Claim** by or on behalf of a security holder, partner or member of the **Company**, whether direct or derivative, that is brought and maintained without the solicitation, assistance or participation of any **Insured** or **Outside Entity**;

2.  a **Claim** brought or maintained by any **Insured Person** that is in the form of a cross-claim or third-party claim for contribution or indemnity which is part of, and results directly from, a **Claim** which is otherwise covered under the terms of this **Coverage Part;**

3.  a **Claim** brought by any **Insured Person** who has not served in such capacity for at least two (2) years prior to the date such **Claim** is first made and who brings and maintains such **Claim** without the solicitation or active assistance or participation of the **Company** or any other **Insured Person** who is serving or has served as an **Insured Person** within such two (2) year period;

4.    a **Claim** brought or maintained by or on behalf of a bankruptcy or insolvency trustee, examiner, receiver, similar official or creditors' committee for such **Company**, or any assignee of such trustee, examiner, receiver, or similar official or creditors' committee;

5.    a **Claim** brought by or on behalf of the **Company** against any **Insured Person** that is brought and maintained in any non-common law jurisdiction outside the United States; or

6.    a **Claim** brought against an **Insured Person** based upon or arising out of any protected activity specified in any "whistleblower" protection pursuant to any foreign, federal, state or local law;

B.    for any **Wrongful Act** by an **Insured Person** in an **Outside Position** if such **Claim** is brought or maintained by or on behalf of the **Outside Entity** in which the **Insured Person** serves, or by or on behalf of any past, present or future director, officer, manager, governor, trustee, security holder, partner or member of such **Outside Entity**, provided this exclusion shall not apply to:

1.    a **Claim** by or on behalf of a security holder, partner or member of the **Outside Entity,** whether direct or derivative, that is brought and maintained without the solicitation, assistance or participation of the **Company**, any **Insured Person**, the **Outside Entity** or any director, officer, manager, governor or trustee of the **Outside Entity**;

2.    a **Claim** brought or maintained by or on behalf of such **Outside Entity** that is in the form of a cross-claim or third-party claim for contribution or indemnity which is part of, and results directly from, a **Claim** which is otherwise covered under the terms of this **Coverage Part**;

3.    a **Claim** brought by a director, officer, manager, governor or trustee of such **Outside Entity** who has not served as such for at least two (2) years prior to the date such **Claim** is first made and who brings and maintains such **Claim** without the solicitation by, or active assistance or participation of, such **Outside Entity** or any other director, officer, manager, governor or trustee of such **Outside Entity** who is serving or has served as such within such two (2) year period;

4.    a **Claim** brought or maintained by or on behalf of a bankruptcy or insolvency trustee, examiner, receiver, similar official or creditors' committee for such **Outside Entity**, or any assignee of such trustee, examiner, receiver, similar official or creditors' committee;

5.    a **Claim** by or on behalf of the **Outside Entity** brought and maintained in any non-common law jurisdiction outside the United States; or

6.    a **Claim** brought against the **Outside Entity** based upon or arising out of any protected activity        specified in any "whistleblower" protection pursuant to any foreign, federal, state or local law;

C.    based upon, arising out of or attributable to:

1.    the actual, alleged or threatened discharge, release, escape, seepage, migration or disposal of **Pollutants** at any time; provided, however, that this Subsection 1. shall not be applicable to **INSURING AGREEMENT** A. except with respect to **Loss** (Including without limitation legal and professional fees) incurred in connection with testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, or in any way responding to, or assessing the effects of, **Pollutants**; or

2.    any direction, demand or request to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, **Pollutants**;

D.    for service by the **Insured Person(s)** in any position or capacity in any organization other than the **Company** even if the **Company** directed or requested the **Insured Person(s)** to serve in such other position or capacity, provided this exclusion shall not apply to service by the **Insured Person** in an **Outside Position**;

E.    based upon, arising out of or attributable to (i) the actual or alleged purchase or sale, or offer to purchase or sell any securities of any kind, including, without limitation, securities issued by an entity other than the **Company**, or (ii) the actual or alleged violation of: the Securities Act of 1933; the Securities Exchange Act of 1934; the Investment Act of 1940; any state "Blue Sky" securities law;  or any other federal, state or local regulation, rule or statute regulating securities.  This exclusion shall not be applicable to any **Exempt Securities Claim.**

F.    based upon, arising out of or attributable to any actual or alleged employment related **Wrongful Act**, including but not limited to any refusal to employ, wrongful termination, wrongful discipline, breach of contract, harassment, violation of civil rights, or retaliation; however, if the Employment Practices Liability **Coverage Part** is not purchased, this exclusion will only apply to Insuring Agreement C.

G.    based upon, arising out of, attributable to any actual or alleged:

1.    **Wage and Hour Violation**; or

2.    any violation of: (i) any law governing workers' compensation, unemployment insurance, social security or disability benefits; (ii) the National Labor Relations Act; (iii) the Worker Adjustment and Retraining Notification Act; (iv) the Consolidated Omnibus Budget Reconciliation Act of 1985; (v) the Occupational Safety and Health Act; (vi) the Employee Retirement Security Act of 1974 (vii) any federal, state, local or foreign statute, rule, regulation or common law similar or related to, or promulgated pursuant to, any of the foregoing in subparts (i) through (vi);

H.    based upon, arising out of or attributable to any actual or alleged:

1.    Payments, commissions, gratuities, benefits or favors to or for the benefit of any full or part time domestic or foreign government official, agent, representative, employee, or military personnel, including any family member of, or any entity affiliated with, any of the foregoing;

2.     Payments, commissions, gratuities, benefits or favors to or for the benefit of any full or part time officers, directors, agents, partners, representatives, principal shareholders, owners or employees of any customer or potential customer of any **Insured**, including any family member of, or any entity affiliated with, any of the foregoing; or

3.     Political contributions, whether domestic or foreign;

Provided, however, this Exclusion shall not apply to civil penalties assessed against any **Insured Person** pursuant to Section 2(g)(2)(B) of the Foreign Corrupt Practices Act, 15 U.S.C. § 78dd-2(g)(2)(B) or to **UK Bribery Act Fines.**

Solely with respect to **INSURING AGREEMENT** C., the **Insurer** shall not be liable for any **Loss** in connection with any **Claim** made against the **Company**:

I.     based upon, arising out of or attributable to any actual or alleged libel, slander oral or written publication of defamatory or disparaging material, invasion of privacy, wrongful entry, eviction, false arrest, false imprisonment, assault, battery, loss of consortium, malicious prosecution or malicious use or abuse or process;

J.     based upon, arising out of or attributable to any actual or alleged discrimination against, or harassment of, any person or entity, whether employment related or not;

K.     based upon, arising out of or attributable to the actual or alleged violation of intellectual property rights, including, without limitation: (i) infringement of patent, copyright, trademark, trade dress, service mark, service name, title or slogan; (ii) misappropriation of ideas or trade secrets; or iii) plagiarism. This exclusion will not apply to any **Exempt Securities Claim**.

L.     based upon, arising out of or attributable to any actual or alleged false advertising or misrepresentation in advertising, with respects to the advertising of the **Insured's** own goods, products, publications or services.

M.     based upon, arising out of or attributable to any actual or alleged price fixing, predatory pricing, restraint of trade, monopolization, anti-competitive conduct, unfair competition or unfair business or trade practice or any interference in another's contractual or business relationship.   Without limitation, this exclusion shall be applicable to any actual or alleged violation of: the Federal Trade Commission Act; the Sherman Act; the Clayton Act; any amendments to any of the foregoing or any regulations promulgated pursuant to any of the foregoing; any statutory or common law definition of unfair competition, or unfair business or trade practice; or any provision of any federal, state, local or foreign statute regulation or common law relating to any of the foregoing or actually or allegedly relating to any activity set forth in this exclusion. However, this Exclusion shall not apply to civil penalties assessed against any **Insured Person** pursuant to Section 2(g)(2)(B) of the Foreign Corrupt Practices Act, 15 U.S.C. § 78dd-2(g)(2)(B) or to **UK Bribery Act Fines**;

N.     based upon, arising out of or attributable to any **Insured's** actual or alleged rendering or failure to render professional services, provided, however, that this exclusion shall not be applicable to **Investigative Costs**; or

O.  based upon, arising out of or attributable to any actual or alleged liability of the **Company** under any contract or agreement; provided, however, that this exclusion shall not be applicable to any liability that would have attached to the **Company** in the absence of such contract or agreement.

**IV.  OUTSIDE POSITION COVERAGE**

Subject to this Policy's other terms, **INSURING AGREEMENTS** A. and B. shall extend coverage to **Insured Persons** while serving in an **Outside Position**. However, this coverage shall be specifically excess of any indemnification and insurance available from or provided by the **Outside Entity** or any other entity in which the **Insured Person(s)** serve(s) in the **Outside Position**. Payment by the **Insurer** or any affiliate of the **Insurer** under another policy as a result of a **Claim** against an **Insured Person(s)** in an **Outside Position** shall reduce, by the amount of such payment, the **Insurer's** Limit of Liability applicable to this **Coverage Part** with respect to such **Claim**.

**V.  ADDITIONAL LIMIT FOR NON-INDEMNIFIED LOSS**

The **Insurer** shall pay **Loss** of any **Insured Person(s)** for which the **Insured Person(s)** are not indemnified by the **Company** and which the **Insured Person(s)** become legally obligated to pay on account of any **Claim** first made against them, individually or otherwise, during the **Policy Period** or the **Extended Reporting Period**, if exercised, for a **Wrongful Act**, subject to a limit as set forth in Item 4.B.5 of the Declarations. Coverage under this Subsection shall apply only if the Limits of Liability in Item 4.B.1. of the Declarations are exhausted by reason of payment by the **Insurer** of **Loss**; such coverage shall then be excess of all other insurance specifically excess of this policy as well as all other insurance described the **General Terms and Conditions** Section, Subsection **V. GENERAL CONDITIONS AND LIMITATIONS**, subparagraph I. **OTHER INSURANCE**.

**VI.  PRESUMPTIVE INDEMNIFICATION**

If the **Company** is permitted or required by common or statutory law to indemnify the **Insured Person(s)** for **Loss** but fails or refuses to do so other than for reason of **Financial Insolvency** then, notwithstanding any other conditions, provisions or terms of this policy to the contrary, any payment by the **Insurer** of such **Loss** under **INSURING AGREEMENT** A. shall be subject to the Retention set forth in Item 5.A.1. of the Declarations

For purposes of this section, the shareholder and board of director resolutions of the **Company** shall be deemed to provide indemnification for such **Loss** to the fullest extent permitted by law.



# Privacy Policy

Argo Group US, Inc. ("Argo Group") recognizes the importance of maintaining the privacy of our customers and the confidentiality of each individual's nonpublic personal information, including Social Security numbers. We take seriously the responsibility that accompanies our collection of nonpublic personal information, including Social Security numbers. Accordingly, Argo's corporate policy is to protect the privacy and confidentiality of our consumers and their nonpublic personal information as required by law.

## Information Collection and Use

In order to conveniently and effectively provide and service the insurance products we sell, we may collect and use Social Security numbers and other nonpublic personal information. As such, this policy does not prohibit the collection or use of Social Security numbers and nonpublic personal information where legally authorized and/or required. This policy complies with the requirements of the Gramm-Leach-Bliley Act (GLBA) and applicable federal and state laws and regulations implementing the act. Such laws impose certain obligations upon third persons and organizations with which we share nonpublic personal information of our consumers, customers, former customers, or claimants. Accordingly, we prohibit the unauthorized disclosure of Social Security numbers and other protected nonpublic personal information, except as legally required or authorized.

## Information Sharing and Disclosure

Argo Group does not rent, sell or share your personally identifiable information with nonaffiliated third parties. Argo Group may, however, share personally identifiable information with third-party contractors. These third-party contractors are prohibited from using the information for purposes other than performing services for Argo Group. Argo Group may disclose your information to third parties when obligated to do so by law and to investigate, prevent, or take action regarding suspected or actual prohibited activities, including but not limited to fraud and situations involving the security of our operations and employees.

Finally, Argo Group may transfer information, including any personally identifiable information, to a successor entity in connection with a corporate merger, consolidation, sale of all or a portion of its assets, bankruptcy, or other corporate change.

## Security

In order to protect your nonpublic personal information, we limit access to nonpublic personal information by only allowing authorized personnel to have access to such information. Furthermore, we maintain physical, electronic and procedural security protections to safeguard the nonpublic personal information in our records. Documents that contain an individual's protected information are destroyed before disposal; this destruction process includes the shredding of print and disposable media and deletion of electronic media. Argo Group has security measures in place to protect the loss, misuse and alteration of the information under our control. Our hardware infrastructure is housed in a controlled access facility that restricts access to authorized individuals. The network infrastructure is protected by a firewall and traffic is monitored and logged both on the firewall and servers. Sensitive administrative activities are carried out over secure, encrypted links between our offices and hosting facility. Administrative

access is limited not only to authorized employees but also to specific remote administration protocols and IP addresses. All employees with access to personally identifiable information have been advised of Argo Group's security policies and practices. Argo Group will continue to conduct internal audits of its security systems and make all necessary enhancements to ensure the safety of the website and its users. No method of transmission over the Internet or method of electronic storage is 100% secure; therefore, while Argo Group uses commercially acceptable means to protect your information, we cannot guarantee absolute security.

Any Argo Group employee who becomes aware of the inappropriate use or disclosure of Social Security numbers and other protected nonpublic personal information is expected to immediately report such behavior to the General Counsel for further action.

**Corrected/Updated Information**

This policy applies to certain insureds of Argo Group, including but not limited to worker's compensation claimants.  If you have any questions about this Privacy Policy, please contact:

General Counsel
Argo Group US, Inc.
P.O. Box 469011
San Antonio, Texas 78246
(210) 321-8400

*Note: Argo Group is the parent of Argonaut Insurance Company; Argonaut-Southwest Insurance Company; Argonaut-Midwest Insurance Company; Argonaut Great Central Insurance Company; Argonaut Limited Risk Insurance Company; ARIS Title Insurance Corporation; Select Markets Insurance Company; Colony Insurance Company; Colony Specialty Insurance Company; Peleus Insurance Company (fka Colony National Insurance Company); Rockwood Casualty Insurance Company; Somerset Casualty Insurance Company; Grocers Insurance Agency, Inc.; Central Insurance Management, Inc.; Alteris Insurance Services, Inc.; Trident Insurance Services, LLC; Commercial Deposit Insurance Agency, Inc.; Sonoma Risk Management, LLC; John Sutak Insurance Brokers, Inc.; Colony Management Services, Inc.; Argonaut Management Services, Inc.; and Argonaut Claims Management, LLC.  This Privacy Policy applies to all companies and business produced or underwritten within Argo Group.

# POLICYHOLDER DISCLOSURE
# NOTICE OF TERRORISM INSURANCE COVERAGE

You are hereby notified that under the Terrorism Risk Insurance Act, as amended, that you have a right to purchase insurance coverage for losses resulting from acts of terrorism, *as defined in Section 102(1) of the Act*: The term "act of terrorism" means any act or acts that are certified by the Secretary of the Treasury - in consultation with the Secretary of Homeland Security, and the Attorney General of the United States - to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of certain air carriers or vessels or the premises of a United States mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

YOU SHOULD KNOW THAT WHERE COVERAGE IS PROVIDED BY THIS POLICY FOR LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM, SUCH LOSSES MAY BE PARTIALLY REIMBURSED BY THE UNITED STATES GOVERNMENT UNDER A FORMULA ESTABLISHED BY FEDERAL LAW. HOWEVER, YOUR POLICY MAY CONTAIN OTHER EXCLUSIONS WHICH MIGHT AFFECT YOUR COVERAGE, SUCH AS AN EXCLUSION FOR NUCLEAR EVENTS. UNDER THE FORMULA, THE UNITED STATES GOVERNMENT GENERALLY REIMBURSES 85% THROUGH 2015; 84% BEGINNING ON JANUARY 1, 2016; 83% BEGINNING ON JANUARY 1, 2017; 82% BEGINNING ON JANUARY 1, 2018; 81% BEGINNING ON JANUARY 1, 2019; AND 80% BEGINNING ON JANUARY 1, 2020, OF COVERED TERRORISM LOSSES EXCEEDING THE STATUTORILY ESTABLISHED DEDUCTIBLE PAID BY THE INSURANCE COMPANY PROVIDING THE COVERAGE. THE PREMIUM CHARGED FOR THIS COVERAGE IS PROVIDED BELOW AND DOES NOT INCLUDE ANY CHARGES FOR THE PORTION OF LOSS COVERED BY THE FEDERAL GOVERNMENT UNDER THE ACT.

YOU SHOULD ALSO KNOW THAT THE TERRORISM RISK INSURANCE ACT, AS AMENDED, CONTAINS A $100 BILLION CAP THAT LIMITS U.S. GOVERNMENT REIMBURSEMENT AS WELL AS INSURER'S LIABILITY FOR LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM WHEN THE AMOUNT OF SUCH LOSSES IN ANY ONE CALENDAR YEAR EXCEEDS $100 BILLION. IF THE AGGREGATE INSURED LOSSES FOR ALL INSURERS EXCEED $100 BILLION, YOUR COVERAGE MAY BE REDUCED.

PLEASE ALSO BE AWARE THAT YOUR POLICY DOES <u>NOT</u> PROVIDE COVERAGE FOR ACTS OF TERRORISM THAT ARE NOT CERTIFIED BY THE SECRETARY OF THE TREASURY.

### <u>Acceptance or Rejection of Terrorism Insurance Coverage</u>

You must accept or reject this insurance coverage for losses arising out of acts of terrorism, *as defined in Section 102(1) of the Act*, before the effective date of this policy. <u>Your coverage cannot be bound unless our representative has received this form signed by you on behalf of all insureds with all premiums due.</u>

[x] **Coverage acceptance:**

I hereby elect to purchase coverage for certified acts of terrorism, *as defined in Section 102(1) of the Act* for a prospective premium of  $  Included        . I understand that I will not have coverage for losses resulting from any non-certified acts of terrorism.

**OR**

[ ] **Coverage rejection:**

I hereby decline to purchase coverage for certified acts of terrorism, *as defined in Section 102(1) of the Act*. I understand that I will not have coverage for any losses arising from either certified or non-certified acts of terrorism.

| | |
|---|---|
| Signature On File | Yellowstone Capital LLC |
| **Policyholder/Applicant's Signature-** **Must be person authorized to sign for all Insureds.** | **Insurance Company** |
| On File | ML7601979-3 |
| **Print Name** | **Policy Number** |
| | On File |
| | **Submission Number** |
| **Named Insured** | N/A |
| On File | **Producer Number** |
| **Date** | CRC Insurance Services, Inc. |
| | **Producer Name** |
| | 515 South Figueroa St., Suite 600 |
| | **Street Address** |
| | Los Angeles, CA 90071 |
| | **City, State, Zip** |

**The producer shown above is the wholesale insurance broker your insurance agent used to place your insurance coverage with us. Please discuss this Disclosure with your agent before signing.**

TRIA Notice A-0115                                                                                                          Page 1 of 1

IL P 001 01 04

# U.S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL ("OFAC") ADVISORY NOTICE TO POLICYHOLDERS

No coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This Notice provides information concerning possible impact on your insurance coverage due to directives issued by OFAC. **Please read this Notice carefully.**

The Office of Foreign Assets Control (OFAC) administers and enforces sanctions policy, based on Presidential declarations of "national emergency". OFAC has identified and listed numerous:

- Foreign agents;
- Front organizations;
- Terrorists;
- Terrorist organizations; and
- Narcotics traffickers;

as "Specially Designated Nationals and Blocked Persons". This list can be located on the United States Treasury's web site – http//www.treas.gov/ofac.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance are immediately subject to OFAC. When an insurance policy is considered to be such a blocked or frozen contract, no payments nor premium refunds may be made without authorization from OFAC. Other limitations on the premiums and payments also apply.

 © ISO Properties, Inc., 2004



**FRAUD STATEMENTS**

---

**FRAUD STATEMENT**
**(Not applicable in the states mentioned below where a specific warning applies.)**

Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, may be committing a fraudulent insurance act, and may be subject to a civil penalty or fine.

**Alabama**
Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or who knowingly presents false information in an application for insurance is guilty of a crime and may be subject to restitution, fines, or confinement in prison, or any combination thereof.

**Arkansas, District of Columbia, Louisiana, Rhode Island, West Virginia**
Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

**Colorado**
It is unlawful to knowingly provide false, incomplete, or misleading facts or information to an insurance company for the purpose of defrauding or attempting to defraud the company.  Penalties may include imprisonment, fines, denial of insurance and civil damages.  Any insurance company or agent of an insurance company who knowingly provides false, incomplete, or misleading facts or information to a policyholder or claimant for the purpose of defrauding or attempting to defraud the policyholder or claimant with regard to a settlement or award payable for insurance proceeds shall be reported to the Colorado Division of Insurance within the Department of Regulatory Agencies.

**Florida**
Any person who knowingly and with intent to injure, defraud, or deceive any insurer files a statement of claim or an application containing any false, incomplete, or misleading information is guilty of a felony of the third degree.

**Kansas**
Any person who, knowingly and with intent to defraud, presents, causes to be presented or prepares with knowledge or belief that it will be presented to or by an insurer, purported insurer, broker or any agent thereof, any written, electronic, electronic impulse, facsimile, magnetic, oral, or telephonic communication or statement as part of, or in support of, an application for the issuance of, or the rating of an insurance policy for personal or commercial insurance, or a claim for payment or other benefit pursuant to an insurance policy for commercial or personal insurance which such person knows to contain materially false information concerning any fact material thereto; or conceals, for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act.

**Kentucky**
Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance containing any materially false information or conceals, for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime.

**Maine**
It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company.  Penalties may include imprisonment, fines or denial of insurance benefits.

**Maryland**
Any person who knowingly or willfully presents a false or fraudulent claim for payment of a loss or benefit or who knowingly or willfully presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

**New Jersey, New Mexico**
Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to civil fines and criminal penalties.

**Ohio**
Any person who, with intent to defraud or knowing that he is facilitating a fraud against an insurer, submits an application or files a claim containing a false or deceptive statement is guilty of insurance fraud.

---

**Oklahoma**

WARNING: Any person who knowingly, and with intent to injure, defraud or deceive any insurer, makes any claim for the proceeds of an insurance policy containing any false, incomplete or misleading information is guilty of a felony.

**Oregon**

Any person who knowingly and with intent to defraud or solicit another to defraud the insurer by submitting an application containing a false statement as to any material fact may be violating state law.

**Pennsylvania**

Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subjects such person to criminal and civil penalties.

**Pennsylvania (Auto)**

Any person who knowingly and with intent to injure or defraud any insurer files an application or claim containing any false, incomplete or misleading information shall, upon conviction, be subject to imprisonment for up to seven years and the payment of a fine of up to $15,000.

**Tennessee, Virginia, Washington**

It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company.  Penalties include imprisonment, fines and denial of insurance benefits.

**New York**

Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime, and shall also be subject to a civil penalty not to exceed five thousand dollars and the stated value of the claim for each such violation.

**New York (Auto)**

Any person who knowingly makes or knowingly assists, abets, solicits or conspires with another to make a false report of the theft, destruction, damage or conversion of any motor vehicle to a law enforcement agency, the department of motor vehicles or an insurance company, commits a fraudulent insurance act, which is a crime, and shall also be subject to a civil penalty not to exceed five thousand dollars and the value of the subject motor vehicle or stated claim for each violation.

## SIGNATURES

**DO NOT SIGN UNTIL YOU HAVE READ THE CONTENTS OF THIS APPLICATION AND THE APPLICABLE FRAUD WARNING(S).**

I have reviewed the contents of this application and with my signature, I declare to the best of my knowledge that all statements herein are true and no material facts have been suppressed or misstated.  I am also aware that my operation may be inspected by the Insurance Company.

| APPLICANT/NAMED INSURED | |
|---|---|
| APPLICANT/NAMED INSURED SIGNATURE | DATE |

**Agent/Broker:**

Are you personally familiar with this Applicant's operations?          ☐ Yes   ☐ No
Did your office control this risk in the past year?                            ☐ Yes   ☐ No

| AGENT'S OR BROKER'S NAME AND ADDRESS | TELEPHONE NUMBER | LICENSE NO. |
|---|---|---|
| AGENT'S OR BROKER'S SIGNATURE | | DATE |

# IMPORTANT INFORMATION FOR POLICYHOLDERS - CLAIMS-MADE NOTICE

THIS POLICY PROVIDES COVERAGE ON A CLAIMS-MADE BASIS.

This means that only claims actually made and reported DURING the policy period are covered unless coverage for an extended reporting period is purchased. If an extended reporting period is NOT made available to you, you risk having gaps in coverage when switching from one company to another. Moreover, even if such a reporting period is made available to you, you may still be personally liable for claims reported after the period expires.

Claims-made policies do NOT provide coverage for loss, injury or damage, as defined by the policy, that occur before a fixed retroactive date.

I / We hereby acknowledge the differences in a claims-made policy, and agree to purchase claims-made coverage.

_____    _____

INSURED'S SIGNATURE                         DATE

_____    _____

AGENT'S SIGNATURE                           DATE

# SCHEDULE OF FORMS AND ENDORSEMENTS

| | |
|---|---|
| PrivacyNotice 0415 | Privacy Policy |
| TRIA Notice A 0115 | Policyholder Disclosure Statement Under the Terrorism Risk Insurance Act |
| ILP001 0104 | Policyholder Notice- US Dept of Treasury Office of Foreign Asset Control (OFAC) |
| FS-APP001 0618 | Fraud Statements |
| CLMSMADENOTICE 0117 | Important Information For Policyholders - Claims-Made Notice |
| DECSCH 0117 | Schedule Of Forms And Endorsements |
| ILP0208NJ 0418 | New Jersey Changes - Cancellation And Nonrenewal |
| PPRO2060NJ 0219 | NJ Changes |
| DWLNOTICE 0117 | Policyholder Notice - Defense Within Limits |
| PPRO4032 0719 | Liquidated Damages Exclusion Endorsement |
| PPRO4029 0719 | Liberalization Endorsement |

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# NEW JERSEY CHANGES –
# CANCELLATION AND NONRENEWAL

All Coverage Parts included in this policy are subject to the following condition.

Throughout this endorsement, the term **Named Insured** refers to the **Policyholder** or **Named Insured** shown in Item 1. of the Declarations.

The Cancellation, Nonrenewal or similar provision(s) of this policy is/are deleted and replaced with the following:

This provision will not apply to any policy which has been in effect for less than 60 days at the time notice of cancellation is mailed or delivered, unless the policy is a renewal policy.

A.  Cancellation

    1.  The first **Named Insured** shown in the Declarations may cancel this policy by mailing or delivering to the **Insurer** advance written notice of cancellation.

    2.  If this policy has been in effect for less than 60 days, the **Insurer** may cancel this policy for any reason subject to the following:

        a.  the **Insurer** may cancel this policy by mailing or delivering to the first **Named Insured** and any person entitled to notice under this policy written notice, of cancellation, at least:

            (1) 10 days before the effective date of cancellation if the **Insurer** cancels for:

                (a) Nonpayment of premium; or

                (b) Existence of a moral hazard, as defined in N.J.A.C. 11:1-20.2(f) as follows:

                    (i) "The risk, danger or probability that the **Insured** will destroy, or permit to be destroyed, the **Insured** property for the purpose of collecting the insurance proceeds. Any change in the circumstances of an **Insured** that will increase the probability of such a destruction may be considered a 'moral hazard'"; and

                    (ii) "The substantial risk, danger or probability that the character, circumstances or personal habits of the **Insured** may increase the possibility of loss or liability for which an **Insurer** will be held responsible. Any change in the character or circumstances of an individual, corporate, partnership or other **Insured** that will increase the probability of such a loss or liability may be considered a 'moral hazard'".

            (2) 30 days before the effective date of cancellation if the **Insurer** cancels for any other reason.

        b.  in the notice of cancellation which is sent to the first **Named Insured**, the **Insurer** will state the reason for cancellation.

    3.  The **Insurer** will mail or deliver the **Insurer's** notice to the first **Named Insured's** last mailing address known to the **Insurer**.

    4.  Notice of cancellation will state the effective date of cancellation.  The **Policy Period** will end on that date.

    5.  If this policy is canceled, the **Insurer** will send the first **Named Insured** any premium refund due. If the **Insurer** cancels, the refund will be pro rata.  If the first **Named Insured** cancels, the refund may be less than pro rata.  The cancellation will be effective even if the **Insurer** has not made or offered a refund.

6.  If notice is mailed, proof of mailing will be sufficient proof of notice.

7.  Cancellation of policies in effect for 60 days or more

    a.  If this policy has been in effect for 60 days or more, or is a renewal of a policy the **Insurer** issued, the **Insurer** may cancel this policy only for one or more of the following reasons:

      (1)  nonpayment of premium;

      (2)  existence of a moral hazard, as defined in N.J.A.C. 11:1-20.2(f);

      (3)  material misrepresentation or nondisclosure to the **Insurer** of a material fact at the time of acceptance of the risk;

      (4)  increased hazard or material change in the risk assumed which the **Insurer** could not have reasonably contemplated at the time of assumption of the risk;

      (5)  substantial breaches of contractual duties, conditions or warranties that materially affect the nature and/or insurability of the risk;

      (6)  lack of cooperation from the **Insured** on loss control matters materially affecting insurability of the risk;

      (7)  fraudulent acts against the **Insurer** by the insured or its representative that materially affect the nature of the risk insured;

      (8)  loss of or reduction in available insurance capacity;

      (9)  material increase in exposure arising out of changes in statutory or case law subsequent to the issuance of the insurance contract or any subsequent renewal;

      (10) loss of or substantial changes in applicable reinsurance;

      (11) failure by the **Insured** to comply with any Federal, State or local fire, health, safety or building or construction regulation, law or ordinance with respect to an insured risk which substantially increases any hazard insured against within 60 days of written notification of a violation of any such law, regulation or ordinance;

      (12) failure by the **Insured** to provide reasonable and necessary underwriting information to the **Insurer** upon written request therefore and a reasonable opportunity to respond.

      (13) agency termination, provided:

        (a)  the **Insurer** documents that replacement coverage at comparable rates and terms has been provided to the first **Named Insured**, and the **Insurer** has informed the first **Named Insured**, in writing, of the right to continue coverage with the **Insurer**; or

        (b)  the **Insurer** has informed the first **Named Insured**, in writing, of the right to continue coverage with the **Insurer** and the first **Named Insured** has agreed, in writing, to the cancellation or nonrenewal based on the termination of the first **Named Insured's** appointed agent.

      (14) any other reasons in accordance with the **Insurer's** underwriting guidelines for cancellation of commercial lines coverage.

    b.  If the **Insurer** cancels this policy based on paragraph 7.a.(1) or (2) above, the **Insurer** will mail or deliver a written notice, to the first **Named Insured** and any person entitled to notice under this policy, at least 10 days before the effective date of cancellation. If the **Insurer** cancels this policy for any other reason listed above, the **Insurer** will mail or deliver a written notice to the first **Named Insured** and any person entitled to notice under this policy, not more than 120 days nor less than 30 days before the effective date of such cancellation.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

c. In the notice of cancellation which is sent to the first **Named Insured**, the **Insurer** will state the reason for cancellation. For cancellation due to the nonpayment of premium, the notice will state the effect of nonpayment by the due date. Cancellation for nonpayment of premium will not be effective if payment of the amount due is made before the effective date set forth in the notice.

d. Notice will be sent to the last mailing addresses known to the **Insurer**, by:

(1) Certified mail; or

(2) First class mail, if the **Insurer** has obtained from the post office a date stamped proof of mailing showing names and addresses.

e. The **Insurer** need not send notice of cancellation if the **Insured** has:

(1) Replaced coverage elsewhere; or

(2) Specifically requested termination.

B. Nonrenewal

1. The **Insurer** may elect not to renew this policy for any reason permitted to cancel it. If the **Insurer** elects not to renew this policy, the **Insurer** will mail a notice of nonrenewal, stating the reasons for nonrenewal, to the first **Named Insured** at least 30 days but not more than 120 days before the expiration date of this policy.

2. This notice will be sent to the first **Named Insured** at the last mailing address known to the **Insurer** by:

a. Certified mail; or

b. First class mail, if the **Insurer** has obtained from the post office a date stamped proof of mailing showing the first **Named Insured's** name and address.

3. The **Insurer** need not mail or deliver this notice if the **Insured** has:

a. Replaced coverage elsewhere; or

b. Specifically requested termination.

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# NEW JERSEY CHANGES

This endorsement modifies insurance provided under the following:

    GENERAL TERMS AND CONDITIONS PART

A.  Section **IV. EXTENSIONS OF COVERAGE** B. **EXTENDED REPORTING PERIOD** is deleted and replaced by the following:

    B.  **EXTENDED REPORTING PERIOD**

        1.  If the **Insurer** or **Named Insured** terminates or refuses to renew this Policy or any **Coverage Part** of this Policy other than for nonpayment of premium, the **Insured(s)** shall receive, without payment of an additional premium, a thirty (30) day Automatic Extended Reporting Period following the effective date of termination or nonrenewal, but only with respect to any **Wrongful Act** taking place prior to the effective date of such termination or nonrenewal.  The Automatic Extended Reporting Period shall only be applicable to a particular **Coverage Part** if the **Insurer** or **Named Insured** terminates or refuses to renew such **Coverage Part**.

        2.  If the **Insurer** or **Named Insured** terminates or refuses to renew this Policy or any **Coverage Part** of this Policy other than for nonpayment of premium, the **Insured(s)** shall have the right, upon payment of the additional premium set forth in Item 7. of the Declarations, to the applicable **Extended Reporting Period** following the end of the Automatic Extended Reporting Period, but only with respect to any **Wrongful Act** taking place prior to the effective date of such termination or nonrenewal. The **Extended Reporting Period** shall only be applicable to a particular **Coverage Part** if the **Insurer** or **Named Insured** terminates or refuses to renew such **Coverage Part**.

        3.  The right of the **Insureds** to purchase the **Extended Reporting Period** shall lapse unless written notice of such election, together with payment of the additional premium due is given by the **Insureds** to the **Insurer** within thirty (30) days following the effective date of termination or nonrenewal.  The **Extended Reporting Period** offered by the **Insurer** shall be at least three (3) years in length.  The **Extended Reporting Period** is non-cancellable and the entire additional premium shall be deemed fully earned.

        4.  Neither the extension of the Automatic Extended Reporting Period nor the purchase of the **Extended Reporting Period** shall in any way increase the Limit of Liability set forth in Item 4. of the Declarations, and the Limit of Liability with respect to **Claims** made during the Automatic Extended Reporting Period and the **Extended Reporting Period** shall be part of, and not in addition to, the Limit of Liability for all **Claims** made during the **Policy Period**.

B.  Section **V. GENERAL CONDITIONS AND LIMITATIONS** F. **REPORTING AND NOTICE** is amended by the addition of the following:

    Provided, however, notice given by or on behalf of the **Insured** to any authorized agent of the **Insurer** within this state, with particulars sufficient to identify the **Insured**, shall be deemed to be notice to the **Insurer**. Provided, further, the failure to give any notice required under this Policy shall not invalidate any **Claim** made by the **Insured** if it is shown not to have been reasonably possible to give the notice within the prescribed time and that notice was given as soon as reasonably practicable.

C.  Section **V. GENERAL CONDITIONS AND LIMITATIONS** is amended by the addition of the following:

THIS POLICY IS SUBJECT TO A MAXIMUM AGGREGATE LIMIT OF LIABILITY SPECIFIED IN ITEM 4.A. OF THE DECLARATIONS, FOR ALL LOSS UNDER ALL COVERAGE PARTS.   THE INSURER'S MAXIMUM AGGREGATE LIMIT OF LIABILITY FOR ALL LOSS ON ACCOUNT OF ALL CLAIMS UNDER ANY COVERAGE PART SHALL BE THE MAXIMUM AGGREGATE LIMIT OF LIABILITY FOR SUCH COVERAGE PART SET FORTH IN ITEM 4. OF THE DECLARATIONS, WHICH SHALL BE PART OF AND NOT IN ADDITION TO THE MAXIMUM AGGREGATE LIMIT OF LIABILITY, IF ANY, SET FORTH IN ITEM 4.A. OF THE DECLARATIONS. THE INSURER'S MAXIMUM AGGREGATE LIMIT OF LIABILITY UNDER ALL COVERAGE PARTS SUBJECT TO A SHARED LIMIT OF LIABILITY AS SET FORTH IN ITEM 3. OF THE DECLARATIONS SHALL BE THE LARGEST SINGLE MAXIMUM AGGREGATE LIMIT OF LIABILITY APPLICABLE TO ANY ONE COVERAGE PART SUBJECT TO THE SHARED LIMIT OF LIABILITY, WHICH SHALL BE PART OF AND NOT IN ADDITION TO THE MAXIMUM AGGREGATE LIMIT OF LIABILITY, IF ANY, SET FORTH IN ITEM 4.A. OF THE DECLARATIONS.

UNDER THE DIRECTORS & OFFICERS LIABILITY COVERAGE PART, THE INSURER'S MAXIMUM AGGREGATE LIMIT OF LIABILITY FOR ALL INVESTIGATIVE COSTS ON ACCOUNT OF ALL SHAREHOLDER DERIVATIVE DEMANDS UNDER INSURING AGREEMENT D. SHALL BE THE SUB-LIMIT SET FORTH IN ITEM 4.B.2. OF THE DECLARATIONS, WHICH SHALL BE A PART OF, AND NOT IN ADDITION TO, THE LIMIT OF LIABILITY SET FORTH IN ITEM 4.B.1. OF THE DECLARATIONS.  THE INSURER'S MAXIMUM AGGREGATE LIMIT OF LIABILITY FOR ALL LOSS ON ACCOUNT OF ALL EMPLOYED LAWYERS CLAIMS SHALL BE SUBJECT TO THE SUB-LIMIT OF LIABILITY, IF ANY, SET FORTH IN ITEM 4.B.3. OF THE DECLARATIONS. IF NO SUCH SUB-LIMIT IS SET FORTH, THEN COVERAGE FOR ANY EMPLOYED LAWYER CLAIM SHALL NOT BE SUBJECT TO A SUB-LIMIT OF LIABILITY.

UNDER THE EMPLOYMENT PRACTICES LIABILITY COVERAGE PART, THE INSURER'S MAXIMUM AGGREGATE LIMIT OF LIABILITY FOR ALL LOSS UNDER INSURING AGREEMENT B. SHALL BE THE SUB-LIMIT SET FORTH IN ITEM 4.C.2. OF THE DECLARATIONS, WHICH SHALL BE A PART OF, AND NOT IN ADDITION TO, THE LIMIT OF LIABILITY SET FORTH IN ITEM 4.C.1. OF THE DECLARATIONS.  THE INSURER'S MAXIMUM AGGREGATE LIMIT OF LIABILITY FOR ALL LOSS UNDER INSURING AGREEMENTS A. AND B. CONSTITUTING SENSITIVITY TRAINING COSTS SHALL BE THE SUB-LIMIT SET FORTH IN ITEM 4.C.3. OF THE DECLARATIONS, WHICH

**SHALL BE A PART OF, AND NOT IN ADDITION TO, THE LIMIT OF LIABILITY SET FORTH IN ITEM 4.C.1. OF THE DECLARATIONS.**

**UNDER THE FIDUCIARY LIABILITY COVERAGE PART, THE INSURER'S MAXIMUM AGGREGATE LIMIT OF LIABILITY FOR ALL VOLUNTARY COMPLIANCE LOSS UNDER INSURING AGREEMENT B. SHALL BE THE SUB-LIMIT SET FORTH IN ITEM 4.D.2. OF THE DECLARATIONS, WHICH SHALL BE A PART OF, AND NOT IN ADDITION TO, THE LIMIT OF LIABILITY SET FORTH IN ITEM 4.D.1. OF THE DECLARATIONS.  THE INSURER'S LIMIT OF LIABILITY FOR ALL HIPAA CLAIMS SHALL BE THE SUB-LIMIT SET FORTH IN ITEM 4.D.3. OF THE DECLARATIONS, WHICH SHALL BE A PART OF, AND NOT IN ADDITION TO, THE AGGREGATE LIMIT OF LIABILITY SET FORTH IN ITEM 4.D.1. OF THE DECLARATIONS.**

**LOSS INCLUDES DEFENSE COSTS.**

ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN UNCHANGED.

This endorsement changes the Policy to which it is attached and is effective on the date issued unless otherwise stated.

Endorsement Effective ___October 25, 2019___ Policy No. ___ML7601979-3___ Endorsement No. ___1___

Insured ___Yellowstone Capital LLC___ Premium _____

Insurance Company ___Argonaut Insurance Company___ Authorized Signature _____

# POLICYHOLDER NOTICE – DEFENSE WITHIN LIMITS

I hereby acknowledge that I understand that this policy is written on a defense within limits basis.  The limits of liability may be reduced or completely exhausted by payments for defense costs as defined in the policy.

Policy No.    ML7601979-3 _____


Policy Inception Date    October 25, 2019 _____

_____ Date _____
Insured or Insured's Representative

DWLNOTICE-0117                                                                                  Page 1 of 1

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# LIQUIDATED DAMAGES EXCLUSION ENDORSEMENT

This Endorsement modifies the coverage provided under the following insurance policy:

***Private PROtect: General Terms and Conditions Part, Private Company Employment Practices Liability Coverage Part, Fiduciary Liability Coverage Part***

In consideration of the payment of the premium for this Policy, it is hereby understood and agreed that Section **III. GENERAL EXCLUSIONS** of the General Terms and Conditions Part is amended to add the following exclusion:

> Under all **Coverage Parts** purchased, and in addition to any Exclusions included in such **Coverage Parts**, the **Insurer** shall not be liable for that portion of **Loss** in connection with any **Claim** made against any **Insured** based upon, arising out of, or attributable to liquidated damages, provided this exclusion shall not apply to liquidated damages awarded under the Age Discrimination in Employment Act or the Equal Pay Act that are otherwise covered under the **Employment Practices Liability Coverage Part**.

All other terms and conditions remain unchanged.

This endorsement changes the Policy to which it is attached and is effective on the date issued unless otherwise stated.

| | | | | | |
|---|---|---|---|---|---|
| Endorsement Effective | October 25, 2019 | Policy No. | ML7601979-3 | Endorsement No. | 2 |
| Insured | Yellowstone Capital LLC | | | Premium | |
| Insurance Company | Argonaut Insurance Company | | Authorized Signature | | |

PPRO-4032-0719

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# LIBERALIZATION CLAUSE ENDORSEMENT

This Endorsement modifies the coverage provided under the following insurance policy:

**Private PROtect: Directors & Officers Liability Coverage Part, Employment Practices Liability Coverage Part, and Fiduciary Liability Coverage Part**

In consideration of the premium charged, it is hereby understood and agreed the following is added to the Policy:

This Policy together with all endorsements attached hereto has been issued as a replacement of the policy(ies) listed in the SCHEDULE below issued to the **Policyholder** (such policy(ies) together with all endorsements attached thereto, the "Expiring Policy(ies)"). The terms and conditions of either this Policy or the Expiring Policy(ies), whichever is more favorable to the **Insured**, shall govern with respect to any **Claim** first made during the **Policy Period** under any and all **Coverage Parts**. Provided, however, in all events:

1.     The applicable **Policy Period**, Retention, Limit of Liability (including any applicable Sub-limit), and Endorsement(s) pertaining to this Policy apply as do the individuals and entities which are **Insureds** under this Policy;

2.     This Endorsement supersedes any liberalization provision in the Expiring Policy(ies);

3.     This Endorsement will only be effective for this Policy and not any renewal thereof; and

4.     **Claims** may be adjusted solely within a singular policy only.

SCHEDULE

| Policy Type | Carrier | Policy Number |
|---|---|---|
| Private Playbook | Argonaut Insurance Company | ML7601979-2 |

This endorsement changes the Policy to which it is attached and is effective on the date issued unless otherwise stated.

Endorsement Effective   October 25, 2019     Policy No.   ML7601979-3     Endorsement No.     3

Insured    Yellowstone Capital LLC                             Premium

Insurance Company    Argonaut Insurance Company    Authorized Signature

PPRO-4029-0719

Page 1 of 1