**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| YELLOWSTONE CAPITAL LLC and YITZHAK STERN,<br><br>*Plaintiffs*,<br><br>v.<br><br>ARGONAUT INSURANCE COMPANY,<br><br>*Defendant*. | Civil Action No. 25-18001<br><br>**OPINION**<br><br>August 11, 2026 |

**SEMPER**, District Judge.

**THIS MATTER** comes before the Court on Defendant Argonaut Insurance Company's ("Argo" or "Defendant") Motion to Dismiss Plaintiffs Yellowstone Capital LLC ("Yellowstone" or "Plaintiff") and Yitzhak Stern's ("Stern") Complaint with respect to Yellowstone. (ECF 10, "Motion" or "Mot.") Yellowstone opposed the Motion. (ECF 17, "Opposition" or "Opp.") Defendant filed a reply. (ECF 18, "Reply.") The Court has decided this Motion upon the submissions of the parties, without oral argument, pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons stated below, Defendant's Motion to Dismiss is **GRANTED**.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY[1]

### A. Factual Background

This insurance coverage dispute arises out of the New York Attorney General's ("NYAG")

[1] Facts and procedural history are drawn from the Complaint, (ECF 1; "Complaint" or "Compl."), and documents integral to or relied upon by the Complaint. *See In re Burlington Coat Factory*

investigation into and lawsuit against Yellowstone and Stern relating to their sale of merchant cash advances to consumers in New York ("the NYAG Action"), and Defendant's subsequent denial of insurance coverage of both Yellowstone and Stern for their costs arising out of the NYAG Action. (*See* Compl. ¶¶ 2-5.) Plaintiff Yellowstone is a limited liability company that is incorporated in New York and maintains its principal place of business in New Jersey. (*Id.* ¶ 11.) Stern served as the Chief Executive Officer of Yellowstone at all times relevant to this action, and is a citizen of New Jersey. (*Id.* ¶ 12.) Defendant Argo is an insurance company incorporated in Nebraska. (*Id.* ¶ 13.) This Court summarizes only the facts relevant to Defendant's Motion to Dismiss the Complaint as it pertains to Yellowstone.

**1. The Insurance Policy**

In June 2018, Argo issued a Directors and Officers insurance policy (the "Policy") to Yellowstone. (*Id.* ¶¶ 16-17.) The Policy contained two Insuring Agreements relevant to this Motion: Company Reimbursement Coverage ("Insuring Agreement B") and Company Liability Coverage ("Insuring Agreement C"). (*Id.* ¶ 18.)

Insuring Agreement C provides that "[t]he Insurer shall pay Loss of the Company arising from a Claim first made during the Policy Period (or Extended Reporting Period, if exercised) against the Company for a Wrongful Act." (*Id.*; ECF 1-1, "Ex. A" at 17.) The Policy contains an Exclusion ("Exclusion Q") with respect to Insurance Agreement C, stating that:

> Solely with respect to INSURING AGREEMENT C, the Insurer shall not be liable for any Loss in connection with any Claim made against the Company . . . based upon, arising out of or attributable to any actual or alleged (i) intentionally false or intentionally misleading advertising or (ii) price fixing, predatory pricing, restraint of trade, monopolization, anti-competitive conduct, unfair competition or unfair business or trade practice or any interference in another's contractual or business

---

*Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). For the purposes of a motion to dismiss, the facts drawn from the Complaint are accepted as true. *See Fowler v. UMPC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009).

relationship.

(Ex. A. at 24.) Exclusion Q applies to "any statutory or common law definition of unfair competition, or unfair business or trade practice; or any provision of any federal, state, local or foreign statute regulation or common law relating to any of the foregoing or actually or allegedly relating to any activity set forth in this exclusion[.]" (*Id.*)

Insuring Agreement B provides that "[t]he Insurer shall pay Loss of the Company arising from a Claim first made during the Policy Period (or Extended Reported Period, if exercised) against any Insured Person(s) for a Wrongful Act, but only to the extent the Company has indemnified the Insured Person(s) for such Loss." (*Id.* at 17)

**2. The NYAG Action**

On December 3, 2018, the NYAG served Yellowstone with a subpoena in furtherance of an investigation into its sale of merchant cash advances in New York. (Compl. ¶¶ 2, 25; *see* ECF 1-3, "Ex. C.") Yellowstone claims it promptly informed Argo of the subpoena. (Compl. ¶ 28.) On June 28, 2019, Argo issued a letter in which it stated that, while the subpoena was not a "Claim" under the Policy, it would accept the subpoena as a "notice of circumstances that may give rise to a Claim." (*Id.* ¶¶ 28-29; *see* ECF 1-4, "Ex. D.") Argo's letter also stated that coverage would be afforded under the Policy "for any Loss incurred in connection with such circumstances" once "such circumstances result in a Claim." (Compl. ¶ 29; Ex. D at 4.)

The NYAG formally commenced an enforcement action against Yellowstone on or about January 8, 2024, serving all plaintiffs with a Notice of Intent to Sue. (Compl. ¶¶ 3, 38; *see* ECF 1-8, "Ex. H.") On March 5, 2024, the NYAG initiated an action against Yellowstone, Stern, and several other parties in the Supreme Court of the State of New York by way of a Verified Petition. (Compl. ¶ 41; *see* ECF 1-9, "Ex. I.") As relevant here, the NYAG specifically alleged that

Yellowstone violated New York's Executive, General Business, General Obligations, Banking, Penal, and Debtor & Creditor Laws by engaging in the "(i) repeated and persistent civil usury by lending money at interest rates exceeding 16 percent; (ii) repeated and persistent criminal usury by lending money at interest rates exceeding 25 percent; (iii) repeated and persistent lending at excessive interest rates without a license; (iv) repeated and persistent deception and fraud in the marketing, issuance, and servicing of 'merchant cash advance' agreements." (Compl. ¶ 43; Ex. I at 274-284); *see* N.Y. Exec. Law § 63(12), N.Y. Gen. Bus. Law § 349, N.Y. Gen. Ob. Law § 5-501, N.Y. Bank. Law § 340, N.Y. Pen. Law § 190.40, & N.Y. Debt. & Cred. Law §§ 273-4.

Yellowstone and Stern reached a settlement agreement with the NYAG on December 2, 2024. (Compl. ¶ 50; *see* ECF 1-12, "Ex. L.") On September 9, 2024, Yellowstone and Stern submitted a Notice of Covered Litigation to Defendant in which they formally sought coverage for the NYAG Action and provided it with the Verified Petition. (Compl. ¶ 54; *see* ECF 1-14, "Ex. N.") Having allegedly received no coverage determination, Yellowstone and Stern sent Defendant an update notifying it of their settlement with the NYAG on February 6, 2025. (Compl. ¶ 55; *see* ECF 1-15, "Ex. O.") In their update, they reiterated their position that the Verified Petition qualified as a covered "Claim" under the Policy. (Compl. ¶ 56; Ex. O at 1.) Yellowstone and Stern sent an additional update on April 24, 2025, in which they informed Defendant of their intent to initiate the Policy's Alternate Dispute Resolution process. (Compl. ¶ 57; ECF 1-16, "Ex. P.")

Then, on May 1, 2025, Defendant denied both parties coverage for the NYAG's action on the basis that "(i) claims alleging intentionally false or misleading advertising or deceptive and unfair business practices are excluded under Insuring Agreement C; (ii) notice was untimely as to the Verified Petition; (iii) amounts constituting civil fines, penalties, disgorgement, restitution, and all sums paid in connection with injunctive relief fall outside the D&O Policy's definition of

'Loss'; and (iv) the Yellowstone Parties lacked prior written consent to incur 'Defense Costs,' negotiate, or agree to a settlement, or stipulate to judgment." (Compl. ¶ 59; *see* ECF 1-17, Ex. Q.)

In the present action against Argo, Yellowstone and Stern seek coverage for defense costs and other losses arising out of the NYAG Action. They specifically allege that Argo breached the Policy by failing and refusing to provide coverage (Count I), acted in bad faith by denying coverage (Count II), and that they are entitled to a declaratory judgment stating that the NYAG Action is a covered Claim under the Policy, that they are entitled to payment for all Defense Costs incurred and Losses suffered up to the aggregate policy limit, and awarding them attorneys' fees and costs (Count III). (Compl. ¶¶ 75-95.)

### B. Procedural History

After an unsuccessful mediation session, Yellowstone and Stern initiated this action against Defendant on November 26, 2025. (*See id.*) Defendant filed the present Motion to Dismiss all claims brought with respect to Plaintiff Yellowstone on January 26, 2026. (Mot.) Plaintiff Yellowstone opposed the Motion on March 2, 2026. (Opp.) Defendant filed a reply on March 9, 2026. (Reply.)

## II. LEGAL STANDARDS

### A. Rule 12(b)(6)

Federal Rule of Civil Procedure Rule 12(b)(6) permits a defendant to move to dismiss a count for "failure to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). To withstand a motion to dismiss under Rule 12(b)(6), a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint is plausible on its face when there is enough factual content "that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v.*

*Iqbal*, 556 U.S. 662, 678 (2009). Although the plausibility standard "does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotation marks and citations omitted). As a result, a plaintiff must "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of her claims." *Id.* at 789.

In evaluating the sufficiency of a complaint, a district court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008). A court, however, is "not compelled to accept unwarranted inferences, unsupported conclusions or legal conclusions disguised as factual allegations." *Baraka v. McGreevey*, 481 F.3d 187, 211 (3d Cir. 2007). If, after viewing the allegations in the complaint most favorably to the plaintiff, it appears that no relief could be granted under any set of facts consistent with the allegations, a court may dismiss the complaint for failure to state a claim. *See Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts Inc.*, 140 F.3d 478, 483 (3d Cir. 1998).

**B. New Jersey Law on Insurance Policy Interpretation**

When exercising diversity jurisdiction over insurance disputes, courts must apply state substantive law. *See N&S Rest. LLC v. Cumberland Mut. Fire Ins. Co.*, 499 F. Supp. 3d 74, 78 (D.N.J. 2020) (citing *Erie R. Co. v. Tompkins*, 304 U.S. 64, 64 (1938)). New Jersey law dictates that an insurance policy "should 'be interpreted according to its plain and ordinary meaning.'" *See id.* (quoting *Voorhees v. Preferred Mut. Ins. Co.*, 607 A.2d 1255, 1260 (N.J. 1992)). "[T]he court is bound to enforce the policy as it is written" when its language is "clear and unambiguous." *See Royal Ins. Co. v. Rutgers Cas. Ins. Co.*, 638 A.2d 924, 927 (N.J. Super. Ct. App. Div. 1994); *N&S Rest. LLC*, 499 F. Supp. 3d at 78. Courts "should not write for the insured a better policy of

insurance than the one purchased." *Buczek v. Cont'l Cas. Ins. Co.*, 378 F.3d 284, 288 (3d Cir. 2004) (citing *Vassiliu v. Daimler Chrysler Corp.*, 839 A.2d 863, 867 (N.J. 2004)). "Where the terms of the policy are ambiguous, however, the ambiguity is ordinarily resolved in favor of the insured." *N&S Rest. LLC*, 499 F. Supp. 3d at 78 (citing *Benjamin Moore & Co. v. Aetna Cas. & Sur. Co.*, 843 A.2d 1094, 1103 (N.J. 2004)).

## III. ANALYSIS

### A. Exclusion Q Precludes Coverage for Yellowstone Under Insuring Agreement C

Defendant argues that Yellowstone is not entitled to coverage under Insuring Agreement C because Exclusion Q precludes coverage for any claim "based upon, arising out of or attributable to any actual or alleged (i) intentionally false or intentionally misleading advertising or (ii) . . . unfair competition or unfair business or trade practice." (Mot. at 11-12; Ex. A at 24.) In response, Yellowstone argues that Exclusion Q does not apply because the NYAG Action is "primarily based upon alleged violations of New York's banking and lending laws for which there is no exclusion." (Opp. at 21-22.)

"Exclusions within an insurance policy are narrowly interpreted and construed in accord with the objectively reasonable expectations of the insured." *N&S Rest. LLC*, 499 F. Supp. 3d at 78 (citing *Princeton Ins. Co. v. Chunmuang*, 698 A.2d 9, 11 (N.J. 1997)). But while courts should construe exclusionary clauses narrowly, they should be applied when they are "specific, plain, clear, prominent, and not contrary to public policy." *See id* (quoting *Ashrit Realty LLC v. Tower Nat'l Ins. Co.*, A-1647-13T4, 2015 WL 248490, at *4 (N.J. Super. Ct. App. Div. Jan. 20, 2015)). This Circuit and courts within it "regularly grant[] motions to dismiss in insurance cases when the plaintiff's allegations fall squarely within the policy's exclusion to coverage." *See id.* (granting motion to dismiss where an insurance policy's exclusion clause barred the plaintiff's asserted

coverage claims); *Benamax Ice, LLC v. Merchant Mut. Ins. Co.*, 529 F. Supp. 3d 350, 359 (D.N.J. 2021) (dismissing a plaintiff's claims since they fell within an insurance policy's exclusion clause); *Brewer v. U.S. Fire Ins. Co.*, 446 F. App'x 506, 510 (3d Cir. 2011) (affirming dismissal of a complaint where an insurance policy's exclusion clause excluded the asserted coverage claims).

Exclusion Q clearly provides that Insuring Agreement C does not apply to claims "based upon, arising out of, or attributable to any actual or alleged" intentionally false or intentionally misleading advertising, or price fixing, predatory pricing, restraint of trade, monopolization, anti-competitive conduct, unfair competition, unfair business or trade practice, or any interference in another's contractual or business relationship. (*See* Ex. A. at 24); *see also N&S Rest. LLC*, 499 F. Supp. 3d at 78; *Hanover Ins. Co. v. Retrofitness, LLC*, No. 16-1751, 2017 WL 4330366, at *5 (D.N.J. Sept. 29, 2017) (concluding that a similar exclusion "unambiguously and unequivocally provides" the insurance policy did not apply to the exclusion's stated exceptions). Yellowstone itself concedes that Exclusion Q bars coverage for claims "related to price fixing, false advertising, anti-trust violations, unfair competition, and other deceptive business practices." (*See* Opp. at 21.)

Further, the claims for which Yellowstone seeks coverage fit squarely within Exclusion Q. The NYAG Action was premised on Yellowstone's alleged engagement in intentionally false or misleading advertising. (*See* Ex. A at 24.) In its Verified Petition, the NYAG alleged that Yellowstone and other parties engaged in a "fraudulent, illegal scheme … to fleece money from small businesses by issuing them illegal, short-term loans at sky-high interest rates through so-called 'merchant cash advances,' or 'MCAs.'" (Ex. I at 10.) According to the NYAG, this fraudulent scheme arose out of Yellowstone's engagement in false or misleading advertising, such as "[f]alsely advertising that Yellowstone's MCAs require[d] no collateral and no personal guarantee," "falsely stat[ing] in their agreements that they [we]re buying a portion … of the

merchants' future receipts of revenue," "misrepresent[ing] that if merchants' revenue decline[d] in the future, the merchants c[ould] 'reconcile' their past payment amounts accordingly," and "falsely stat[ing] in the agreements that the transactions [we]re open-ended." (*Id.* at 2-3, 277.) Yellowstone itself concedes the NYAG's claims against it pursuant to N.Y. Exec. Law § 63(12) and N.Y. Gen. Bus. Law § 349 may be subject to Exclusion Q. (*See* Op. at 22.)

**1. Exclusion Q Applies to NYAG's Banking and Lending Claims Against Yellowstone**

The fact that the NYAG Action is also based on Yellowstone's alleged violations of New York's banking and lending laws ("the banking and lending claims") does not preclude Exclusion Q's applicability. (*See* Opp. at 21-22.) The banking and lending claims share a substantial nexus with, and thus arise out of, the conduct described in Exclusion Q—specifically, Yellowstone's alleged engagement in intentionally false and misleading advertising. (*See* Ex. A at 24.)

As an initial matter, the NYAG brought its banking and lending claims pursuant to N.Y. Exec. Law § 63(12), which permits the NYAG to apply for an order enjoining the "repeated fraudulent or illegal acts … in the carrying on, conducting or transaction of business," and defines "fraud" as including "any device, scheme, or artifice to defraud, and any deception, misrepresentation, concealment, suppression, false pretense, false promise …." *See* N.Y. Exec. Law § 63(12); (Ex. I at 274-77.) By definition, N.Y. Exec. Law § 63(12) regulates intentionally false and misleading advertising and unfair business practices. *See* N.Y. Exec. Law § 63(12); *State v. Ginzburg*, 438 N.Y.S. 2d 132, 135 (N.Y. Sup. Ct. 1980) ("The legislature clearly intended Executive Law s 63(12) to cover false advertising as well as other deceptive business practices.").

Further, the banking and lending claims have a substantial nexus to Yellowstone's alleged engagement in intentionally false or misleading advertising. In evaluating insurance policy exclusions, this Court has noted that "the phrase 'arising out of' … has been defined broadly in

other insurance coverage decisions to mean conduct 'originating from,' 'growing out of' or having a 'substantial nexus' with the activity for which coverage is provided." *See Hanover Ins. Co.*, 2017 WL 4330366, at *5 (quoting *Am. Motorists Ins. Co. v. L-C-A Sales Co.*, 713 A.2d 1007, 1010 (N.J. 1998)); *see also Allstate Ins. Co. v. Moraca*, 581 A.2d 510, 514 n.1 (N.J. Super. Ct. App. Div. 1990) (noting that an exclusion in a homeowner's policy barring coverage for injuries "arising out of" ownership or use of motor vehicle was enforceable if "accident or injury 'was connected with,' 'had its origins in,' 'grew out of,' 'flowed from,' or 'was incident to' the use of an automobile") (citation omitted)).

As discussed, Exclusion Q precludes coverage for any claim "based upon, *arising out of* or attributable to any actual or alleged (i) intentionally false or intentionally misleading advertising or (ii) . . . unfair competition or unfair business or trade practice." (Ex. A at 24 (emphasis added).) And here, the banking and lending claims have a substantial nexus with Yellowstone's engagement in intentionally false and misleading advertising. As discussed, the NYAG Action alleged that Yellowstone violated N.Y. Exec. Law § 63(12) and N.Y. Gen. Bus. Law § 349, two claims that Plaintiff concedes are likely covered by Exclusion Q, by, among other acts, "[m]isrepresenting to merchants the nature of their loans as purchases of merchants revenue," "misrepresenting that their merchant agreements [we]re enforceable when in fact they [we]re usurious loans," and "[f]alsely advertising that Yellowstone's MCAs require[d] no collateral and no personal guarantee." (*Id.* at 277-78, 280-81.) The banking and lending claims allege that Yellowstone engaged in usury and made high interest loans without a license in violation of N.Y. Gen. Ob. Law § 5-501(1), N.Y. Pen. Law § 190.40, and N.Y. Bank. Law §§ 340 and 356. (*Id.* at 274-77.) Given that the banking and lending claims pertain to the very loans, or MCAs, with which Yellowstone allegedly engaged in false advertising, they maintain a substantial nexus with, and thus arise out of, Yellowstone's

fraudulent and misleading conduct with respect to the MCAs. (*See id.* at 274-81); *see Hanover Ins. Co.*, 2017 WL 4330366, at *5. Therefore, Exclusion Q excludes coverage for claims alleging direct violations of N.Y. Exec. Law § 63(12) and N.Y. Gen. Bus. Law § 349, and violations of N.Y. Gen. Ob. Law § 5-501(1), N.Y. Pen. Law § 190.40, and N.Y. Bank. Law §§ 340 and 356 "arising out of" violations of N.Y. Exec. Law § 63(12) and N.Y. Gen. Bus. Law § 349. *See Hanover Ins. Co.*, 2017 WL 4330366, at *5 (noting that an exclusion "excludes coverage for claims alleging direct violations of consumer protection laws and claims of negligence 'arising out of' violations of consumer protection laws).

Since Exclusion Q bars coverage under Insuring Agreement C, Yellowstone's causes of action for breach of contract, bad faith, and declaratory judgment fail. Yellowstone fails to state a claim for breach of contract or bad faith because Defendant did not withhold benefits under Insuring Agreement C without justification since coverage was excluded. (*See* Compl. ¶¶ 75-88); *N&S Rest. LLC*, 499 F. Supp. 3d at 81 (concluding that a plaintiff failed to state a claim for breach of contract where an exclusion barred coverage). Yellowstone's cause of action for declaratory judgment fails because it has not provided a "cognizable legal theory or set of facts about the Policy that would allow the Court to provide declaratory relief." (*See* Compl. ¶¶ 89-95); *N&S Rest. LLC*, 499 F. Supp. 3d at 81. Accordingly, Defendant's Motion to Dismiss Yellowstone's claims with respect to Insuring Agreement C is **GRANTED**. Yellowstone's breach of contract, bad faith, and declaratory judgment claims related to coverage under Insuring Agreement C are

**DISMISSED** with prejudice.[2]

### B. Yellowstone Is Not Entitled to Coverage Under Insuring Agreement B

Defendant argues that Yellowstone is not entitled to Defense Costs for its defense of Insured Persons under Insuring Agreement B because the Policy bars coverage for "Defense Costs incurred or settlements made without the Insurer's prior written consent," and because "all such costs were incurred prior to the time Yellowstone tendered the claim to Argo." (Mot. at 16.) In response, Yellowstone argues that it properly provided Defendant with notice of the NYAG's subpoena, investigation, and potential claims in 2018, and that the NYAG Action is interrelated with the NYAG subpoena and thus relates back to 2018, when initial notice of the subpoena was communicated. (Opp. at 18-21.)

As an initial matter, Yellowstone does not respond to Defendant's argument that it is barred from receiving coverage under Insuring Agreement B because it did not receive prior written consent for its Defense Costs. (*See* Mot. at 16; Opp.) As such, this Court treats Yellowstone's claims with respect to Insuring Agreement B as waived, and **GRANTS** Defendant's Motion to Dismiss without prejudice. *See Doe on behalf of Doe v. Small*, 654 F. Supp. 3d 376, 387 (3d Cir. 2023) (waiving claims and granting defendants' motion to dismiss where plaintiff failed to respond to defendants' arguments for dismissing the claims in its opposition brief); *Griglak v. CTX Mortg. Co., LLC*, No. 9-5247, 2010 WL 1424023, at *3 (D.N.J. Apr. 8, 2010) ("The failure to respond to a substantive argument to dismiss a count, when a party otherwise files opposition, results in

[2] This Court frequently dismisses insurance coverage claims with prejudice when policy exclusions apply. *See, e.g.*, *Body Physics v. Nationwide Ins.*, 524 F. Supp. 3d 372, 381 (D.N.J. 2021); *Delaware Valley Plumbing Supply, Inc. v. Merchants Mutual Ins. Co.*, 519 F. Supp. 3d 178, 186 (D.N.J. 2021); *Ziff v. Allianz Global Risks US Ins. Co.*, No. 24-10529, 2025 WL 2709431, at *5 (D.N.J. Sept. 3, 2025).

waiver of that count.").

Regardless, the Court notes that Yellowstone has not pled facts establishing that it received prior written consent from Defendant before incurring Defense Costs. (*See generally* Compl.) Insuring Agreement B provides potential coverage for Yellowstone's Defense Costs spent on indemnifying Insured Persons, such as Stern. It states that "[t]he Insurer shall pay Loss of the Company arising from a Claim first made during the Policy Period (or Extended Reported Period, if exercised) against any Insured Person(s) for a Wrongful Act, but only to the extent the Company has indemnified the Insured Person(s) for such Loss." (Ex. A. at 7.) As defined by the Policy, "Loss" includes "Defense Costs." (*Id.* at 18, 29.) However, the Policy also unambiguously bars coverage for "[a]ny Defense Costs incurred or settlements made without the Insurer's prior written consent[.]" (*Id.* at 26, 34.) This consent requirement serves as a condition precedent to coverage. *See Allied World Assurance Co. (US) Inc. v. Benecard Servs., Inc.*, No. 17-12252, 2020 WL 2840058, at *14 (D.N.J. May 31, 2020).

This Circuit, Court, and courts within this State have frequently denied coverage for defense and settlement costs where insured parties fail to satisfy this condition precedent. *See Am. Legacy Found., RP v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 623 F.3d 135, 141 (3d Cir. 2010) (declining coverage where a policy provided that the insurer "shall not … incur any Defense costs without the prior written consent" of the insurer where there was no "written request for [the insurer's] consent sought by the [insured] at any time before it brought [] suit"); *Allied World Assurance Co. (US) Inc.*, 2020 WL 2840058, at *14, *aff'd*, No. 20-2359, 2021 WL 4077047 (3d Cir. Sept. 8, 2021) (concluding that the insured was "foreclosed from obtaining indemnity coverage" for a settlement where they "never obtained written consent from" the insurer and where the policy provided that "no settlement or offer of settlement of any Claim may be made …

without the Underwriter's prior written consent …"); *Lawless v. Ta Assocs., L.P.*, A-143-14T1, 2015 WL 9263869, at *5-6 (N.J. Super. Ct. Dec. 21, 2015) (affirming the trial court's grant of insurance companies' motion to dismiss plaintiffs' coverage claims where the policy provided that insurers would not be "liable for any settlement effected without its prior written consent," and the insurers did not give consent). Yellowstone makes no allegations that it sought or received Defendant's prior written consent before incurring Defense Costs in relation to the NYAG Action. (*See generally* Compl.) Yellowstone merely contends that Defendant's "invocation of the 'consent' provision is desperate and hollow." (*Id.* ¶ 8.) Accordingly, Defendant's Motion to Dismiss Yellowstone's claims with respect to Insuring Agreement B is **GRANTED**.[3]

## IV. CONCLUSION

For the reasons stated above, this Court **GRANTS** Defendant's Motion to Dismiss. Yellowstone's breach of contract, bad faith, and declaratory judgment claims are **DISMISSED** with prejudice with respect to coverage under Insuring Agreement C, and **DISMISSED** without prejudice with respect to coverage under Insuring Agreement B. All claims brought by and with respect to Plaintiff Stern shall **PROCEED**. An appropriate order follows.

*/s/ Jamel K. Semper*
**HON. JAMEL K. SEMPER**
**United States District Judge**

Orig: Clerk
cc: Andre M. Espinosa, U.S.M.J.
Parties

[3] The Court's dismissal of Yellowstone's coverage claims under Insuring Agreement B "preclude[] the necessity to address [Defendants'] alternative grounds for dismissal," so this Court does not address Defendant's arguments about notice and pre-tender defense costs. *See Arezzo v. City of Hoboken*, No. 16-4318, 2017 WL 354040, *4 (D.N.J. Jan. 24, 2017); *DeCaro v. Newark Public Schools*, No. 18-13472, 2020 WL 3546716, at *4 n.5 (D.N.J. June 30, 2020) (declining to address a defendant's alternative arguments for dismissal where the court dismissed the claim on alternative grounds).